UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                                                Chapter 13 Case

Paul Hansmeier,                                              Bky. No. 15-42460 (KHS)

                    Debtor.

**APPLICATION FOR ORDER AUTHORIZING RULE 2004 EXAMINATIONS**

1.      Best & Flanagan LLP ("B&F") is the holder of five judgments (the "Judgments") against Paul Hansmeier (the "Debtor") by virtue of assignments filed in the Hennepin County District Court, Court File No. 27-cv-12-20976, and by representation in the companioned Court File No. 27-cv-14-15391. The Judgments are in favor of B&F, Paul Godfread, Esq., Phillip Gainsley, Esq., Thompson Hall Santi Cerny & Katkov (formerly Thompson Hall Santi Cerny & Dooley), and Sandipan Chowdhury, through his counsel Booth Sweet LLP (collectively, "Judgment Creditors"). With costs and interest accrued as of the date of the petition, the Judgments total approximately $193,000.

2.      The Judgments are identified in the Debtor's schedules. The Judgments were based on the Debtor's bad-faith litigation and attempted fraud on the courts in the pursuit of various "copyright trolling" lawsuits. The Judgments are the only debts that purportedly gave rise to the Debtor's petition, and the Judgment Creditors are the only relevant creditors in this proceeding at this time.

1

3. This Court has jurisdiction over this application under 28 U.S.C. §§ 157(b)(2)(A), and (O) and 1334, Fed. R. Bankr. P. 5005, and Local Rule 5005-1. This application is filed under Bankruptcy Rule 2004 and Local Rule 2004-1. The determination of this application constitutes a core proceeding.

4. This bankruptcy case was commenced by petition filed by the Debtor under Chapter 13 of Title 11 of the United States Code on July 14, 2014. This case is now pending before this Court.

5. B&F, on behalf of the Judgment Creditors, hereby makes an application for an Order authorizing B&F to conduct examinations and to subpoena documents under Bankruptcy Rule 2004, based on the reasons set forth below.

6. On August 12, 2015, the undersigned attended the Meeting of Creditors. At the Meeting of Creditors, the Debtor agreed to provide the undersigned certain documents, namely, income tax returns and financial records, including records for the Debtor Paul Robert Hansmeier, his businesses including Class Justice PLLC, his wife Padraigin L. Browne, and the Debtor's "Monyet LLC" trust, however, to date, all such records have not been provided.

7. B&F is entitled to investigate transfers of the Debtor's property, or property of the estate, that may be fraudulent, preferential as to the Debtor's creditors, or that are designed to conceal assets that would affect the Debtor's proposed plan, his ability to repay his debts, and the circumstances under which he should be required to pay his debts.

2203735

8.  B&F has been involved in pursuing collection from the Debtor for nearly two years, and B&F has reviewed numerous documents relating to the Debtor's property interests and transfers thereof, which have been obtained through discovery and investigation.

9.  The Debtor filed his Chapter 13 petition to stay two separate contempt proceedings, one by the Hennepin County District Court, and the other by the United States District Court for the Southern District of Illinois. Those contempt proceedings arose when the Debtor refused to disclose assets, including the transfers of hundreds of thousands of dollars, if not more, to the Debtor's wife and to the Monyet LLC trust that the Debtor established to shield assets. For these and additional reasons described below, the Debtor's petition deserves heightened scrutiny.

10. The Debtor became infamous in approximately 2013 following the first of several sanctions orders against him. *See* Sheu Dec. Ex. 1, the May 6, 2013 Order for Sanctions in *Ingenuity 13 LLC v. Does*, by the Central District of California, referring the Debtor and his affiliates to criminal, tax, and other authorities for investigation. The court ordered $237,583.66 in sanctions against the Debtor and his partner John Steele. The Debtor claims that he and Mr. Steele each paid for one-half of the supersedeas bond to stay execution pending that appeal, which remains under advisement by the Ninth Circuit Court of Appeals.

11. On August 30, 2013, the Hennepin County District Court awarded $63,386.52 against the Debtor's law firm Alpha Law Firm LLC ("Alpha"), along with

2203735

Alpha's associate Michael Dugas and their "client," an off-shore entity called "Guava LLC," in *Guava v. Merkel*, Court File No. 27-CV-12-20976. On August 4, 2014, the Minnesota Court of Appeals substantially affirmed the judgment, *see* Sheu Dec. Ex. 2.

12. On January 20, 2015, the Hennepin County District Court amended the $63,386.52 judgment against Alpha to name the Debtor as a judgment debtor based on the alter-ego status between Alpha and the Debtor. *See* Sheu Dec. Ex. 3. The Minnesota Court of Appeals affirmed the decision on August 17, 2015,[1] *see* Sheu Dec. Ex.4.

13. On October 22, 2013, a sanctions order was issued by the District of Massachusetts, in the amount of $64,180.80 and in favor of Sandipan Chowdhury, in *AF Holdings LLC v. Chowdhury*. *See* Sheu Dec. Ex. 5. In that action, the court determined that the Debtor was an "alias" of AF Holdings LLC, a sham entity like Guava LLC. That judgment was certified for registration in other districts, docketed in the Hennepin County District Court and the District of Minnesota, and companioned with *Guava v. Merkel* for purposes of post-judgment discovery. The Debtor's appeal from the *Chowdhury* judgment remains pending the First Circuit Court of Appeals.

14. More sanctions proceedings were issued against the Debtor in the Southern District of Illinois, in *Lightspeed Media Corp. v. Smith*, Sheu Dec. Ex. 6. There, in early 2014, the court issued $261,052.11 in sanctions against the Debtor, which the Seventh Circuit upheld on July 31, 2014. *See* Sheu Dec. Ex. 7. That sanctions award included

---

[1] At the Meeting of Creditors, the Debtor stated his intent to continue the prosecution of all appeals from the various sanctions judgments issued against him notwithstanding his petition herein.

2203735

contempt sanctions for failing pay a court ordered judgment and for filing unaudited financials. The Debtor obtained a supersedeas bond to secure that judgment pending appeal and, upon its affirmance, the Debtor paid the judgment. An additional sanctions award of $65,263 was issued on June 5, 2015, requiring payment no later than July 15, 2015 (and the court then issued a fee award of nearly $100,000). *See* Sheu Dec. Ex. 8. On July 13, 2015, the Debtor filed another appeal to the Seventh Circuit. That appeal remains pending in the Seventh Circuit Court of Appeals.

15.   Back in Minnesota, on June 29, 2015, Judge Bransford issued a Post Judgment Discovery Order, giving the Debtor until July 14, 2015 to show cause why he should not be held in contempt for violating a post-judgment discovery order, *see* Sheu Dec. Ex. 9. The Debtor refused to provide copies of his personal and business tax returns, as well as his personal, joint, trust, and corporate bank records. The June 29, 2015 Order also granted the undersigned leave to issue subpoenas to the Debtor's wife and her employer, as the Debtor claimed in sworn testimony that she prepared the "Monyet LLC" trust that is identified in the Debtor's schedules, that she would know more about the trust than he would, and that, according to bank records, the trust received no less than $515,000 in transfers from the Debtor and his companies. According to bank records, the Debtor has transferred assets to his wife and, according to his own prior testimony, *see* Sheu Dec. Exs. 10-11, the Monyet trust. The Debtor's testimony at his 2014 debtor's examination regarding the Monyet trust deviated from his testimony at the Meeting of Creditors in that in one instance he claimed to know nothing about the trust, and then

2203735

admitted he was a beneficiary, to later saying he was not a beneficiary. Only inspection of the Monyet trust documents and records will reveal the truth.

16. The Debtor filed his petition on July 13, 2015 to prevent subpoenas to his wife and his wife's employer to proceed, thus avoiding having to disclose his and his wife's financial records, including tax returns, trust records, and other evidence that could identify the location of his assets, and the details of his transfers, which is now relevant to evaluating the propriety of his proposed Chapter 13 plan.

17. Judge Bransford's discovery order allowed the undersigned to issue subpoenas to the Debtor's wife and her employer, in order to identify bank accounts where the Debtor may have transferred assets. That order also required the Debtor to provide tax returns and bank statements for his personal, family, business, and trust accounts. These records should be disclosed to locate the Debtor's assets and identify transfers.

18. Further, according to court records, the Debtor's business partner Mr. Steele claimed making about $15 million from the copyright-trolling business; if true, the Debtor would have earned a similar amount. According to a court filing on March 20, 2014, the Debtor and Steele shared almost $2 million in gross revenues just in the year 2012, *see* Sheu Dec. Ex. 12.

19. The full scope of the Debtor's income and assets over the past few years, and what he has done with it and where it has been transferred, should be disclosed, as it may impact (a) whether the Debtor is entitled to proceed with a Chapter 13 petition, (b)

the speed with which he can repay his debts, and (c) the amount of payments that he can make.

20. While the Debtor claims his luxury condominium is valued at $885,000, there is reason to doubt that value, given that a recent sale of a condo in that same building fetched $4.3 million. *See* Sheu Dec. Ex. 13. An appraisal should be conducted to determine the actual market value of the Debtor's condo, as the Debtor cannot be trusted to provide an accurate self-appraisal.

21. The Debtor identifies a "BUSINESS ACCOUNT AT ASSOCIATES BANK, HELD IN NAME OF CLASS JUSTICE LLC, 6773," which he claims has a $19,400 value. Given the Debtor's track record of not accurately disclosing assets, or otherwise not telling the truth, as well as commingling monies between his personal and solely-owned businesses, the financial records of this and any other business account should be disclosed.

22. The Debtor identifies an IOLTA account, which he states is "NOT PART OF THE ESTATE, DOES NOT CONTAIN DEBTOR'S FUNDS." Given the Debtor's established history of dishonesty, this contention should be verified, and the identity of any IOLTA accounts should be disclosed, along with their balances and transaction histories. Given the Debtor's history of transferring assets among entities that he controls, as well as the Debtor's business, which does not include actually receiving any client monies, his contention that the IOLTA is not part of the estate should be verified.

23. For the past two years, the Debtor has filed more than fifty ADA lawsuits

2203735

in Minnesota. The defendants in these suits typically settle for $4,000 to $8,000 each. According to news reports, the Debtor's "clients" receive none of these fees, and the Debtor keeps all of these fees for himself, yet during the Meeting of Creditors the Debtor claimed he gave some financial recovery to his clients. Whether the Debtor keeps all his money or gives some to his clients is the proper subject of further inquiry.

24. The Debtor lists a "SELF SETTLED TRUST MONYET," with a claimed value of $8,554. However, as the attached documentation and court records show, Monyet LLC received more than $515,000 in transfers from the Debtor. *See, e.g.,* Sheu Dec. Ex. 14. As the Debtor was quick to admit to this $515,000 figure at the Meeting of Creditors, the actual amount of transfers is probably more than that. The Debtor should be required to disclose all transaction history for that entity, as well as any other entity or person to which he has transferred assets. For example, the Debtor admitted at the Meeting of Creditors that he had transferred a lot of money to his wife; the quantity and dates of those transfers is highly relevant.

25. The Debtor previously testified owning interests in companies not disclosed in his petition, including Media Copyright Group LLC and Class Action Justice Institute, LLC, and financial records show him transferring monies to and from those entities. *See id*. He denied owning an interest in Livewire Holdings, LLC, however, bank records reveal wire transfers from that entity to his "Monyet" trust and to himself personally, *see id*. The Debtor signed both the front and back of checks issued to Monyet, meaning that he had signatory authority for Monyet. Further, bank records show that he has had

8

relationships with, or received substantial monies from accounts at, Chase Bank, Fifth Third Bank, U.S. Bank, ING, and others, either personally or through his companies, and thus all of his business and personal accounts should be disclosed. When pressed by Judge Bransford to provide evidence of why he transferred $64,000 from Alpha to his Class Action Justice Institute, and why Alpha received $59,000 from the Simpson Thatcher law firm, the Debtor first claimed they were settlement monies, then promised to provide the court with copies of the settlement agreements for *in camera* review, and then failed to provide any documentation.

26.   Past testimony from his 2014 debtor's examination revealed that the Debtor typically uses his corporate entities for personal expenses, such as liquor, travel, and his own legal fees, and that he used funds from the Monyet trust to pay court filing fees. Accordingly, the Debtor's Class Justice PLLC entity and its business should be scrutinized as part of his proposed plan, as it is likely the Debtor uses his Class Justice entity for personal income and expenses, rendering his alleged "salary" from that entity misleadingly low.

27.   The Debtor's claimed budget largely presumes that he is paying for much of his family's expenses. Yet the fact that the Debtor filed this petition to avoid inquiry into his wife's finances suggests that the Debtor has harbored assets in his wife's name and under her control. Indeed, the Debtor testified at the Meeting of Creditors that he gave a large amount of money to his wife. The amount of such monies, the timing and consideration of those transfers, and the location of those assets, is relevant to Judgment

Creditors' rights in this proceeding as well as a proper evaluation of the Debtor's proposed plan.

28. The Debtor's proposed plan to repay $142,570 fails to take into account all of his assets, specifically, those assets he has transferred into his wife's name yet that remain in his control. Any Chapter 13 plan should include a complete evaluation of the Debtor's assets and debts, including his transfers of assets to his wife or into a trust. The Debtor agreed, at the August 12, 2015 Meeting of Creditors, to provide documentation. To date, he has refused to do so.

WHEREFORE, pursuant to Federal Rule of Bankruptcy Procedure 2004, B&F moves the Court to issue an Order authorizing B&F to conduct examinations, and to seek production of documents in connection therewith, from the following persons or entities:

(1) Ordering the examination of the Debtor, the Debtor's wife Padraigin L. Browne pursuant to a subpoena to be issued by B&F, and any accountants or other third parties to be identified, as identified above and in the attached Exhibits, together with production of documents, as are requested by B&F, with respect to the transfers of money and assets from the Debtor to his wife, including into or through the Monyet LLC trust, for the six years preceding the petition.

(2) Authorizing B&F to seek the production of the Debtor's and his wife's income tax returns, including trust tax returns and business tax returns, if any, bank statements, including individual, joint, business, and IOLTA accounts, along with copies of checks and wires transfers, Social Security and Medicare/Medicaid statements, private

medical insurance statements, life insurance policies, brokerage accounts, mortgage, property tax, Carlyle CIC fees, and insurance records, and records of any other asset owned by Debtor and his wife, directly or indirectly, as identified by Debtor, his, or their accountants, upon oral examination, for the six years preceding the petition, and to allow for an appraisal of the Debtor's homestead.

(3) Directing B&F, if it proceeds with such examinations and/or subpoenas, to serve a notice of each such examinations and/or subpoenas associated with such productions and/or examinations, which shall identify the persons and/or entity to be examined, the documents to be produced, and the time and place for taking the examination pursuant to Local Rule 2004-1(b).

Respectfully submitted,

Date: September 1, 2015                         BEST & FLANAGAN LLP


By     /e/ Edward P. Sheu
    Edward P. Sheu (#312885)
    Cynthia L. Hegarty (#294627)
    Attorneys for Judgment Creditors
    60 South Sixth Street, Suite 2700
    Minneapolis, MN 55402
    (612) 339-7121
    (612) 339-5897 (fax)
    esheu@bestlaw.com
    chegarty@bestlaw.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Chapter 13 Case |
| Paul Hansmeier, | Bky. No. 15-42460 (KHS) |
| Debtor. | |

## DECLARATION OF EDWARD P. SHEU

Under 28 U.S.C. § 1746, the undersigned declares as follows:

1. I am counsel for Best & Flanagan LLP, a judgment creditor of the above named debtor and the holder by assignment of other judgments issued against the debtor. This Declaration supports the accompanying Application for Order Authorizing Rule 2004 Examinations.

2. Attached hereto as Exhibit 1 is a true and correct copy of the May 6, 2013 Order for Sanctions in *Ingenuity 13 LLC v. Doe*.

3. Attached hereto as Exhibit 2 is a true and correct copy of the August 4, 2014 Minnesota Court of Appeals order in *Guava v. Merkel*.

4. Attached hereto as Exhibit 3 is a true and correct copy of the Hennepin County District Court's January 20, 2015 order in *Guava v. Merkel*.

5. Attached hereto as Exhibit 4 is a true and correct copy of the Minnesota Court of Appeals' August 17, 2015 order in *Guava v. Merkel*.

6. Attached hereto as Exhibit 5 is a true and correct copy of the October 22, 2013

1

judgment in *AF Holdings LLC v. Chowdhury*.

7. Attached hereto as Exhibit 6 is a true and correct copy of the Southern District of Illinois's March 24, 2014 order in *Lightspeed Media Corp. v. Smith.*

8. Attached hereto as Exhibit 7 is a true and correct copy of the Seventh Circuit Court of Appeals opinion in *Lightspeed Media Corp. v. Smith.*

9. Attached hereto as Exhibit 8 is a true and correct copy the Southern District of Illinois's June 5, 2015 order in *Lightspeed Media Corp. v. Smith.*

10. Attached hereto as Exhibit 9 is a true and correct copy of the Hennepin County District Court's June 29, 2015 order in *Guava v. Merkel*.

11. Attached hereto as Exhibit 10 is a true and correct copy of portions of the transcript from the June 30, 2014 examination of debtor in *Guava v. Merkel.*

12. Attached hereto as Exhibit 11 is a true and correct copy of portions of the transcript from the July 2, 2014 examination of debtor in *Guava v. Merkel.*

13. Attached hereto as Exhibit 12 is a true and correct copy ECF Dkt. No. 240-7 filed on October 17, 2013 in *Ingenuity 13 LLC v. Doe*.

14. Attached hereto as Exhibit 13 is a true and correct copy of a June 9, 2015 article in the Minneapolis Star Tribune.

15. Attached hereto as Exhibit 14 is a true and correct copy of portions of financial records obtained through discovery in *Guava v. Merkel* and from the online federal court docket in *Lightspeed Media Corp. v. Smith*.

I declare, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Dated this 1st day of September, 2015 in Minneapolis, Minnesota.

*s/ Edward Sheu*
Edward P. Sheu

2203878

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                                Chapter 13 Case

Paul Hansmeier,                                       Bky. No. 15-42460 (KHS)

                         Debtor.

# ORDER GRANTING APPLICATION FOR ORDER AUTHORIZING RULE 2004 EXAMINATIONS

This matter came before the Court on the application of certain judgment creditors represented by Best & Flanagan LLP ("B&F"), for the examination of and production of documents by:

A.  Debtor Paul Robert Hansmeier;
B.  Padraigin L. Browne;
C.  Monyet, LLC, through any and all representatives;
D.  Any accountant engaged to provide accounting or tax services for Debtor, his wife, or their Monyet, LLC trust, and any financial institutions in which the Debtor, Padraigin Browne, or Monyet, LLC have had any accounts in the past six years; and
E.  Other individuals or entities who may be identified by the above individuals who may have knowledge, records, or information about the Debtor's assets or transfers of his assets;

pursuant to Bankruptcy Rule 2004(a) and Local Rule 2004-1.

Based upon the verified application and all the files and records herein,

IT IS HEREBY ORDERED THAT:

1.  B&F's application for an examination of the Debtor Paul Robert Hansmeier, the Debtor's wife Padraigin L. Browne and any accountants or other third parties to be identified pursuant to a subpoena to be issued by B&F, including without limitation TCF Bank, U.S. Bank, Associated Bank, Fifth Third Bank, Chase Bank, ING,

Livewire Holdings, LLC, Media Copyright Group LLC, Class Action Justice Institute LLC, Class Justice PLLC, Disability Support Alliance, Alpha Law Firm LLC, Prenda Law, Inc., Under The Bridge Consulting, LLC, and John Lawrence Steele, together with production of documents as B&F may request, regarding the transfers of money and assets from the Debtor to his wife, including into or through the Monyet LLC trust or any other entity, and for the production of documents in connection therewith, is GRANTED; and

2.      B&F's application for an order authorizing B&F to seek the production of the Debtor's and his wife's income tax returns, including trust tax returns and business tax returns, if any, bank statements, including individual, joint, business, and IOLTA accounts, along with copies of checks and wires transfers, Social Security and Medicare/Medicaid statements, private medical insurance statements, life insurance policies, brokerage accounts, mortgage, property tax, Carlyle CIC fees, and insurance records, and records of any other asset owned by Debtor and his wife, directly or indirectly, as identified by Debtor, his, or their accountants, upon oral examination, and including an appraisal of his homestead, is hereby GRANTED.

3.      B&F, if it proceeds with any examinations or subpoenas, shall serve a notice of each such examinations and/or subpoenas associated with such productions and/or examinations, which shall identify the persons and/or entity to be examined, the documents to be produced, and the time and place for taking the examination pursuant to Local Rule 2004-1(b).

**Dated:**_____          _____
                                        United States Bankruptcy Judge

2203734