### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MINNESOTA

In Re:                                              Chapter 13

**Paul Robert Hansmeier,**                          **Bankruptcy No. 15-42460**

      **Debtor.**

---

### NOTICE OF HEARING ON MOTION TO CONVERT CASE TO CHAPTER 7 CASE

---

TO:    The debtors, all creditors, and other parties in interest:

The United States Trustee has filed a motion to convert the above-captioned case to chapter 7 under 11 U.S.C. § 1307(c).

A hearing will be held at 1:00 p.m. on December 3, 2015, before the United States Bankruptcy Court, Courtroom 8W, 300 South Fourth Street, Minneapolis, MN 55415.

Any response to this motion must be filed and delivered not later than November 27, 2015, which is five days before the time set for the hearing.   UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.


Dated:

                              CLERK OF BANKRUPTCY COURT


                    By:   _____
                          Deputy Clerk

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MINNESOTA

In Re:                                                    **Chapter 13**

**Paul Robert Hansmeier,**                                **Bankruptcy No. 15-42460**

      **Debtor.**

---

### UNITED STATES TRUSTEE'S NOTICE OF HEARING AND
### MOTION TO CONVERT CASE TO CHAPTER 7

---

**COMES NOW** the United States Trustee, through his undersigned attorney, Colin Kreuziger, and moves the Court to convert this chapter 13 case to chapter 7.   In support of his motion, he states the following:

1. A hearing on the Motion to Convert Case to Chapter 7 will be held at 1:00 p.m. on December 3, 2015, before the United States Bankruptcy Court, Courtroom 8W, 300 South Fourth Street, Minneapolis, MN 55415.

2. Any response to this motion must be filed and delivered not later than November 27, 2015, which is five days before the time set for the hearing.   UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

3. The United States Trustee has standing pursuant to 11 U.S.C. § 307 and 28 U.S.C. § 586. His motion to convert this case to chapter 7 arises under 11 U.S.C. § 1307(c), Fed. R. Bankr. P. 1017(f) and 9014, and Local Rules 1017-2, 2002-1, and 2002-4(b).   **The United States Trustee is seeking conversion and is not seeking dismissal under Local Rule 1017-2.**

4. The hearing on the confirmation of the proposed plan is set for November 19, 2015, at 10:30 a.m.   The United States Trustee will file objections to the confirmation of the proposed Chapter 13 plan.   The grounds for such objections, although not necessarily

exclusive, are discussed herein.

5.  The debtor is an attorney.   He owns or has owned interests in various entities engaged in the practice of law, including Class Justice, PLLC, Alpha Law Firm, Under the Bridge Consulting, LLC, Prenda Law, Inc., and Class Action Justice Institute, PLLC.   In addition, the debtor owns or has owned interests in the following entities:   AF Holdings, LLC, Livewire Holdings, LLC, Big Sky Films, LLC, Media Copyright, LLC, and Chisholm Properties South Beach, Inc.

6.  The debtor married Padraigin Browne, who is also an attorney, in 2011.   On December 28, 2010, prior to the debtor's marriage to Ms. Browne, the debtor created The Mill Trust. (Ex. 1 at 14.)   The debtor is the grantor, and Ms. Browne is the trustee.   (*Id.* at 1.)   The contingent beneficiaries of The Mill Trust are the debtor's parents, siblings, future spouse, and any future descendants.   (*Id.*)   The Mill Trust is irrevocable, and it contains a spendthrift provision.   (*Id.* at 1, 8-9.)   The Mill Trust also directs the trustee to distribute the net income and principal of the Trust Estate to or for the benefit of the beneficiaries.   (*Id.* at 1-2.)   The debtor retained the right to veto any distribution.   (*Id.*) The Mill Trust is funded by transfers from the debtor and entities that he holds an interest in.   (Ex. 2 at 17:25-18-2.)   In practice, Ms. Browne was authorized to use funds from The Mill Trust as she saw fit to pay for the living expenses of the debtor and his family. (*Id.* at 19:15-20.)

7.  At approximately the same time as The Mill Trust was created, the debtor incorporated Monyet, LLC.   (Ex. 3.)   Monyet is a single-member Delaware limited liability company. (*Id.*)   The Mill Trust is the sole member of Monyet.   (*Id.* at 5.)   The debtor is the manager of Monyet.   (*Id.* at 9.)   The debtor opened a Scottrade brokerage account for Monyet in December of 2010.   (Ex. 4 at 14:6-8.)   The debtor was the sole signatory

on the account.   (*Id.* at 32:7-14.)

8.  The debtor authorized the following wire transfers from Monyet's Scottrade account:

    a.  May 5, 2013:   $51,333.00 to SureTec Insurance Company.   The funds were used to post an appellate bond in case no. 12-cv-8333.   (Ex. 5 at 1.)

    b.  June 27, 2013:   $10,000.00 to Livewire Holdings, LLC, purportedly for an "investment/loan" to Livewire.   (*Id.* at 2.)

    c.  June 28, 2013:   $10,000.00 to Livewire Holdings, LLC, purportedly for a "business transfer" to Livewire.   (*Id.* at 3.)

    d.  July 15, 2013:   $69,000.00 to SureTec Insurance Company.   The funds were used to post an appellate bond in case no. 12-cv-8333.   (*Id.* at 4.)

    e.  July 19, 2013:   $10,000.00 to SureTec Insurance Company.   The funds were used for an "Attorney's Fees Escrow."   (*Id.* at 5.)

    f.  July 26, 2013:   $25,000.00 to Class Justice, PLLC, purportedly to "capitalize law firm."   (*Id.* at 6.)

    g.  July 30, 2013:   $5,000.00 to Ms. Browne, purportedly a "personal transfer."   (*Id.* at 7.)

    h.  August 27, 2013:   $30,000.00 to Ms. Browne, purportedly a "Trust Agreement."   (*Id.* at 8.)

    i.  September 25, 2013:   $10,000.00 to Voelker Litigation Group, purportedly for "Legal Services."   (*Id.* at 9.)

    j.  October 1, 2013:   $25,000.00 to Class Justice, PLLC, purportedly a "business loan."   (*Id.* at 10.)

    k.  November 19, 2013:   $10,000.00 to Voelker Litigation Group, purportedly for "business."   (*Id.* at 11.)

l.   November 19, 2013:   $20,000.00 to Class Justice, PLLC, purportedly for
"business."   (*Id.* at 12.)

m.   November 22, 2013:   $175,000.00 to Ms. Browne, purportedly a "Trust
Transfer."   (*Id.* at 13.)

n.   December 9, 2013:   $21,250.00 to Robert P. Balzebre, purportedly a "loan."
(*Id.* at 14.)

o.   January 17, 2014:   $20,000.00 to Class Justice, PLLC, purportedly a "loan
installment."   (*Id.* at 15.)

p.   February 7, 2014:   $70,000.00 to Ms. Browne, purportedly a "Trust Transfer."
(*Id.* at 16.)

q.   March 19, 2014:   $25,000.00 to Class Justice, PLLC, purportedly a "loan
installment."   (*Id.* at 17.)

r.   March 19, 2014:   $3,750.00 to Voelker Litigation Group, purportedly for
"escrow."   (*Id.* at 18.)

s.   May 5, 2014:   an unknown amount to Chisholm Properties South Beach, Inc.,
purportedly for "Attorney's Fees escrow."   (*Id.* at 19.)   All available cash in the
Scottrade account was transferred at that time.   (*Id.*)

9.   The debtor has been sanctioned by various courts around the country, including the
following:

a.   May 6, 2013:   The United States District Court for the Central District of
California entered judgment against the debtor and others in the amount of
$81,319.72 in favor of John Doe.   (Ex. 6.)

b.   October 22, 2013:   The United States District Court for the District of
Massachusetts entered judgment against the debtor and others in the amount of

$64,180.80 in favor of Sandipan Chowdhury.   *See* Proof of Claim 3-1, at 8.   The

district court specifically found that AF Holdings, LLC was an alias of Prenda

Law, Inc. and the debtor.   *Id.*   The case is pending at the First Circuit Court of

Appeals, case no. 13-2535.

c.   January 20, 2015:   The Fourth Judicial District of the State of Minnesota

amended a prior judgment and entered judgment against the debtor in the amount

of $63,386.52.   The district court pierced the corporate veil as to Alpha Law

Firm and held the debtor jointly and severally liable along with Alpha Law Firm

and others.   (*See* Ex. 7 at 5.)   It specifically found that the debtor had

intentionally defunded Alpha Law Firm, disregarded the corporate form, given

inconsistent testimony to the district court, and failed to provide responsive

information throughout the proceedings.   *See id.*   On June 29, 2015, the district

court issued a post-judgment discovery order requiring the Debtor to show cause

as to why he should not be held in contempt for violating the district court's order

compelling him to turn over financial records for post-judgment discovery.   *See*

Ex. 8.   The court gave the Debtor until July 14, 2015 to provide financial records.

 *See id.*   The Minnesota Court of Appeals affirmed the district court's decision

on August 17, 2015.   (*See* Ex. 7.)

d.   September 23, 2013:   The Fourth Judicial District of the State of Minnesota

entered a $4,537.50 judgment against the debtor in favor of Godfread Law Firm

PC.   *See* Proof of Claim 5-1 at 3.   Godfread Law Firm assigned the judgment to

Best & Flanagan LLP.   *Id.* at 4.

e.   September 23, 2013:   The Fourth Judicial District of the State of Minnesota

entered a $12,646.00 judgment against the debtor in favor of Thompson Hall

5

Santi Cerny & Dooley.   *See* Proof of Claim 6-1 at 3.   Godfread Law Firm

assigned the judgment to Best & Flanagan LLP.   *Id.* at 4.

f.   September 23, 2013:   The Fourth Judicial District of the State of Minnesota

entered a $12,646.00 judgment against the debtor in favor of Phillip Gainsley.

*See* Proof of Claim 7-1 at 4.   Godfread Law Firm assigned the judgment to Best

& Flanagan LLP.   *Id.* at 5.

g.   November 27, 2013:   The United States District Court for the Southern District

of Illinois entered judgment against the debtor and others in the amount of

$72,367.00 in favor of Anthony Smith, $119,637.05 in favor of AT&T, and

$69,021.26 in favor of ComCast.   (*See* Ex. 9 at 13.)   The district court

specifically found that the debtor, among others, "have shown a relentless

willingness to lie to the Court on paper and in person, despite being on notice that

they were facing sanctions in this Court, being sanctioned by other courts, and

being referred to state and federal bars, the United States Attorney in at least two

districts, one state Attorney General, and the Internal Revenue Service."   (*Id.* at

10.)   The debtor unsuccessfully appealed the district court's order to the Seventh

Circuit Court of Appeals.   *See* Proof of Claim 8-1 at 9.   The debtor made various

representations to the district court regarding an alleged inability to pay.   *See id.*

at 4, 17.   Smith then issued third-party subpoenas to the debtor and others and

later filed a motion for contempt related to obstruction of discovery.   *Id.* at 5.

The motion was denied.   *Id.*   Later, Smith successfully moved for

reconsideration, and the district court held the debtor in contempt, finding that the

debtor "had access to the Monyet funds both before and after he pled insolvency

to the court."   *Id.* at 18-19.   Thus, the district court imposed additional sanctions

on the debtor and others of $65,263.00 on June 5, 2015.  *Id.* at 20.   The district

court ordered the debtor and others to pay the award of sanctions by July 15,

2015. The debtor appealed the June 5, 2015 order to the Seventh Circuit Court of

Appeals and it is pending as case no. 15-2440.

    h.  August 20, 2015:   The United States District Court for the Northern District of

Illinois awarded reasonable attorney's fees and costs to Paul Godfread and Alan

Cooper.   *See* Proof of Claim 9-1 at 14; Proof of Claim 10-1.   The amount of the

award has not yet been determined, and it is not clear whether the sanctions will

be awarded against the debtor.

10. In June and July of 2014, the debtor testified at a debtor's examination conducted by Best

& Flanagan.   At the examination he professed limited knowledge of Monyet.   (Ex. 10 at

37:2-12; Ex. 11 at 17:21-25.)   In March of 2015, the debtor failed to disclose Monyet's

Scottrade accounts despite having initiated numerous wire transfers from the account.

(Ex. 11 at 18:23-24.)

11. On July 13, 2015, the debtor filed a chapter 13 petition, related schedules, and a

statement of financial affairs.   (DE #1.)   The debtor did not disclose The Mill Trust in

the schedules or statement of financial affairs.   (*See id.*)   Although he disclosed the

existence of Monyet, he did not disclose any transfers to or from Monyet on the

statement of financial affairs.   (*See id.* at 36-37.)   On schedule I, the debtor claimed that

Ms. Browne's net monthly income is $4,889.41.   (*Id.* at 24.)   On schedule J, he claimed

total household expenses of $9,779.00 per month, including $4,359.00 for his home

ownership expenses, $900.00 for condominium dues, and $780.00 for Ms. Browne's

payment on an Audi Q7.   (*Id.* at 27-29.)

12. On schedule A, the debtor claimed a one-half interest (joint with Ms. Browne) in a

condominium located in Minneapolis ("the Minneapolis condo").   (*Id.* at 6.)   He

claimed that the Minneapolis condo was worth $885,000.00, and that it was subject to a

secured claim of $597,852.60.   (*Id.*)

13. On schedule E, the debtor listed priority tax claims totaling $10,800.00.   (*Id.* at 14-15.)

On schedule F, the debtor listed general unsecured claims of $115,334.78.   Of that total,

only a $64,180.00 claim owed to Sandipan Chowdhury was scheduled as disputed.[1]

14. The debtor's modified plan provides for payment of $2,690.00 per month for 53 months,

for a total of $142,570.00.   (DE #19.)   General unsecured creditors are slated to receive

their pro rata share of approximately $117,513.00.   (*See id.* at 3.)   The debtor estimates

that general unsecured claims total $115,334.78.   (*See id.* at 3.)   The modified plan also

provides that the plan shall "run for 60 months or until all unsecured and priority

creditors are paid in full, whichever comes first."   (*Id.* at 4.)

15. To date, general unsecured claims on file with the Court total over $1.5M.   Of that total,

approximately $1,357,731.94 is attributable to the Godfread and Cooper claims.   The

remaining claims total $199,927.65.

16. The debtor and Ms. Browne presently rent a residence in Woodbury.   (Ex. 2 at

49:23-50:1.)   They pay $1,950.00 per month in rent.   (*Id.* at 50:12-13.)   The debtor and

Ms. Browne signed a listing agreement with realtor Ben Ganje of Lakes Sotheby's

International Realty to sell the Minneapolis condo in September or October.   (*Id.* at

63:17-25.)   Prior to listing the Minneapolis condo for sale, the debtor and Ms. Browne

arranged for installation of new carpet and light fixtures, new paint, refinished floors, and

plumbing work.   (*Id.* at 50:22-51:2.)   The property was listed for sale for $1.3 million

---

[1]  The debtor also listed a $0.00 claim owing to "John Doe" that is scheduled as contingent, unliquidated, and disputed, and a $0.00 claim to Qwest Communications that has been "paid and released."   On information and belief, the "John Doe" claim relates to the $81,319.72 judgment against the debtor in favor of John Doe.

and, on information and belief, the debtor recently signed a purchase agreement to sell

the Minneapolis condo for $1.2 million.   The debtor testified at his Rule 2004

examination that he does not make payments for any of his living expenses, including the

mortgage, insurance, taxes, or condo fees associated with the Minneapolis condo, and the

rent for his Woodbury residence.   (Ex. 4 at 10:7-22.)   He testified that all of those

expenses are paid using funds in Ms. Browne's personal bank account.   (*Id.*)   He also

testified that he and Ms. Browne now have two cars, including a leased Toyota Prius that

is less than $300.00 per month.   (*Id.* at 55:2-3; Ex. 2 at 60:22-25.)   The debtor is not a

party to the lease.   (*Id.*)

17. The debtor has not filed a motion for authorization to sell the Minneapolis condo.   He

    never informed the chapter 13 trustee that he had listed the Minneapolis condo for sale.

**Conversion to Chapter 7 for Bad Faith**

18. The U.S. Trustee requests that the Bankruptcy Court convert this case to Chapter 7 for

    cause based on the bad faith of the debtor pursuant to 11 U.S.C. § 1307(c).

19. As detailed further in the accompanying memorandum of law, the debtors engaged in

    pre-petition and post-petition conduct evidencing a lack of good faith.

**Conversion to Chapter 7 for Inability to Confirm Plan**

20. The debtor does not have the right to remain in chapter 13.

21. The U.S. Trustee anticipates filing objections to the proposed chapter 13 plan because it

    appears that:   (1) the proposed plan does not comply with § 1322(a)(1); (2) the plan was

    not proposed in good faith under 11 U.S.C. § 1325(a)(3); (3) the proposed plan does not

    comply with § 1325(a)(4); (4) the debtor does not have an ability to make payments

    under 11 U.S.C. § 1325(a)(6); (5) that the action of the debtor in filing the petition was

    not done in good faith under 11 U.S.C. § 1325(a)(7).

22. Failure to obtain confirmation of the chapter 13 plan is a basis to convert this case under

11 U.S.C. § 1307(c)(5).   Conversion of this case to chapter 7 is in the best interests of

creditors and the estate.

WHEREFORE, the United States Trustee requests that the Bankruptcy Court convert this

case back to Chapter 7 based on cause under 11 U.S.C. § 1307(c), and grant such other relief as

may be just and equitable.

Dated: November 12, 2015                        DANIEL M. MCDERMOTT
                                                United States Trustee
                                                Region 12

                                                /e/ Colin Kreuziger
                                                Colin Kreuziger
                                                Trial Attorney
                                                Office of U.S. Trustee
                                                MN Atty. No. 0386834
                                                1015 U.S. Courthouse
                                                300 South Fourth Street
                                                Minneapolis, MN 55415
                                                TELE: (612) 334-1350

**Verification**

I, Colin Kreuziger, Trial Attorney for the United States Trustee for the District of Minnesota, declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information and belief.


Executed on: November 12, 2015                    /e/ Colin Kreuziger
                                                  Colin Kreuziger
                                                  Trial Attorney

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In Re:                                                    **Chapter 13**

**Paul Robert Hansmeier,**                                **Bankruptcy No. 15-42460**

      **Debtor.**

---

## UNSWORN DECLARATION OF COLIN KREUZIGER

---

I, Colin Kreuziger, declare under penalty of perjury, that:

1. I am employed as a Trial Attorney by the United States Department of Justice. My duty station is the Office of the United States Trustee for Region 12, and it is located in Minneapolis, Minnesota.

2. Attached as **Exhibit 1** is a true and correct copy of The Mill Trust agreement.

3. Attached as **Exhibit 2** is a true and correct copy of the transcript of an examination of Padraigin Browne conducted pursuant to Fed. R. Bankr. P. 2004 in this case.

4. Attached as **Exhibit 3** is a true and correct copy of The Operating Agreement of Monyet, LLC.

5. Attached as **Exhibit 4** is a true and correct copy of the transcript of an examination of the debtor conducted pursuant to Fed. R. Bankr. P. 2004 in this case.

6. Attached as **Exhibit 5** are true and correct copies of authorizations to wire brokerage funds from the Scottrade accounts of Monyet, LLC.

7. Attached as **Exhibit 6** is a true and correct copy of an order entered in Case No. 2L12-cv-8333-ODW(JCx) (C.D. Cal.)

8. Attached as **Exhibit 7** is a true and correct copy of an opinion entered in Case No. A15-0254 (Minn. Ct. App.)

9. Attached as **Exhibit 8** is a true and correct copy of an order entered in Case No. 27-CV-12-20976 (Fourth Judicial District, State of Minnesota)

10. Attached as **Exhibit 9** is a true and correct copy of an order entered in Case No. 12-889-GPM (S.D. Ill.)

11. Attached as **Exhibit 10** is a true and correct copy of relevant transcript excerpts of a proceeding conducted in Case No. 27-CV-12-20976 (Fourth Judicial District, State of Minnesota)

12. Attached as **Exhibit 11** is a true and correct copy of relevant transcript excerpts of a proceeding conducted in Case No. 27-CV-12-20976 (Fourth Judicial District, State of Minnesota)

Dated:  November 12, 2015

/e/ Colin Kreuziger
Colin Kreuziger

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In Re:                                                                  **Chapter 13**

**Paul Robert Hansmeier,**                                     **Bankruptcy No. 15-42460**

        **Debtor.**

---

**MEMORANDUM OF LAW**
**MOTION TO CONVERT CASE TO CHAPTER 7**

---

The facts are as stated in the attached motion.   For the sake of brevity, they are not reproduced here.

## I.    Bad Faith

The Court should convert this case to chapter 7 for cause.   The Bankruptcy Code provides:

> (c) Except as provided in subsection (e) of this section, on request of . . . the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including--
> . . .
>> (5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan.

11 U.S.C. § 1307(c).   The Code also provides that the words "'includes' and 'including' are not limiting."   *Id.* § 102(3).   Therefore, the list provided under § 1307(c) is not exhaustive.   The Eighth Circuit has held that "a Chapter 13 petition filed in bad faith may be dismissed or converted 'for cause' under 11 U.S.C. § 1307(c)."   *Molitor v. Eidson (In re Eidson)*, 76 F.3d 218, 220 (8th Cir. 1996); *see also Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 373 (2007) ("Bankruptcy courts nevertheless routinely treat dismissal for prepetition bad-faith conduct as implicitly authorized by the words 'for cause.'").   In addition, "[t]he bad faith

determination focuses on the totality of the circumstances, specifically: (1) whether the debtor

has stated his debts and expenses accurately; (2) whether he has made any fraudulent

representation to mislead the bankruptcy court; or (3) whether he has unfairly manipulated the

bankruptcy code." *Eidson*, 76 F.3d at 220.   The *Marrama* decision also went on to state:

> In practical effect, a ruling that an individual's Chapter 13 case should be
> dismissed or converted to Chapter 7 because of prepetition bad-faith conduct,
> including fraudulent acts committed in an earlier Chapter 7 proceeding, is
> tantamount to a ruling that the individual does not qualify as a debtor under
> Chapter 13.

Id. at 373-74.   In this case, the debtor has engaged in significant bad faith conduct before,

during, and after filing his chapter 13 petition.   Bad faith constitutes cause to convert the

debtor's case to chapter 7 or makes him ineligible to proceed in chapter 13.

This case exhibits all three of the *Eidson* factors.   First, the debtor's schedules and

statement of financial affairs are misleading, at best.   The debtor omitted any mention of The

Mill Trust, and he disclosed no transfers to either The Mill Trust or Monyet on the Statement of

Financial Affairs.   He substantially undervalued his homestead on schedule A, and he

understated the amount and number of claims against him on schedule F.   On schedule I, he

claimed that Ms. Browne's net monthly income totals less than $5,000.00 per month, and on

schedule J, he claimed total household expenses of nearly $10,000.00 per month.   Yet he

recently testified that Ms. Browne pays all of the household expenses.   Second, the debtor's

plan itself is misleading.   It makes no mention of the debtor's plan to sell the Minneapolis

condo, and it does not provide for any treatment of the non-exempt proceeds of such a sale.   The

debtor has never discussed his plans to sell the Minneapolis condo with the chapter 13 trustee or

sought bankruptcy court approval to sell the property.[2]   The debtor never amended schedule J to

---

[2] It is not clear that the debtor has any authority to sell the Minneapolis condo.   Section 1303
grants the debtor certain powers of the chapter 13 trustee, exclusive of the chapter 13 trustee,
under 11 U.S.C. § 363.   The power to sell the estate's interest *and* the interest of a co-owner in

indicate that his monthly housing expenses would be reduced substantially if the Minneapolis condo was sold, or that Ms. Browne is leasing a new vehicle.   In addition, although the plan purports to pay all claims in full with interest, the debtor's schedules I and J make it clear that, if all presently filed claims are allowed, the plan will not be feasible.   Third, the debtor's pre-petition conduct indicates strongly that he has sought chapter 13 relief solely for the purpose of further delaying creditors.   The underlying conduct giving rise to most of the debtor's debts is nothing short of egregious.   And this chapter 13 case was filed on the eve of deadlines in separate cases to pay sanctions totaling $63,386.52 and produce financial records in connection with pursuit of the debtor's assets to satisfy claims.

In sum, the misleading information in the schedules, statement of financial affairs, and chapter 13 plan, the timing of the case filing, indicates that this case was designed for one purpose only: to thwart the collection efforts of various creditors.

## II.   Objections to Plan Confirmation

### A.   The modified plan does not provide for submission of the proceeds from the sale of the Minneapolis condo to the chapter 13 trustee.

A chapter 13 plan "shall "(1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan."   11 U.S.C. § 1322(a)(1).   Given the size of the proofs of claim filed and the net disposable income reported by the debtor on schedule J, it is apparent that the non-exempt proceeds from a sale of the Minneapolis condo must be submitted to the chapter 13 trustee for administration.   As discussed above, the debtor's modified does not even address the sale of the Minneapolis condo, and he has not sought the bankruptcy court's

property held in joint tenancy resides in § 363(h).   That section is not referenced in § 1303.   In any event, the debtor has not filed a motion seeking the bankruptcy court's authority to engage in such a transaction.   But for the efforts of Best & Flanagan, it is not clear that anyone would have knowledge of the debtor's plan to sell the Minneapolis condo.

authorization to sell the property.    Thus, the court should deny confirmation.

**B.      The modified plan was not filed in good faith.**

A bankruptcy court may confirm a proposed Chapter 13 plan only if the plan is proposed

in "good faith."    11 U.S.C. § 1325(a)(3).    The Eighth Circuit stated that, when considering the

debtors' good faith under 11 U.S.C. § 1325(a)(3):

> The bankruptcy court must look at factors such as whether the debtor has stated
> his debts and expenses accurately; whether he has made any fraudulent
> misrepresentation to mislead the bankruptcy court; or whether he has unfairly
> manipulated the Bankruptcy Code.

*Educ. Assistance Corp. v. Zellner*, 827 F.2d 1222, 1227 (8th Cir. 1987) (citing *In re Estus*, 695

F.2d 311 (8th Cir. 1982)).    The Eighth Circuit later held that the totality of the circumstances

test established in *Estus*[3] was a valid test for good faith to the extent that it was not supplanted

by § 1325(a)(3).    See *LeMaire*, 898 F.2d at 1349.    Therefore, in *LeMaire*, the Eighth Circuit

found that the following *Estus* factors, in addition to the *Zellner* test, were particularly relevant

to a determination of good faith:    the type of debt to be discharged and whether the debt is

nondischargeable in Chapter 7, and the debtor's motivation and sincerity in seeking Chapter 13

---

[3]The *Estus* court considered these factors in analyzing the totality of the circumstances:

(1) the amount of the proposed payments and the amount of the debtor's surplus;
(2) the debtor's employment history, ability to earn and likelihood of future
increases in income;
(3) the probable or expected duration of the plan;
(4) the accuracy of the plan's statements of the debts, expenses and percentage
repayment of unsecured debt and whether any inaccuracies are an attempt to
mislead the court;
(5) the extent of preferential treatment between classes of creditors;
(6) the extent to which secured claims are modified;
(7) the type of debt sought to be discharged and whether any such debt is
nondischargeable in Chapter 7;
(8) the existence of special circumstances such as inordinate medical expenses;
(9) the frequency with which the debtor has sought relief under the Bankruptcy
Reform Act;
(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and
(11) the burden which the plan's administration would place upon the trustee.

relief.  *See id.*

In the present case, the debtor's motivation and sincerity in seeking chapter 13 relief establishes his lack of good faith.   As discussed above, the facts and circumstances indicate that the only motivation for filing this plan was to stave off creditors.   The debtor's pre-petition conduct is egregious, and the court should not permit the debtor to continue abusing the judicial process to avoid his creditors.

### C.    Creditors would receive more in a chapter 7 liquidation than they would under the modified plan.

A bankruptcy court may confirm a proposed Chapter 13 plan only if "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date."   11 U.S.C. § 1325(a)(4). Here, even if the unliquidated debts are ignored, it appears that creditors will receive no more than $115,334.78 over a period of fifty-three months.   By contrast, creditors will receive at least $211,041.78 from the non-exempt proceeds of the sale of the homestead alone[4], and at least $2,500.00 in non-exempt funds held in the debtor's personal bank accounts.   In addition, a chapter 7 trustee may be able to recover sizeable fraudulent transfers to The Mill Trust, Monyet, or Ms. Browne.   Thus, the plan does not comply with 11 U.S.C. § 1325(a)(4).

### D.    The debtor does not have the ability to pay creditors in full.

A bankruptcy court may confirm a proposed Chapter 13 plan only if "the debtor will be able to make all payments under the plan and to comply with the plan."   11 U.S.C. § 1325(a)(6). The debtor does not have the ability to make the proposed payments under the plan.   As

---

[4]  The United States Trustee's calculation is as follows: (a) sale price=$1,200,000; (b) secured claim of TCF National Bank=$598,958.22; (c) Exempt amount under Minn. Stat. § 510.01, 510.02=$390,000.00.   Thus, (a) less (b) and (c)=$211,041.78.   Even if costs of sale total 7% of the total transaction price ($84,000.) and are borne by the estate, the distribution to creditors

5

discussed above, the proofs of claim filed in this case total over $1.5 million.   The debtor clearly

does not have the ability to pay such claims in full.   Even if the unliquidated claims are

disregarded, filed proofs of claim total $199,927.65, or $82,414.65 in excess of the amounts

referenced in the modified plan.   That would require additional payments of at least $1,555.00

per month for fifty-three months.   The debtor has not amended schedules I and J to demonstrate

how he could pay such additional funds into the plan and, as discussed above, he has not

committed any proceeds from the sale of the Minneapolis condo to the plan.

**E.      The debtor did not file his chapter 13 petition in good faith.**

A bankruptcy court may confirm a proposed Chapter 13 plan only if "the action of the

debtor in filing the petition was in good faith."   11 U.S.C. § 1325(a)(7).   For the reasons

discussed above, it is apparent that this debtor's petition was not filed in good faith.

**III.    Conclusion**

Allowing the debtor to proceed in chapter 13 is tantamount to permitting the debtor to

continue his campaign to thwart his creditors and the judicial process.   The right to proceed in

chapter 13 should be reserved for those debtors who are honest and sincere about filing a chapter

13 petition.   It is designed for those who want to repay creditors, not those engaged in a scheme

to avoid creditors.

The debtor's actions both before and during this case indicate that he seeks to unfairly

manipulate the Bankruptcy Code.

WHEREFORE, the United States Trustee objects to the debtor remaining in chapter 13

and also objects to confirmation of his chapter 13 plan.   The United States Trustee submits that

confirmation of the plan should be denied and that the motion of the United States Trustee for an

order converting the case to chapter 7 be granted.

---

totals $127,041.78.

DANIEL M. MCDERMOTT
United States Trustee
Region 12


DATED: November 12, 2015                    By:/e/ Colin Kreuziger
                                            Colin Kreuziger
                                            Trial Attorney
                                            MN Atty. No. 0386834
                                            1015 U.S. Courthouse
                                            300 South Fourth Street
                                            Minneapolis, MN   55415
                                            612-334-1350

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

**In Re:**                                                    **Chapter 13**

**Paul Robert Hansmeier,**                        **Bankruptcy No. 15-42460**

       **Debtor.**

---

## ORDER

---

The United States Trustee's motion to convert this case to chapter 7 came before the

Court.   For reasons stated orally and recorded in open court,

IT IS ORDERED:

1.        This chapter 13 case is converted to Chapter 7 under 11 U.S.C. § 1307(c).


Dated:                                        _____

                                                      Kathleen H. Sanberg
                                                      United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In Re:                                              **Chapter 13**

**Paul Robert Hansmeier,**                          **Bankruptcy No. 15-42460**

          **Debtor.**

---

## UNSWORN CERTIFICATE OF SERVICE

---

I, Audrey Williams, declare under penalty of perjury, that on November 12, 2015, I

served copies of the U.S. Trustee's Motion to Convert Case to Chapter 7, Exhibits, Verification,

and Memorandum of Law upon the following individuals via either the Court's CM/ECF system

and/or first class mail postage pre-paid:

**<u>Via Mail</u>**
Paul Hansmeier
100 3rd Ave S
Suite 3201
Minneapolis, MN 55401

**<u>Via CM/ECF</u>**

| | |
|---|---|
| Gregory A Burrell: | cmecfjzkmn@ch13mn.com |
| Paul A Godfread: | paul@godfreadlaw.com |
| Cynthia L Hegarty: | Chegarty@bestlaw.com, kdahl@bestlaw.com |
| Barbara J May: | maybarbaraj@gmail.com |
| Amanda K Schlitz: | amanda.schlitz@stinsonleonard.com, laura.schumm@stinsonleonard.com |
| Edward P. Sheu: | esheu@bestlaw.com, cstrom@bestlaw.com |
| Jason E. Sweet: | jsweet@boothsweet.com, info@boothsweet.com |

Executed on:   November 12, 2015                    <u>/e/Audrey Williams</u>
                                                    **Audrey Williams**
                                                    **Office of the United States Trustee**