# THE MILL TRUST

THIS TRUST AGREEMENT (this "agreement"), dated ___December___, 2010, is between Paul Robert Hansmeier as grantor (referred to in the first person or as the "grantor"), and Padraigin Lane Browne as trustee (referred to as the "trustee").

## ARTICLE 1. CREATION OF TRUST

**1.01 Name of Trust.** The name of the trust created by this agreement is The Mill Trust.

**1.02 Beneficiaries.** The contingent beneficiaries of the trust are my parents, my siblings, any future spouse that I may have, and any future descendants that I may have (the "Beneficiaries").

**1.03 Trust Estate.** With the execution of this agreement, I have transferred to the trustee, and the trustee has accepted, certain property as indicated on the books and records of the trustee. The trustee shall administer and distribute the initial trust estate and any additions to the trust estate in accordance with the provisions of this agreement.

**1.04 Additions to Trust.** At any time I or any other person may transfer additional property to the trustee for administration and distribution in accordance with this agreement.

**1.05 Type and Character of Trust.** The Mill Trust is irrevocable and I reserve no right to revoke, alter or amend the trust or any of the provisions thereof. Pursuant to Article 2.01, I have retained rights which cause transfers to the trust to be incomplete gifts for federal gift tax purposes and which cause the trust estate to be included in my taxable estate. Pursuant to Article 2.02, I have retained rights which cause the trust to be classified as a grantor trust for federal income tax purposes. After my death, or the waiver of the power's described above, the trust will be classified as a complex trust for federal income tax purposes.

## ARTICLE 2. ADMINISTRATION DURING THE GRANTOR'S LIFETIME

**2.01 Administration and Distributions During My Lifetime.** During my lifetime, the trustees shall manage the properties owned by the trust, pay the expenses of the trust, and distribute the net income and principal of the Trust Estate to such extent, including the whole thereof, and in such amounts and proportions, including all to one to the exclusion of the others, and at such time or times as the trustees determine, in the trustees' sole and absolute discretion, to or for the benefit of the Beneficiaries; provided, however, that at least thirty (30) days prior to making any payment or application of income or principal to any beneficiary, the trustees shall advise me in writing of their intention to pay over or apply income or principal to a beneficiary and I retain the right to veto ("Veto") any such intended payment or application by directing the



EXHIBIT
Browne 8
10-28-15
Reporter: Kelley Zilles    Exhibit 1 Page 1

trustees in writing not to make the payment or application, and, if I exercise such Veto power, the trustees shall not make the intended payment or application. Any net income (which may be the whole of such income) not so paid over or applied shall be accumulated and added to the principal of the trust at least annually and thereafter shall be held, administered and distributed as a part thereof.

**2.02   Right to Substitute Property.** I retain the right, exercisable in a non-fiduciary capacity without approval or consent of any person acting in a fiduciary or non-fiduciary capacity, to acquire any property held in the trust by substituting property of equivalent value. I may disclaim my right to acquire assets in a writing, duly executed and acknowledged, and filed with the trustee making specific reference to the trust and specifically disclaiming the right to acquire assets.

## ARTICLE 3   DISPOSITION AFTER THE GRANTOR'S DEATH

**3.01   Division of Trust Estate.** After my death, the remaining assets of the trust estate shall be held in trust for my spouse (if I am married at the time of my death) pursuant to Section 3.02 below. If I am not married at the time of my death, the remaining assets of the trust estate shall be divided into separate trusts for my descendants (if any) by right of representation. If I have no living spouse or descendants at the time of my death, the remaining assets of the trust estate shall be divided into separate trusts for the descendants of my parents by right of representation. The trustee shall administer and distribute each separate trust in accordance with the provisions of Article 3.02 below.

**3.02   Separate Trusts.**

(a)   <u>Distributions</u>. The trustee may distribute the net income and principal of each separate trust governed by this paragraph to or for the benefit of the primary beneficiary or his or her descendants, at such times and in such amounts as the trustee determines in the trustee's sole and absolute discretion. Without in any way limiting the discretion of the trustee, the grantors suggest that the trustee consider making distributions for the health, support, maintenance and education of the primary beneficiary. The primary beneficiary may serve as the trustee of his or her own trust after reaching the age of 30.

(b)   <u>Disposition Upon Death of the Primary Beneficiary</u>.

(1)   <u>Power of Appointment</u>. Upon the primary beneficiary's death, the trustee shall distribute any remaining assets of the separate trust for the primary beneficiary as the primary beneficiary appoints pursuant to Article 5.07. The primary beneficiary may appoint assets outright or in trust to whomever or whatever the primary beneficiary chooses other than the primary beneficiary's estate, the primary beneficiary's creditors and the creditor's of the primary beneficiary's estate.

(2) <u>Disposition in Default of Exercise of Power of Appointment</u>. If the primary beneficiary fails to appoint the assets of the primary beneficiary's share, the trustee shall divide the assets of the primary beneficiary's share among his or her descendants by right of representation and hold the assets in trust pursuant to the terms and conditions set forth in this Article 3.02. If the primary beneficiary has no descendants, the trustee shall divide the assets of the primary beneficiary's share among my descendants, or if I have none, among my parent's descendants, by right of representation, and hold the assets in trust pursuant to the terms and conditions set forth in this Article 3.02.

## ARTICLE 4  TRUSTEE

### 4.01  Appointment and Succession.

(a) <u>Appointment of Additional Trustees</u>. The trustee of a trust at any time may appoint one or more additional trustees of the trust by signed notice filed in the trust records and delivered to each appointed trustee and each beneficiary then eligible to receive trust income. The appointment may be for general or limited purposes and for a specified or indefinite term. The appointment shall be effective upon delivery of the notice of appointment to the appointed trustee or on such later date as may be specified in the notice. Any person authorized by law to administer trusts is eligible to serve as an successor or additional trustee.

(b) <u>Resignation</u>. A trustee at any time may resign by signed notice filed in the trust records and delivered to each beneficiary then eligible to receive trust income. If the trustee is a co-trustee, the resignation shall be effective on the date the notice of resignation is filed in the trust records or on such later date as may be specified in the notice of resignation. If the trustee is the sole trustee, the resignation shall be effective on acceptance by a properly appointed successor trustee.

(c) <u>Incapacity</u>. A trustee who becomes incapacitated shall be considered to have resigned as of the date the physician's statement certifying the trustee's incapacity is filed in the trust records.

(d) <u>Successors</u>. If the original trustee should fail to qualify or cease to act, the successor trustees shall be appointed by the trust protector pursuant to Article 4.06 below.

### 4.02  Action by Co-Trustees.
When more than one trustee is serving, all distributions and all other transactions on behalf of the trust shall require a majority of the trustees to act together. In the event of a difference of opinion among the trustees, the decision of the majority of them shall prevail, but the dissenting trustee shall not be responsible for any action taken by the majority pursuant to their decision. If only two (2) trustees are in office, they must act unanimously.

**4.03 Powers of Successor Trustee.** A duly appointed successor trustee shall have all of the title, rights, powers and duties of the original trustee without any act of transfer. No successor trustee shall be obligated to examine the accounts, records and acts of any previous trustee or to proceed against any previous trustee for any act or omission to act.

**4.04 Bonds Waived.** Each trustee shall be permitted to qualify without giving a bond or other undertaking in any jurisdiction for the performance of the trustee's duties, or, if bond is required by law, without the necessity of sureties.

**4.05 Compensation of Trustee.** If requested by the trustee, the trustee shall be entitled to reasonable compensation commensurate with services actually performed and to reimbursement for expenses properly incurred. Generally, a fee based solely on a percentage of income or principal shall not be considered reasonable compensation. However, in the case of a corporate trustee, a fee determined with reference to a published fee schedule that compares favorably with the published fee schedules of other corporate fiduciaries having comparable capitalization and doing business in the same community may be considered reasonable compensation. Under no circumstances shall the trustee be entitled to a fee based on a percentage of principal for services rendered in connection with a change in fiduciaries or an interim or terminating distribution of principal.

**4.06 Trust Protector.** The trust protector is designated on Exhibit "A" which is attached hereto and incorporated herein by this reference. The trust protector may appoint its own successor, or if it should fail to do so, then a successor trust protector may be appointed by the majority vote of the beneficiaries. Notwithstanding the above, no Interested Person may serve as trust protector. Before the trust protector may take any action, the trust protector must obtain the written consent of at least one Interested Person. With the consent of at least one Interested Person, the trust protector shall have the power to remove and replace any trustee, with or without cause at any time. With the consent of at least one Interested Person, the trust protector shall at all times have a special power of appointment (exercisable in a non-fiduciary capacity without the consent of any person in a fiduciary capacity) to appoint the assets of the trust, as described in Article 5.07, to or for the benefit of any person other than the trust protector, the trust protector's estate, the trust protector's creditors, or the creditors of the trust protector's estate. The trust protector shall have the right to disclaim and renounce the special power of appointment described above by delivery of an acknowledged written instrument to the trustees stating that the power has been disclaimed and the effective date of the disclaimer.

Grantor is not imposing any fiduciary responsibility on the trust protector to monitor the acts of the trustees. The trust protector shall not be liable for failing to remove any trustee even if such Trustee may be guilty of a gross violation of his or her fiduciary duties hereunder. The trust protector shall have no liability to the Trust, the grantor, the trustees, the beneficiaries nor any other person for the exercise of his discretion hereunder. The grantor and trustees acknowledge that the exercise of the trust protector's discretion may have unanticipated adverse effects and the

grantor and the Trust shall indemnify and hold the trust protector harmless from any liability therefrom.

**4.07   Exculpation.** A trustee shall not be liable for an act or omission done in good faith to promote the best interests of the beneficiaries, unless the act or omission constitutes gross negligence, intentional misconduct or a knowing violation of law. A trustee's act or omission shall be presumed to be a proper exercise of the trustee's authority, in the absence of clear and convincing proof to the contrary.

## ARTICLE 5. ADMINISTRATION OF TRUSTS

**5.01   No Supervised Administration.** The trustee shall administer each trust free from active court supervision unless changed circumstances that I could not have anticipated justify court supervision to protect the interests of the beneficiaries.

**5.02   Administrative Powers.** Subject to any limitations under other provisions of this agreement, the trustee shall have power and authority, without authorization or approval of any court, to perform every lawful act it considers advisable in the management of each trust, including, without limitation, the following powers:

(a) <u>Tax Elections.</u> To make all elections and allocations and to take all other appropriate actions with respect to taxation of every kind applying to me or any trust.

(b) <u>Allocations</u>. To determine whether items should be charged or credited to income or principal or allocated between income and principal, without regard to how the items are treated for federal and state tax purposes, including, without limitation, the power (1) to amortize or not amortize any part or all of any premium or discount, (2) to apportion any part of all of the profit resulting from the maturity or sale of any asset, whether purchased at a premium or a discount, between income or principal and (3) to charge expenses, including expenses of administration, to income or principal.

(c) <u>Retention of Assets</u>. To retain any property for such period as the trustee shall determine, without liability for loss or diminution in value.

(d) <u>Reserves</u>. To establish reasonable reserves for depreciation, obsolescence, amortization and depletion.

(e) <u>Settlement of Claims</u>. To settle, compromise or abandon debts or claims due to or made against any trust.

(f) <u>Investments</u>. To acquire by purchase, lease or otherwise, and to retain, temporarily or permanently, all kinds of real and personal property, wherever located, including, without limitation, common and preferred stocks, puts, calls and other instruments or contracts

relating to the sale or purchase of securities, unsecured obligations, interests in common trust funds and in investment trusts or companies, life insurance policies and annuities, and interests of all kinds in real estate, water, mineral and oil and gas properties, partnerships, ventures and syndicates, all without diversification as to kind or amount.

(g) <u>Business Entities</u>. To participate in and transfer property to corporations, partnerships, limited liability companies, syndicates, and other business associations; to exercise stock options, vote securities, and participate in voting trusts; to enter into partnership agreements, operating agreements and shareholders' agreements; and to consent to exchanges, conversions, mergers, dissolutions, and reorganizations of all kinds.

(h) <u>Real Estate</u>. To lease all property and all tangible personal property used in connection with real property for such periods, to such tenants and upon such terms as it considers advisable, and to execute and deliver leases containing such covenants as it considers appropriate to effect any leasing; to partition or divide in such manner as it considers appropriate any real property owned jointly or in common with others; to construct buildings and improvements of every kind and to carry on alterations and remodeling; to employ and pay real estate brokers and managing agents; to settle and determine any disputed real property boundaries; and otherwise to deal with real property in any manner customary in the real estate business.

(i) <u>Sales and Disposition</u>. To sell, lease, exchange, mortgage, option, encumber or otherwise dispose of any property, making sales publicly or privately and wholly or partly on credit.

(j) <u>Loans</u>. To loan money to or borrow money from any person, including any beneficiary or trustee, at any time and on any terms, and to secure any loan by encumbrance on any property. Without limiting the generality of the foregoing, the trustee shall have power to borrow on margin for the purpose of carrying or trading in securities of all kinds. The trustee may also guarantee loans made to entities owned by the trust, or by myself, and the trustee may mortgage or pledge property of the trust estate as security for loans which are made to the trust, myself, or to any entity owned by the trust or myself.

(k) <u>Nominees</u>. To hold property in the name of any nominee, including any trustee, with or without designation of fiduciary capacity.

(l) <u>Agents</u>. To employ and pay the fees and expenses of agents, consultants and advisors, including investment counsel, property managers, appraisers, custodians, accountants and attorneys. Without limiting the generality of the foregoing, the trustee shall have power to delegate responsibility for the investment of the assets of any trust to investment advisors and shall incur no liability for losses resulting from investment decisions made by such investment advisors.

(m) <u>Change Place of Administration</u>. To change from time to time the place of administration of this trust or any trust created hereunder. Following a change in the place of administration of a trust, Minnesota law shall continue to govern all questions as to the validity and construction of the trust, but the law of the new place of administration shall govern all questions pertaining to the administration of the trust.

(n) <u>Distribution In Cash or Kind</u>. To distribute property in shares composed of any combination of cash or interests in property. The trustee may distribute property in kind without regard to its income tax basis and shall not be required to adjust the amount of any share in order to compensate for the income tax liability inherent in appreciated property distributed in satisfaction of the share.

(o) <u>Insurance Policies</u>. To purchase life insurance policies on the lives of the grantor or any beneficiary, or to cancel, borrow against, take distributions from, or to make any change or adjustment or collection in relation to any such policy.

(p) <u>"Prudent Person" Rule may be Waived in Sole Discretion of Trustees</u>. In addition to the investment powers conferred above, the Trustee is authorized (but not directed) to acquire and retain investments not regarded as traditional for trusts, including investments that would be forbidden or would be regarded as imprudent, improper or unlawful by the "prudent person" rule, "prudent investor" rule, or any other rule or law which restricts a fiduciary's capacity to invest. The Trustee, in the exercise of sole and absolute discretion, may invest in any type of property, wherever located, including any type of security or option, improved or unimproved real property, and tangible or intangible personal property and in any manner, including direct purchase, joint ventures, partnerships, limited partnerships, limited liability companies, corporations, mutual funds, business trusts or any other form of participation or ownership whatsoever. In making investments, the Trustee may disregard any or all of the following factors:

(i) Whether a particular investment, or the trust investments collectively, will produce a reasonable rate of return or result in the preservation of principal.

(ii) Whether the acquisition or retention of a particular investment or the trust investments collectively are consistent with any duty of impartiality as to the different beneficiaries. The grantor intends that no such duty shall exist.

(iii) Whether the trust is diversified. The grantor intends that no duty to diversify shall exist.

(iv) Whether any or all of the trust investments would traditionally be classified as too risky or speculative for trusts. The entire trust may be so invested. The grantor intends the Trustee to have sole and absolute discretion in determining what constitutes acceptable risk and what constitutes proper investment strategy.

The grantor's purpose in granting the foregoing authority is to modify the "prudent person" rule, "prudent investor" rule, or any other rule or law which restricts a fiduciary's ability to invest insofar as any such rule or law would prohibit an investment or investments because of one or more factors listed above, or any other factor relating to the nature of the investment itself. The grantor does this because the grantor believes it is in the best interests of the Beneficiaries of the trusts created hereunder to give the Trustee broad discretion in managing the assets of the trusts created hereunder.

**5.03    Delegation of Powers.** A trustee at any time may (a) delegate to any co-trustee authority to exercise any of the trustee's rights or powers under this agreement and (b) revoke in whole or part a delegation previously made. The delegation or revocation shall be effected by an instrument signed by each trustee joining in the delegation or revocation and delivered to the delegate. While a delegation is in effect, the delegate may exercise the rights and the powers delegated with the same force and effect as if the delegating trustee had personally joined in the exercise of the delegated rights and powers. However, the delegating trustee shall not be liable for any action so taken.

**5.04    Disclosures.** The trustee shall not disclose the existence of the trust, copies or excerpts of the trust agreement, information regarding the assets or activities of the trust, or the financial records of the trust, to any person without the written consent of the trust protector.

**5.05    Third Party Reliance.** For the purpose of verifying a trustee's authority to perform any act referred to in this Article 5, any person dealing with the trustee may rely on a copy of this agreement or selected excerpts from this agreement, certified as correct by a notary public, to the same extent as if the certified copy were the original. No person dealing with a trustee shall be under any obligation to see to the application of any payment made to the trustee or to inquire into the validity, expediency, or propriety of any of the trustee's acts or omissions.

**5.06    Spendthrift Clause.** The interest of a beneficiary of any trust hereunder may not be either voluntarily or involuntarily transferred before the payment or delivery of the interest to the beneficiary by the Trustee. No beneficial interest in any trust created hereunder, whether in income or in principal, shall be subject to anticipation, assignment, pledge, sale or transfer in any manner, and no beneficiary of any such trust or other person interested therein shall have the power to anticipate, encumber or charge his or her interest therein, and no trust estate created

hereunder shall be liable for or subject to the debts, contracts, obligations, liabilities or torts of any beneficiary of any such trust or other person interested therein; provided, however, that nothing contained herein shall be construed as preventing any beneficiary from making a qualified disclaimer within the meaning of Section 2518 of the Code with respect to interests herein.

### 5.07 Power of Appointment.

(a) Scope. In the exercise of a power of appointment, the holder of the power may: (1) impose spendthrift restrictions and other lawful conditions; (2) make appointments outright or in trust; (3) create limited interests, including term and life estates and remainder interests; and (4) create general or special powers of appointment.

(b) Rule Against Perpetuities. The holder of a power of appointment may not exercise such power in violation of applicable rules against perpetuities or similar rules. Any attempt to do so shall be ineffectual, and the gifts made in default of appointment shall take effect.

(c) Restrictions. The holder of a power of appointment may not exercise the power of appointment in the discharge of any legal obligation of the holder or of the holder's estate.

(d) Method of Exercise.

(1) A holder of a power of appointment must exercise the power by a signed instrument that specifically refers to and clearly shows an intent to exercise the power. General exercises of powers of appointment shall not have that effect.

(2) A holder of a power of appointment may exercise the power through a will and such exercise shall be effective whether or not the will is probated.

(3) In determining whether a holder of a testamentary power of appointment has exercised such power, the trustee may rely on the holder's last will (whether or not admitted to probate), or act on the assumption the holder died intestate if the trustee receives no knowledge of the existence of the holder's last will within three months after the holder's death.

## ARTICLE 6. MISCELLANEOUS PROVISIONS

6.01 **Persons under Legal Disability.** The guardian or conservator of the estate of a person under legal disability or, if none, the person having the right of custody of the person, and any adult ancestor of an unborn person, may act for the disabled or unborn person for all

purposes of this agreement, including, without limitation, receipt of notices and reports, approval of investments and accounts and consent to allocations and distributions.

**6.02    Forfeiture.** If any beneficiary under this trust, in any manner, contests or disputes the validity or effect of any provision of this trust or any action of the trustee or trust protector without clear and convincing evidence of fraud, such beneficiary and all of his or her descendants shall be deemed to have predeceased me for all purposes of this trust.

**6.03    Definitions.** Unless the language or context clearly indicates that a different meaning is intended, the terms in quotations have the meanings specified in this Article 6.03.

(a) <u>Descendants</u>. The "descendants" of a person means all lineal descendants of the person, with the relationship of parent and child at each generation being determined by the definitions of those terms applicable for purposes of intestate succession under Minnesota law. However, an adopted person shall be considered a lineal descendant of the person only if the adopted person has been adopted while under the age of 18.

(b) <u>Incapacitated Person</u>.

(1) <u>Definition</u>. A person is "incapacitated" if the person is impaired by reason of mental illness, mental deficiency, physical illness or disability, chronic use of drugs, chronic intoxication or other cause to the extent of lacking sufficient understanding or capacity to make or communicate responsible decisions.

(2) <u>Determination</u>. A person shall be deemed to be incapacitated or to have recovered from temporary incapacity if so determined by (i) a physician who has personally examined the person, as well as all persons specifically named in this agreement as a trustee or successor trustee (other than the person whose capacity is in question), or (ii) if so determined by a court of competent jurisdiction. If any interested person disputes a determination as described above, the interested person may petition a court of competent jurisdiction for a finding, and the court's finding shall supersede the determination. The trustee shall pay from the trust estate the expenses of any examination or court proceeding pursuant to this Article 6.03(b).

(3) <u>Release and Disclosure of Medical Information</u>. Each grantor, trustee or successor trustee of a trust governed by this agreement, by agreeing to be bound by the terms of this agreement: (i) agrees to cooperate in any examination reasonably necessary to carry out the provisions of this Article 6.03(b); (ii) waives the doctor-patient privilege with respect to the results of such examination, to the extent necessary to implement the provisions of this Article 6.03(b); (iii) authorizes the release and disclosure of such information as may be necessary to implement the provisions of this Article 6.03(b), including without limitation information that would otherwise be protected from disclosure by the Health Insurance Portability and

Accountability Act ("HIPPA"); and (iv) appoints the trustee as his or her personal representative to access, use and disclose any information governed by HIPAA.

(c) <u>Interested Person</u>. "Interested Person" means the named beneficiaries, trustees, successor trustees, and the grantor of the trust.

(d) <u>Internal Revenue Code</u>. "Internal Revenue Code" means the Internal Revenue Code of 1986, as amended, or the corresponding provisions of any subsequent federal tax law.

(e) <u>Person</u>. "Person" means a legal entity, including, without limitation, a natural person, a corporation, a partnership, a limited liability company, a trust and an association.

(f) <u>Spouse</u>. A person's spouse, including the Grantor's spouse, shall include any person legally married to the person, regardless of their marital status at the time this Trust was created. A spouse shall also include any person who was legally married to the person at the time of the person's death. Any person who later becomes divorced from the Grantor or any beneficiary of this Trust shall no longer be included as a spouse for any purpose of this Trust.

(g) <u>Trust Estate</u>. "Trust estate" in reference to a particular trust means all property comprising the trust at the time the term requires definition.

(h) <u>Trustee</u>. "Trustee" and any pronoun in reference to trustee always refer interchangeable to the male or female person or persons or to the institution or any combination of them then acting.

      **6.04   Constructional Rules.** The following constructional rules shall govern the interpretation of this agreement.

(a) <u>Distributions by Right of Representation</u>. A distribution to the descendants of a person (the "designated person") by right of representation shall be divided into as many equal shares as there are, at the time such distribution is required to be made, (1) living descendants in the generation nearest to the designated person that contains one or more living descendants and (2) deceased descendants in the same generation who have living descendants. One share shall be distributed to each living descendant in the nearest generation. Any remaining shares shall be combined and then divided in the same manner among the living descendants of the deceased descendants as if the living descendants who were allocated a share and their living descendants had predeceased us.

(b) <u>Discretion of Trustee</u>. The power of the trustee to determine the extent and nature of any distribution under this trust shall be exercisable in the trustee's sole and absolute discretion and no beneficiary or other interested person shall have standing to object to the exercise of such power.

(c) <u>Inapplicability of Anti-Lapse Statute</u>. A devise under this agreement that is subject to the condition that the devisee survive me shall lapse if the devisee fails to survive me. No statute or rule of law shall alter that result.

(d) <u>Contingent Remainder Interests</u>. The provisions of this agreement that created contingent remainder interests upon termination of preceding interests shall not limit or otherwise affect the trustee's discretionary power to distribute principal, even though a discretionary distribution may have the effect of terminating a contingent remainder interest through exhaustion of the trust estate.

(e) <u>Perpetuity Savings Clause</u>. Neither this trust, any trust created by this trust nor any trust created pursuant to the exercise of a power of appointment granted pursuant to this trust, shall continue beyond the period set forth by the rule against perpetuities as applied under the laws of the State of Minnesota. Upon the expiration of the rule against perpetuities period, the trustee of the applicable trust shall terminate the trust and shall distribute the assets of the trust to the beneficiaries of the trust who are then permissible distributees of the trust in accordance with their relative interests in the trust. If the permissible distributees' relative interests are uncertain, the trustee, in its sole and absolute discretion, may distribute the property of the trust to the permissible distributees as the trustee deems to be consistent with the grantor's intent as set forth in this trust Agreement. In the event the trustee is uncertain as to the grantor's intent, the trustee may seek instructions or approval from a court having jurisdiction over the administration of the trust.

(f) <u>Governing Law</u>. Minnesota law shall govern all questions as to the validity and construction of this agreement. The administration of this Trust and all trusts created hereunder shall be governed by the laws of the jurisdiction in which the Trust is being administered.

(g) <u>Situs</u>. The situs of this trust and all trusts created hereunder shall be the jurisdiction where the trustee is located. If the location of the trustee should change to another jurisdiction, the trust estate shall thereafter be administered exclusively under the laws of (and subject, as required, to the exclusive supervision of the courts of) the jurisdiction to which the trustee has been located.

(h) <u>Counterparts</u>. This agreement may be executed simultaneously or in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one agreement.

* * *

The Manager and Member hereby adopt, accept and agree to be bound by all the terms and provisions of the Agreement.

Dated: 12/28/10

MANAGER:

_____
Paul Robert Hansmeier

Dated: 12/28/10

MEMBER:

THE MILL TRUST

_____
Padraigin Lane Browne, Trustee

18

Exhibit 1 Page 13

IN WITNESS WHEREOF, the undersigned have signed this agreement on the dates set forth below to be effective for all purposes as of the date first above written.

_____
Paul Robert Hansmeier, grantor

STATE OF MN     )
                )ss.
COUNTY OF Hennepin )

On 12/28, 2010, personally appeared before me Paul Robert Hansmeier, signer of the foregoing instrument, who duly acknowledged having executed the same.

Witness my hand and official seal.

_____
Notary Public

_____
Padraigin Lane Browne, trustee

STATE OF MN     )
                )ss.
COUNTY OF Hennepin )

On 12/28, 2010, personally appeared before me Padraigin Lane Browne, signer of the foregoing instrument, who duly acknowledged having executed the same.

Witness my hand and official seal.

_____
Notary Public

- 13 -

Exhibit 1 Page 14

# EXHIBIT A
## APPOINTMENT OF TRUST PROTECTOR

Pursuant to Article 4.06 of The Mill Trust dated 12/28, 2010, the grantor hereby appoints The Law Office of Lee S. McCullough, III, PC, or its successors, as the trust protector.

_____
Paul Robert Hansmeier, grantor


The Law Office of Lee S. McCullough, III, PC, hereby accepts the appointment as trust protector of The Mill Trust dated 12/28, 2010.

THE LAW OFFICE OF LEE S. McCULLOUGH, III, PC, trust protector

_____
Lee S. McCullough, III, President

- 14 -

Exhibit 1 Page 15