UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                                                                                Chapter 13 Case

Paul Hansmeier,                                                                         Bky. No. 15-42460 (KHS)

Debtor.

**JOINT OBJECTION TO CONFIRMATION OF DEBTOR'S PROPOSED MODIFIED CHAPTER 13 PLAN**

1. This bankruptcy case was commenced by a petition filed by the Debtor under Chapter 13 of Title 11 of the United States Code on July 13, 2015. This case is now pending before this Court. The confirmation hearing on the Debtor's proposed modified Chapter 13 plan dated September 15, 2015 (the "Plan") is scheduled for November 19, 2015. Hearing on confirmation of the Plan is scheduled for November 19, 2015 at 10:30 a.m. before the Honorable Kathleen H. Sanberg in Courtroom No. 8 West, at the U.S. Bankruptcy Court, U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota.

2. Best & Flanagan LLP ("B&F"), Booth Sweet LLP and Godfread Law Firm (collectively "Objecting Creditors") object to confirmation of the Plan for the reasons set forth below and pursuant to 11 U.S.C. § 1322(a)(1), § 1325(a)(3) and § 1325(b)(1), Bankruptcy Rules 3015(f) and 9014 and Local Rules 3015-3 and 3020-3.

3. Objecting Creditors request the Plan be denied confirmation because: (1) the Debtor cannot meet the good faith requirements of 11 U.S.C. § 1325(a)(3), and the petition was not filed in good faith as required by 11 U.S.C. § 1325(a)(7); (2) the Plan does not propose to submit all of the Debtor's projected disposable income to payments as required by § 1325(b)(1),

1

and the Plan does not provide for payment of all debts; and (3) the Plan is not feasible under 11 U.S.C. § 1325(a)(6).

4. The Court has authority to hear and finally determine this objection under 28 U.S.C. §§ 1334 and 157, 11 U.S.C. § 1325, and Bankruptcy Rules 3015, 5005 and 9014. The determination of this objection constitutes a core proceeding.

### The Plan does not provide for payment of all claims.

5. The Objecting Creditors are the holders of several judgments (the "Judgments") against the Debtor, including through assignments of judgments, filed in the Hennepin County District Court, File No. 27-cv-12-20976 (the "Guava Case"), and by representation in the companioned Hennepin County Court File No. 27-cv-14-15391 (the "AF Holdings Case"). *See Claims Register Nos. 3-7.* These Judgments are listed in the Debtor's schedules, although the amounts the Debtor identified are incorrect.

6. These Judgments and others listed below are in favor of B&F, Godfread Law P.C., Phillip Gainsley, Esq., Thompson Hall Santi Cerny & Katkov (formerly Thompson Hall Santi Cerny & Dooley), and Sandipan Chowdhury, Anthony Smith, Paul Godfread, and Alan Cooper, through his counsel Booth Sweet LLP (collectively, "Judgment Creditors").

7. The Judgments, along with other related judgments and liabilities of the Debtor, were based on the Debtor's bad-faith litigation and attempted fraud on the courts.

8. In addition to the Judgments, the Debtor identified in his schedules other liabilities from other lawsuits as well as credit card debt, income taxes, and real estate debt.

*The Guava Case*

9. The Judgments issued in the Guava Case arise from sanctions awarded after a January 25, 2013 hearing on the Judgment Creditors' motions to quash subpoenas issued by the

2

Debtor's law firm Alpha Law Firm LLC ("Alpha") on behalf of an entity known as "Guava LLC," organized under the laws of the Federation of Saint Kitts and Nevis, a Caribbean island with stringent asset-protection laws. At the January 25, 2013 hearing, the court stated the case would be dismissed. *See Exhibit 1, Guava v. Merkel (Minn. Ct. App. 2014).*

10. Less than two weeks later, the Debtor transferred $64,970 from Alpha's operating account to "Class Action Justice Institute, LLC," of which the Debtor was the sole member. *See Exhibit 2, copy of February 6, 2013 Check.*

11. On March 1, 2013, the court issued an Order to Show Cause against Alpha and others as to why they should not be sanctioned for bad-faith litigation. *See Exhibit 3, Mar. 1, 2013 Order to Show Cause and Mar. 7, 2013 Amended Order to Show Cause.*

12. One week after the order to show cause, the Debtor transferred $80,000 from Alpha to his personal account for a down payment toward his mortgage at TCF Bank in connection with the purchase of his homestead, Unit 3201 of The Carlyle, 100 Third Avenue South, Minneapolis, Minnesota, leaving Alpha's TCF Bank account nearly empty. *See Exhibit 4, copy of Mar. 13, 2013 Check.*

13. On August 30, 2013, the court awarded $63,386.52 against Alpha, along with Alpha's associate Michael Dugas and their "client", the plaintiff Guava, LLC. On August 4, 2014, the Minnesota Court of Appeals substantially affirmed the judgment. *See Exhibit 1.*

14. On January 20, 2015, the Hennepin County District Court amended the $63,386.52 judgment against Alpha to name the Debtor as a judgment debtor based on the alter-ego status between Alpha and the Debtor. *See Exhibit 5, Jan. 20, 2015 Order Amending Judgment.*

15. On June 29, 2015, the court issued a post-judgment discovery order requiring the Debtor to show cause why he should not be held in contempt for violating the court's order compelling him to turn over financial records for post-judgment discovery, as well as authorizing subpoenas to the Debtor's wife and her employer to locate her banking institutions. *See Exhibit 6, June 29, 2015 Post Judgment Discovery Order.* The court gave the Debtor until July 14, 2015 to provide financial records. Rather than comply, the Debtor filed this petition on July 13, 2015.

16. On August 17, 2015, the Minnesota Court of Appeals affirmed the order amending the judgment against the Debtor based on his alter-ego relationship with Alpha. *See Exhibit 7, Guava v. Merkel (Minn. Ct. App. 2015).*

*The AF Holdings Case*

17. On October 22, 2013 in AF Holdings LLC v. Chowdhury, in the United States District Court for the District of Massachusetts, case no. 12-cv-12105-JLT, issued a Final Judgment Jointly and Severally Against Plaintiff [AF Holdings LLC, another mysterious offshore entity like Guava LLC] And Its Aliases, including the Debtor, in the amount of $64,180.80. *See Claim No. 3.*

18. On October 6, 2013, the Judgment in the AF Holdings Case was docketed in the Hennepin County District Court and later companioned with the Guava Case for purposes of post-judgment collection.

19. On June 6, 2015, the Judgment in the AF Holdings Case was docketed in the United States District Court for the District of Minnesota, case no. 15-mc-00044, for purposes of post-judgment discovery.

*The Lightspeed Case*

20. On June 5, 2015, in *Lightspeed Media Corp. v. Smith*, Case No. 12-cv-889-DRH-

4

SCW, the United States District Court for the Southern District of Illinois issued a contempt order requiring the Debtor and his former law partners to pay $65,263 no later than July 15, 2015. *See Claim No. 8.*

21. Rather than pay the award, the Debtor filed this petition on July 13, 2015.

22. Further, the Debtor filed an appeal of the contempt order, and any further attorneys' fees or sanctions, including any cost award, which may arise from that appeal, are not provided for in the Plan.

*The Ingenuity 13 Case*

23. On May 6, 2013, in *Ingenuity 13, LLC v. Doe*, the United States District Court for the Central District of California issued a sanctions award against the Debtor and others in the amount of $81,319.72. *See ECF No. 18 and Claim No. 12.*

24. That order is on appeal and the Debtor's portion of the principal amount of the sanctions, $118,791, has, according to the Debtor, been already paid into trust in the form of a supersedeas bond held by Sur-Tec Insurance Company.

25. Any further sanctions or attorneys' fees relating to that case have not been provided for in the Plan.

*The Prenda Law Case*

26. On August 20, 2015, in the United States District Court for the Northern District of Illinois, case no. 13-C-4341, the court issued an order granting attorneys' fee and punitive damages against Prenda Law, Inc. ("Prenda") and its affiliates. *See Claim Nos. 9-10.*

27. On September 29, 2015, the creditors in that action filed a petition for attorneys' fees and a request for punitive damages, including against the Debtor, based on the Debtor's affiliation with Prenda.

5

2239948

28. As of the date of the petition, the outstanding claim is for $678,865.97, and no portion of that claim is provided for in the Plan even though the Debtor identified that lawsuit as a pending action in which he was a party.

*The Cooper Case*

29. On July 15, 2015, the Hennepin County District Court issued a judgment in the amount of $255,000 against Prenda, in *Cooper v. Steele, et al.*, Court File No. 27-cv-13-3463.

30. The creditor, Cooper, filed an objection to the Debtor's plan, *see ECF No. 29.*

31. Because Prenda has been determined to be an alias of the Debtor, and because the Debtor identified that case as one in which he was a party, the plaintiff in that case has filed a claim against the Debtor in the amount of $250,000. See Claim No. 11.

*The Judgments and other debts exceed the amounts proposed to be paid in the Plan.*

32. The amounts of the Judgments are detailed as follows and, together with other debts described below, exceed the amounts identified by the Debtor in his schedules and in his proposed Plan:

- The first B&F Judgment was entered on September 23, 2013 in the Guava Case, in the original principal amount of $18,334.75 and began accruing interest at 4% per annum under Minn. Stat. § 549.09. The Judgment was against Alpha, Guava LLC, and Michael Dugas. On October 6, 2014, the Judgment was increased by $4,310.23 in costs and disbursements. On October 6, 2014, another B&F Judgment of $3,300 was entered against Alpha based on discovery sanctions. On January 25, 2015, the court determined that the Debtor was Alpha's alter ego. On April 6, 2015, another B&F Judgment was entered in the amount of $1,154.10 against Alpha, Guava, and Dugas for appellate costs in Appeal No. A13-2064. On June 29, 2015, another B&F Judgment was entered against

6

2252498

the Debtor in the amount of $3,500, again based on discovery sanctions, was issued. As of the date of the petition, together with interest, and $552 in additional costs reflected in the court record, the B&F Judgments against the Debtor totaled $32,189.81. *See Claim No. 4.*

- The Godfread Judgment was entered in the Guava Case on September 23, 2013 in the original principal amount of $4,537.50 and began accruing interest at 4% per annum under Minn. Stat. § 549.09 ($0.50 daily rate), plus a $7 assignment of judgment cost entered pre-petition. As of the petition, the Godfread Judgment was $4,873.50. *See Claim No. 5.*

- The Thompson Hall Judgment was entered in the Guava Case on September 23, 2013 in the original principal amount of $12,646 and began accruing interest at 4% per annum under Minn. Stat. § 549.09 ($1.39 daily rate), plus a $7 assignment of judgment cost entered pre-petition. As of the date of the petition, the Thompson Hall Judgment was $13,547.88. *See Claim No. 6.*

- The Gainsley Judgment was entered in the Guava Case on September 23, 2013 in the original principal amount of $6,525 and began accruing interest at 4% per annum under Minn. Stat. § 549.09 ($0.72 daily rate), plus a $7 assignment of judgment cost entered pre-petition. As of the date of the petition, the Gainsley Judgment was $7,005.76. *See Claim No. 7.*

- The Chowdhury Judgment, in the original principal amount of $64,180.80, was entered on October 22, 2013 in AF Holdings LLC v. Chowdhury, in the United States District Court for the District of Massachusetts, case no. 12-cv-12105-JLT. Interest at federal rate of 0.31% accrued from October 22, 2013 to October 6, 2014 (daily rate of $5.45). The

7

2239948

Judgment was docketed in Hennepin County District Court on October 6, 2014, Court File No. 27-cv-14-15391, where 10% interest began to accrue under Minn. Stat. § 549.09 (daily rate of $18.105) until the date of the petition, July 13, 2015. Additional taxable costs were incurred and are matter of public record before the petition was filed: $324 Hennepin County District Court filing fee, $107 motion fee to companion judgment with Guava v. Merkel, for judgment collection purposes, $46 recording fee on Debtor's property paid on October 17, 2014, and $46 filing fee for docketing judgment on June 15, 2015 in the United States District Court for the District of Minnesota, Case No. 15-mc-44, for post-judgment discovery purposes. As of the date of the petition, the Chowdhury Judgment was $71,620.90. *See Claim No. 3*.

- The above referenced Judgments (Claim Nos. 3-7) total $129,237.85.
- The other judgments issued against the Debtor, along with other proofs of claim, Claim Nos. 1, 8-12, exceed $1 million.

33.    Because the Judgments exceed the amount the Debtor proposes to pay in the Plan, and because the Debtor has not provided for other additional judgments and liabilities that he identifies in his schedules, B&F objects to the Plan.

**The Debtor may soon sell his house and obtain sufficient assets to pay the Judgments**

34.    On or about November 2, 2015, the Debtor listed for sale his residence, Unit 3201 of The Carlyle, 100 Third Avenue South, in Minneapolis, Minnesota, with Lakes Sotheby's International Realty, for $1.3 million. See http://www.yoururbanlife.com/listing/4658738-mls-listingmls-unit-3201-100-3rd-ave-s-minneapolis-mn-55401/, which is the listing for the Debtor's condominium unit. According to the Debtor's counsel, the Debtor intends to close on a sale of the property within 30 days. The sale price is $1.2 million.

8

2252498

35. The Debtor has not sought approval from the Court for any sale of his property, as required by 11 U.S.C. § 363(b).

36. The Debtor identified in his schedules that the property was subject to a mortgage with a remaining balance of $597,852.60. The Debtor also claimed in his schedules an exemption of $287,147.40 of the equity in his property. The Debtor's proceeds from a sale of the property could exceed $315,000, before sale costs, if the pending sale closes. These sale proceeds could be sufficient for the Debtor to pay the Judgments, or at least significantly pay down the Judgments, at closing rather than over five years as he proposes in the Plan. Any net proceeds from the sale of the Debtor's house should be applied to pay the Judgments in full. The Plan does not propose to use the proceeds from the sale for the payment of creditors, and the Objecting Creditors accordingly object to the Plan.

37. Further, the Debtor bought his house in 2013 by using $80,000 that he transferred from his solely owned law firm, Alpha Law Firm LLC ("Alpha"), on March 13, 2013. *See Exhibit 4*. This was two weeks after the court in the Guava Case issued an Order to Show Cause as to why Alpha, the Debtor's alter ego, should not be sanctioned for bad-faith litigation, and one week after the court in the Ingenuity 13 Case issued sanctions against the Debtor.

38. The Guava court later issued sanctions on August 7, 2013, after which the Debtor dissolved Alpha while falsely stating, under penalty of perjury in a filing with the Minnesota Secretary of State, that Alpha had no debts and was not involved in any legal proceedings. See Exhibit 5. And the court then issued the Judgments referenced above, as well as later pierced Alpha's corporate veil to conclude that the Debtor was Alpha's alter ego. Thus, the Debtor's homestead equity should be reduced by $80,000 for this transfer that was designed to avoid paying impending sanctions.

2239948

39. Finally, the Court has scheduled an evidentiary hearing on the Debtor's motion to avoid lien (see the Chowdhury Judgment referenced above and Claim No. 3), and that hearing will take place on December 1, 2015. The Court should not consider the Debtor's Plan until a determination of whether there could be sufficient proceeds from any sale of his real estate to pay the Judgments referenced in this objection at a greater rate than the Plan proposes.

**The Plan has not been proposed in good faith.**

40. The Plan should not be confirmed because it has not been proposed in good faith, as required by 11 U.S.C. § 1325(a)(3), and this case was not filed in good faith as required by § 1325(a)(7).

41. The Debtor filed his petition on July 13, 2015 to avoid discovery into his fraudulent transfers of assets to his wife and to his new law firm Class Justice PLLC, as well as generally to avoid disclosing his financial affairs since liabilities for sanctions in multiple courts first surfaced in early 2013.

42. The Objecting Creditors' pursuit of collection on the Judgments and in particular post-judgment discovery proceedings aimed at locating the Debtor's assets and transfers of his assets are what prompted the Debtor to file this petition when he chose to do so, namely, one day before the court in the Guava Case required the Debtor to show cause why he should not be held in contempt for failing to disclose financial records.

43. Specifically, on June 29, 2015, the Hennepin County District Court had issued a post-judgment discovery order (a) requiring the Debtor to turn over financial records, (b) ordering the Debtor to show cause why he should not be held in contempt for violating a prior discovery order into financial records, (c) allowing B&F to subpoena the Debtor's wife and her

2252498

employer to locate the Debtor's assets and transfers of assets, and (d) issuing a further monetary sanction against the Debtor. *See Exhibit 6.*

44. The Debtor had until July 14, 2015 to show cause why he should not be held in contempt, and the Debtor filed this petition on July 13, 2015 rather than comply with any aspect of the court's order. As a result, B&F did not receive any financial records, nor was B&F allowed to subpoena the Debtor's wife for financial records or her employer to locate the financial institutions in which she received direct deposits (which in turn may lead to the discovery of financial accounts to which the Debtor has transferred assets). *Id.*

45. The subpoenas recently issued to the Debtor, his wife, and their "Monyet LLC" asset-protection entity, pursuant to this Court's order authorizing 2004 examinations, was met with the production of no responsive financial records and non-responsive deposition testimony. *See Exhibit 8, Debtor's Wife's Deposition Transcript and Exhibit 1, and Exhibit 9, Debtor's Deposition Transcript; see also Exhibits 10-12, Debtor's Examination Hearing Transcripts From June 16, 2014-July 2, 2014.* The Debtor's testimony, including his feigned lack of knowledge about even the most basic aspects of his financial affairs, lacks any credibility.

46. None of the documents the Debtor and his wife produced, including on behalf of their Monyet LLC or Mill Trust entities, contained any responsive documents that related to the recent or current status of financial affairs, including the accounts with which the Debtor and his wife pay their numerous and large monthly expenses.

47. The Debtor, and his wife, have not been truthful in their testimony, they have feigned a lack of knowledge or understanding of their financial affairs, and they have refused to provide documents that they clearly have control over that would show the location and amount of their assets. Further, in the Lightspeed Case, the Debtor had also been held in contempt and

ordered to pay sanctions just two days before the Debtor filed his petition, again showing that the Debtor filed this petition without a good-faith basis.

48. Court records, and the Debtor's own financial records, show that the Debtor transferred more than $500,000 among his various entities and personal and business accounts before he filed his petition. *See Claim No. 8.*

49. With respect to the Judgments arising from the Guava Case, the Debtor transferred $80,000 from his Alpha Law Firm LLC entity in the days after the court issued its show-cause order. *See Exhibit 4.*

50. And in the weeks after the court in the Guava Case issued its sanctions order for $63,367.52 against Alpha, the Debtor dissolved Alpha, stating falsely in a filing with the Secretary of State that Alpha had no debts and was not subject to any legal proceedings. *See Exhibit 5.*

51. This petition was filed to avoid the discovery of the Debtor's transfers of substantial assets—sufficient to pay the Judgments—to insiders, specifically the Debtor's wife, the Debtor's "Monyet LLC" and "Mill Trust" asset-protection entities, and the Debtor's single-member, wholly owned company Class Justice PLLC.

52. The Debtor filed his petition on July 13, 2015 to prevent subpoenas to his wife and his wife's employer to proceed, thus avoiding having to disclose his and his wife's financial records, including tax returns, trust records, and other evidence that could identify the location of his assets, and the details of his transfers, which is now relevant to evaluating the propriety of his proposed Chapter 13 plan. Even after this Court allowed 2004 examinations of the Debtor and his wife, their testimony was non-responsive, and they produced no responsive documents.

2252498

53. Neither the Debtor nor his wife provided any documents showing the location and amount of their assets—assets that must be substantial in order to pay their numerous and lavish living expenses including their luxury condominium at The Carlyle ($4,600 per month in mortgage payments plus $680 per month in condo fees), the house they are now renting at 3749 Sunbury Alcove in Woodbury, Minnesota for $1,950 per month, their two vehicles including a luxury Audi on which they make monthly payments and a Prius that they are leasing, among other expenses, all of which exceed the Debtor's wife's income and thus require the use of funds that the Debtor and his wife have refused to disclose.

54. Thus, the petition was not filed in good faith and should be denied for that reason alone.

**The Debtor has not accurately listed affiliated business interests in his schedules.**

55. Based on the Debtor's testimony at the August 12, 2015 Meeting of Creditors, the Debtor agreed to amend his schedules to identify businesses that he had failed to disclose, however, to date, the Debtor has not done so.

56. The Debtor failed to identify all of his business and investment interests, including his investments in "Livewire Holdings, LLC," "Big Sky Films, LLC," "Media Copyright Group, LLC," or "Chisholm Properties South Beach, Inc." *See Exhibit 13*. These entities are listed in in the Debtor's income tax returns, bank statements, and records B&F has obtained through third-party discovery.

57. The Debtor previously testified owning interests in companies not disclosed in his petition, including Media Copyright Group LLC and Class Action Justice Institute, LLC, and financial records show him transferring monies to and from those entities. *See Exhibits 10-12*. He denied owning an interest in Livewire Holdings, LLC, however, bank records reveal wire

13

transfers to that entity to his "Monyet" trust with the notation "investment". *See Exhibit 13.* The Debtor was and is Monyet's sole manager with sole signatory authority for checks and wire transfers. Further, bank records show that the Debtor has had relationships with, or received substantial monies from accounts at, Chase Bank, Fifth Third Bank, U.S. Bank, ING, and others, either personally or through his companies, *see Exhibit 14 to Application for 2004 Examinations*, and thus all of his business and personal accounts should be disclosed but were not. The Debtor failed to disclose his Monyet Scottrade account before filing his petition, even when presented with post-judgment discovery directed toward such information, and even when presented with a statutory Demand for Financial Information, in which the Debtor fraudulently omitted his Monyet financial information. *See Exhibit 15, Hansmeier Deposition Exhibit 9.*

58. When pressed by the court in the Guava Case to provide evidence of why he transferred more than $64,000 from Alpha to his Class Action Justice Institute just two weeks after the disastrous January 25, 2013 hearing, and why Alpha received $59,000 from the Simpson Thatcher law firm, the Debtor first claimed they were settlement monies that were "highly confidential," then promised to provide the court with copies of the settlement agreements for in camera review, and then failed to provide any documentation. *See Exhibits 5, 10-12.*

59. Past testimony from the Debtor's 2014 debtor's examination revealed that the Debtor typically uses his corporate entities for personal expenses, such as liquor, travel, and his own legal fees, and that he used funds from the Monyet trust to pay court filing fees. The Debtor's Class Justice PLLC entity is similarly used for personal income and expenses, rendering his alleged "salary" from that entity misleadingly low. *See Exhibit 9 and Claim No. 1,*

*Amex Statement Showing Debtor's Class Justice Law Firm Credit Card Account Used Almost Exclusively for Vikings Tickets and Liquor.*

60. The Debtor failed to identify in his petition and schedules the various transfers he made to his wife from his "Monyet LLC" entity, and he failed to list his "Mill Trust" entity or provide any documentation about either of those entities solely controlled by himself and his wife and to which and through which they have funneled hundreds of thousands of dollars. *See Exhibits 8-9.* Specifically, the Debtor failed to disclose or identify the location of the following transfers from a Scottrade account held by "Monyet LLC," of which the Debtor is the sole manager, and the "Mill Trust" is the sole member:

- $65,970 that the Debtor transferred from Alpha to Class Action Justice Institute, LLC on February 5, 2013 (both entities that he solely owned).

- $80,000 that the Debtor transferred from Alpha to his personal bank account on March 13, 2013.

- $10,000 that the Debtor transferred to Livewire Holdings, LLC on June 27, 2013 (with the notation "investment").

- $10,000 that the Debtor transferred to Livewire Holdings, LLC on June 28, 2013 (with the notation "investment").

- $25,000 that the Debtor transferred to Class Justice, PLLC (of which the Debtor is the sole member) on July 26, 2013.

- $5,000 that the Debtor transferred to his wife on July 30, 2013.

- $30,000 that the Debtor transferred to his wife on August 27, 2013.

- $25,000 that the Debtor transferred to Class Justice, PLLC on October 1, 2013.

- $20,000 that the Debtor transferred to Class Justice, PLLC on November 19, 2013.

2239948

- $175,000 that the Debtor transferred to his wife on November 22, 2013.

- $21,250 that the Debtor transferred to "Robert P. Balzebre" on December 9, 2013.

- $20,000 that the Debtor transferred to Class Justice, PLLC on January 17, 2014.

- $70,000 that the Debtor transferred to his wife on February 7, 2014.

- $25,000 that the Debtor transferred to Class Justice, PLLC on March 19, 2014.

- An unknown transfer on May 5, 2014 to Chisholm Beach Properties South Beach, Inc. for an "attorneys' fee escrow."

*See Exhibit 13.*

61. Thus, the Debtor has assets that he has not disclosed, business interests and investments that he has not disclosed, and transfers that he did not disclose, and his Plan should be denied confirmation.

**The Debtor continues to pursue appeals from judgments (which litigation now belongs to the Chapter 13 trustee), and in doing so seeks to reverse and vacate the judgments that are the subject of the Plan.**

62. The Debtor should not be allowed to continue pursuing his appeals of sanctions orders now pending in the First Circuit Court of Appeals (the Chowdhury Judgment), the Seventh Circuit Court of Appeals (the Lightspeed Case), and the Ninth Circuit Court of Appeals (the Ingenuity 13 Case) in light of his petition.

63. For one thing, that litigation belongs to the Chapter 13 trustee, and the Debtor has no standing to continue pursuing litigation. Under *Rugiero v. Nationstar*, 580 Fed. App. 376 (6th Cir. 2014), the Debtor lacks standing to control that litigation. Under 11 U.S.C. § 323(b), the right to pursue those appeals, or abandon them, rests only with the trustee.

64. For another thing, the Debtor's goal with the appeals is to reverse and vacate sanctions judgments that he alleges he is committed to paying as part of the Plan. That does not

16

2252498

make any sense. The Debtor's Plan does not address what would happen in the unlikely event any of the judgments are reversed (i.e., do the Plan payments have to be refunded to him?), nor the more likely event that the appeals are affirmed and further costs, or fees and sanctions, are taxed against the Debtor (which he has not committed to paying as part of the Plan).

**The Debtor has failed to identify the assets he has placed into his business, Class Justice PLLC, and he has failed to substantiate that entity's alleged income and expenses.**

65. The Debtor's Class Justice entity is essentially a sole proprietorship without a separate legal status. By way of example only, American Express filed a proof of claim in this case, identifying Class Justice's credit card debt. The statement accompanying the proof of claim is almost exclusively personal expenses (i.e., liquor, beer, coffee, and Vikings' tickets), showing that the Debtor merely uses his business credit card for personal expenses.

66. By way of further example, the Debtor's schedules identify a variety of business expenses, yet the Debtor could not substantiate any of these expenses during his deposition, and he provided no documentary evidence supporting this claimed business expense (i.e., $1,900 per month for "legal expenses"). *See Exhibit 9.* The Debtor claimed that a box of documents he brought to the deposition would include evidence of his business expenses, yet those documents contained nothing of the sort.

67. The Debtor identified a "BUSINESS ACCOUNT AT ASSOCIATES BANK, HELD IN NAME OF CLASS JUSTICE LLC, 6773," which he claims has a $19,400 value. The Debtor did not provide copies of these bank statements.

68. The Debtor identifies an IOLTA account, which he states is "NOT PART OF THE ESTATE, DOES NOT CONTAIN DEBTOR'S FUNDS." The Debtor did not provide copies of these bank statements.

17

2239948

69. Because the Debtor has not provided proof of his business income, business accounts, business finances, or business expenses, the Plan should not be confirmed.

**The Plan is not feasible because the Debtor will not be able to make all payments under the Plan and will not comply with the Plan.**

70. Under 11 U.S.C. § 1325(a) and (b), the Debtor must be able and willing to comply with the Plan.

71. The Debtor has not shown that he can comply with the Plan, particularly as the debts and judgments that the Debtor is liable for exceed his proposed payments under the Plan.

72. According to news reports, the Debtor is under investigation by the Minnesota Office of Lawyers Professional Responsibility and thus faces exposure for losing his law license, which would affect his ability to make payments under the Plan

### Conclusion

For the foregoing reasons, the Plan should not be confirmed.

2252498

Respectfully submitted on November 12, 2015.

                              BEST & FLANAGAN LLP

By /e/ Edward P. Sheu
   Edward P. Sheu
   Atty. Registration No. 312885
   Cynthia L. Hegarty
   Atty. Registration No. 294627
   60 South Sixth Street, Suite 2700
   Minneapolis, MN 55402-4690
   T: (612) 339-7121
   F: (612) 339-5897
   esheu@bestlaw.com
   chegarty@bestlaw.com

By /e/ Jason E. Sweet
   Jason Sweet
   Booth Sweet LLP
   32R Essex Street
   Cambridge, MA 02139
   T: (617) 250-8619
   F: (617) 250-8883
   jsweet@boothsweet.com

   and

   /e/ Paul Godfread
   Paul Godfread
   Atty. Registration No. 389316
   Godfread Law Firm
   6043 Hudson Road, Suite 305
   Woodbury, MN 55125
   T: 612.284.7325
   F: 612.465.3609
   paul@godfreadlaw.com

2239948

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re:                                                                Chapter 13 Case

Paul Hansmeier,                                              Bky. No. 15-42460 (KHS)

Debtor.

**UNSWORN VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I, Edward P. Sheu, declare under penalty of perjury that the foregoing is true and correct, and all documents attached hereto are true and correct copies of what they purport to be.

Dated:  November 12, 2015                    /e/ Edward P. Sheu
                                                                    Edward P. Sheu

2252498