# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Chapter 7 |
| Paul Hansmeier, | BKY 15-42460-KHS |
| Debtor. | |

## MEMORANDUM OPINION AND ORDER

At Minneapolis, Minnesota, February 5, 2016.

The debtor's Motion for Stay Pending Appeal was before the court on January 27, 2016.

Barbara May appeared on behalf of the debtor; Colin Kreuziger appeared on behalf of the United States Trustee; and Randall Seaver, the Chapter 7 Trustee, appeared *in propria persona*.

This court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(a) & 1334 and Fed. R. Bankr. P. 8007.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) & (O).  Venue is proper under 28 U.S.C. §§ 1408 & 1409.

For the reasons stated below, the court denies the debtor's motion.

## INTRODUCTION

On December 3, 2015, the court converted the debtor's chapter 13 case to a case under chapter 7 pursuant to 28 U.S.C. §§ 1307 and 1325(a)(7). The court found cause to convert due to the debtor's continuing pattern of misrepresentation to courts prepetition and postpetition. Postpetition, the misrepresentations include his failure to disclose significant transfers of assets, failure to disclose assets, failure to disclose living expenses, failure to file a § 363 motion to sell his residence for $1.2 million in cash until caught by the Chapter 13 Trustee, and failure to disclose significant general unsecured claims. The debtor appealed the conversion order and filed this motion for a stay pending appeal.

1

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *02/03/2016*
Lori Vosejpka, Clerk, by LH

## FACTS

On July 13, 2015, the debtor filed a voluntary petition under chapter 13 of the Bankruptcy Code.  The debtor is an attorney who is currently licensed to practice law in the state of Minnesota.  He is the subject of a pending disciplinary action before the Minnesota Lawyers Professional Responsibility Board because, in part, courts around the country have found that he has made misrepresentations to the courts.

On July 13, 2015, the debtor filed his chapter 13 plan.  On September 16, 2015, the debtor filed his first modified chapter 13 plan.   Multiple objections to confirmation of both the original and the first modified chapter 13 plan were filed by creditors, as well as the Ch. 13 Trustee and the United States Trustee.  On November 18, 2015, the debtor filed his second modified chapter 13 plan.  That plan was not confirmed because the case was converted to chapter 7 before the confirmation hearing.

On November 12, 2015, the U.S. Trustee filed a motion to convert the debtor's chapter 13 case to a case under chapter 7, arguing that cause existed for conversion pursuant to Section 1307(c) of the Bankruptcy Code.  In particular, the U.S. Trustee argued that cause existed to convert based on:

- The debtor's prepetition and postpetition bad faith; and

- The debtor's inability to confirm a plan.

On November 16, 2015, the debtor filed objections to claims filed by Paul Godfread and Alan Cooper, each in the amount of $678,865.97. On November 17, 2015, the debtor filed an objection to a claim filed jointly by Alan Cooper and Paul Godfread in the amount of $255,000 (collectively, the "Claim Objections").  The hearings on the Claim Objections were scheduled to take place on December 17, 2015.

2

To date a total of $2,493,510.17 in claims have been filed in the debtor's bankruptcy case. The deadline for filing claims is April 22, 2016.

On November 18, 2015, the debtor filed amended schedules and statement of financial affairs.

On December 3, 2015, this court held a hearing on the U.S. Trustee's motion to convert and granted the motion. In its ruling from the bench, the court found that the following facts warranted conversion of the debtor's case to a case under chapter 7:

<u>Prepetition</u>

1) The debtor, either individually or through law firms in which he holds an ownership interest, filed hundreds of state and federal court lawsuits based on alleged copyright infringements via improper downloading of adult films over the internet. Several courts in which those cases were filed issued sanctions against the debtor.

2) Numerous courts have found that the debtor has engaged in fraud and misrepresentation.

3) G. Patrick Murphy, United States District Judge for the Southern District of Illinois issued an order that:

   a) Found the debtor exhibited "a serious and studied disregard for the orderly process of justice";

   b) Found the debtor showed a "relentless willingness to lie to the court on paper and in person, despite being on notice that he was facing sanctions in the court, being sanctioned by other courts and being referred to state and federal bars, the United States Attorney in at least two districts, one State Attorney General and the Internal Revenue Service"; and

   c) Held the debtor jointly and severally liable on a judgment in the amount of $261,025.11.

4) Tanya M. Bransford, Judge for the Fourth Judicial District in Hennepin County, Minnesota issued orders that:

   a) Held the debtor jointly and severally liable on a judgment in the amount of $63,386.52;

3

b) Found that the debtor had intentionally given inconsistent testimony to the court;

c) Found that the debtor had failed to provide responsive information throughout the proceedings;

d) Ordered the debtor to disclose financial information, which he failed to do;

e) Required the debtor to show why he should not be held in contempt for violating the prior order compelling him to turn over the financial information and found that the information previously submitted by the debtor was incomplete and evasive and his nondisclosure was unjustified; and

f) Ordered the debtor to disclose financial information by July 14, 2015.

5) The debtor filed his bankruptcy case on July 13, 2015, the day before the financial information was required to be disclosed.

6) The timing of the filing of the bankruptcy petition when considered with the deadline for disclosure of the financial documents was a clear indication that the debtor was attempting to avoid disclosure of the financial information required by Judge Bransford.

<u>Postpetition</u>

7) The debtor continued his pattern and practice of being untruthful with the courts in the present case and filed his bankruptcy petition in bad faith as evidenced by the following:

a) The debtor failed to disclose all trusts in the Schedules and Statement of Financial Affairs;

b) The debtor failed to disclose numerous transfers totaling over $500,000 to and from his Monyet account on the Statement of Financial Affairs;

c) The debtor failed to honestly disclose his household expenses on Schedules I and J or provided inconsistent testimony in his Rule 2004 examination.  In his Rule 2004 examination, the debtor claimed that his wife (a non-filing spouse) paid all of their household expenses out of her $5,000 per month income but according to the debtor's Schedules I and J, the monthly household expenses are $10,000.  The court concluded that either the Schedules were untruthful or the testimony provided at the Rule 2004 examination was untruthful.

d)  The debtor failed to inform the court and the Ch. 13 Trustee that he had moved to a rental property and did not amend his schedules to show a great reduction in living expenses until after the U.S. Trustee filed the motion to convert the case and objections to the debtor's plan were filed;

e)  The debtor failed to inform the court and the Ch. 13 Trustee that he intended to sell his condominium for $1.2 million in cash until the Ch. 13 Trustee learned about the pending sale through an internet search.  Based on the debtor's past conduct, it was reasonable to conclude he might never have disclosed the sale or filed a motion approving the sale had the Ch. 13 Trustee not found out about it.

f)  The debtor failed to disclose significant general unsecured claims and used a reduced claim number to put forth what he contended was a 100% plan to pay general unsecured creditors in full with interest.

8)  Under Section 1325(a)(7) the second modified plan was not confirmable because the petition was filed in bad faith.

9)  Cause also existed to convert under Section 1307 because the debtor failed to timely file a confirmable plan.

10)  The debtor is an attorney licensed to practice law and is currently the subject of a disciplinary action, the outcome of which may be a revocation or suspension of his right to practice law.  If the debtor's law license is revoked or suspended he will not be able to practice law and fund payments under his plan.

Postconversion

11)  On December 10, 2015, the debtor voluntarily withdrew the Claim Objections.

12)  On December 16, 2015, the debtor filed his Notice of Appeal of the order converting the case to chapter 7 and the current Motion for Stay Pending Appeal.

13)  After conversion of this bankruptcy case, the Ch. 7 Trustee filed a motion for turnover seeking an order that required the debtor to produce essentially the same financial information he was previously ordered to produce by Judge Bransford.

14)  On January 15, 2016, the court held a hearing on the Ch. 7 Trustee's motion for turnover and issued an order requiring the debtor to immediately turn over the financial documents in his possession.

15)     In his response and at the hearing on the current motion, the Ch. 7 Trustee represented to the court that the debtor has not produced the financial information required by the court's order for turnover.

16)     The Ch. 7 Trustee reported that there were unpaid claims by contractors that were paid from the proceeds of the sale of the condominium.

17)     The Ch. 7 Trustee submitted an affidavit stating that during the pendency of the chapter 13 case, the debtor liquidated an account receivable in the amount of $72,000 and had taken $8,554 from a trust account and spent all of the money.

## ARGUMENTS

In support of his request for a stay pending appeal, the debtor argues that he is likely to prevail on the merits of the appeal because the court: 1) inferred bad faith from prior court proceedings in which the debtor was not a party; 2) prejudged the debtor's Claim Objections, denying him a hearing; and 3) erroneously applied the law in converting the debtor's case. The U.S. Trustee and Ch. 7 Trustee argue that the debtor cannot meet the four standards used to determine whether a party is entitled to a stay pending appeal.

First, the debtor did not submit any affidavits in support of his motion. Second, and most importantly, he has not denied any of the facts found by the court or the allegations raised by the Ch. 7 Trustee in his response to the current motion and in court at the hearing on this motion.

## DISCUSSION

### Legal Standards for Granting a Stay Pending Appeal

Four factors are to be considered when evaluating whether a party is entitled to a stay pending appeal. The party seeking the stay has the burden of showing:

(1)     A likelihood of success on the merits of the appeal;
(2)     There is a risk that the moving party will suffer irreparable injury unless the stay is granted;
(3)     No substantive harm will come to the other interested parties; and
(4)     The stay will do no harm to the public interest.

*See, e.g.*, *In re Ross*, 223 B.R. 702, 703 (B.A.P. 8th Cir. 1998). *See also, Nken v. Holder*, 556 U.S. 418, 434 (2009). Granting of a stay pending appeal is a matter of discretion, not "a matter of right . . . the party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken*, 556 U.S. at 433-34. This relief is not granted lightly because "[a] stay is an intrusion into the ordinary processes of administration and judicial review…. [T]he parties and the public, while entitled to both careful review and a meaningful decision, are also generally entitled to the prompt execution of orders." *Id.* at 427.

The four factors of the test are not to be weighted equally, rather, the first two are the most critical. *In re Dakota Rail, Inc.,* 111 B.R. 818, 820 (Bankr. D. Minn. 1990); *Nken*, 556 U.S. at 434. In order to satisfy the first factor, the party must show that he is "likely" to succeed rather than show an absolute certainty of success on the merits. *See Iowa Utilities Bd. v. F.C.C.*, 109 F.3d 418, 423, 425 (8th Cir. 1996). To meet the second factor of irreparable harm, the party must show that the "…harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Id.* at 425.

Although the factors are not necessarily given equal weight, a party's failure to satisfy even one of the factors may be sufficient grounds to deny the relief requested. *In re Dakota Rail, Inc.,* 111 B.R. at 820; *In re Gulf States Steel, Inc. of Alabama*, 285 B.R. 739, 741-42 (Bankr. N.D. Ala. 2002). The party seeking the stay "must address each factor, regardless of its relative strength, providing specific facts and affidavits supporting assertions that these factors exist." *In re Akron Thermal, Ltd. Partnership*, 414 B.R. 193, 201 (N.D. Ohio 2009) *quoting Michigan Coalition of Radioactive Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991).

**1. Likelihood of success on the merits.**

Regarding factor one, the debtor argues that the court prejudged the Claim Objections and denied him a hearing on the merits of those objections. The debtor further argues that if the

Claim Objections had been sustained, the debtor would have proposed a 100% plan.  Finally, the debtor argues that the court relied on decisions in other cases to conclude that the debtor is not deserving of a fresh start.

The debtor has misrepresented the facts and the court's ruling. The court did not deny the debtor a hearing on the Claim Objections. The debtor voluntarily withdrew the Claim Objections, as counsel for the debtor admitted at the hearing on this motion.  The court has made no ruling on the validity of any claims.[1]

The debtor further argues that if he succeeded on the merits of the Claim Objections he would have been in a position to confirm a plan that paid 100% to general unsecured creditors, with interest.  The deadline for filing claims is April 22, 2016, so there is no way of knowing at this point what the total claims will be in the case.  To date a total of $2,493,510.17 in claims have been filed.  Of that amount, $1,612,731.94 was the subject of the Claims Objections. Assuming for purposes of this motion only that the Claim Objections were sustained,[2] the total claims would be reduced to $880,778.23.[3]  The debtor offered no evidence that he would have had non-exempt cash to fund an immediate payment of claims in full at the time of the conversion.  Thus, the debtor would have to pay the claims over time with interest through his plan.  The debtor is currently the subject of a disciplinary proceeding, the result of which could result in the suspension of his license to practice law or disbarment.  The debtor has offered no

---

[1] Contrary to counsel's arguments at the hearing on this motion, the court has never ruled on the validity of any claims.  On January 14, 2016, this court held a hearing on a motion for relief from stay filed by Paul Godfread and Alan Cooper, wherein the movants requested relief from the stay to continue litigation against the debtor in a lawsuit pending in the United States District Court for the Northern District of Illinois.  At that hearing the court pointed out that the movants had failed to show any basis for allowing relief from the stay because the order upon which the movants relied was not attached to the motion.  The movants decided to withdraw the motion.  The court did not find that any claims alleged against the debtor in connection with that lawsuit or any other cause of action should be disallowed.

[2] The court makes no ruling on whether the Claim Objections have merit or whether the claims should be allowed.

[3] At the time of the hearing on the motion to convert, the sale of the condominium had not closed.  Since then the sale has closed, secured creditors were paid and the remaining amount of claims would have been reduced to approximately $210,000.

evidence as to how he would fund plan payments if he is no longer licensed to practice law, which is his source of income.

The debtor asserts that the court's decision to convert was based on prepetition conduct, a desire to punish the debtor for that prior conduct and an attempt to deny him a fresh start.  While the court did recite rulings by numerous courts across the country that have found the debtor engaged in serious misconduct before those courts, and had been sanctioned for that conduct, those rulings merely established the background for the court's finding that the debtor has continued his pattern and practice of being untruthful. The debtor's misconduct did not stop when he filed his bankruptcy petition.  Rather, the court found that the debtor had filed misleading or false documents in this case and provided potentially false testimony at his Rule 2004 examination.  These were the bases for the court's decision to convert.

The debtor's counsel argued that the court denied the debtor an evidentiary hearing on whether he has engaged in bad faith. This is untrue, he never requested an evidentiary hearing. More importantly, the debtor did not dispute or deny the facts alleged by the U.S. Trustee.

The debtor has not shown a likelihood of success on the merits of his appeal.

**2.  Irreparable injury to the debtor if the stay is denied**

The debtor claims that he will suffer irreparable harm if the stay is not granted.  He argues that he will be harmed because the Ch. 7 Trustee has been appointed and there are no restrictions on his powers.  This is untrue. To date the only activities the Ch. 7 Trustee has engaged in are his attempts to gather the financial information the debtor has a long history of hiding or refusing to disclose.  The debtor has a duty to provide a complete and accurate picture of his financial condition and he will not suffer irreparable injury if a Ch. 7 Trustee forces him to do what he is obliged to do.

The debtor also argues that the appeal may be mooted if the stay is not granted and remove his ability to complete a viable chapter 13 plan, but fails to provide any fact in support of this argument. Any proceeds from assets liquidated by the Ch. 7 Trustee will be held until further order of the court.  Those assets could be turned over to the debtor to fund a plan if the order converting the case is reversed on appeal.  To the extent that the Ch. 7 Trustee seeks to make a distribution, after approval from the court, claims against the debtor's estate will be paid and that would reduce the amount of claims to be paid through a plan.  The debtor has not shown that he would be harmed if the Ch. 7 Trustee pays creditors through distributions instead of the Ch. 13 Trustee through a confirmed chapter 13 plan.

The debtor also argues that the estate will incur additional administrative costs and reduce the ultimate pay-out to creditors.  The debtor overlooks the fact that there are administrative costs and expenses associated with a chapter 13 case.  He has offered no evidence that the administrative costs of a chapter 7 case will be higher than those associated with a chapter 13 case.

The debtor has failed to show irreparable harm.

**3.  No substantive harm to other interested parties**

The debtor argues that there will be no substantive harm to the U.S. Trustee or creditors because everyone has an interest in the prompt and orderly payment of claims and the chapter 13 plan provides the best possibility for prompt and orderly payment.  The debtor goes on to argue that staying the proceeding will preserve assets and promote an earlier resolution of the case. This argument fails because the debtor has already shown that he will not abide by orders of the court or the provisions of the Bankruptcy Code.  The debtor has already dissipated over $80,000 since the filing of the petition that did not come from his postpetition earnings, but came from collection of a prepetition receivable and a trust account.

The debtor's counsel argued that the court could issue orders limiting or restricting the debtor's actions and access to funds and assets in the case in staying the case pending appeal. This argument is specious because maintaining the Ch. 7 Trustee's control of the estate assets will accomplish the same goal (protection of the creditors) but with much more certainty than relying on the debtor to abide by a court order that restricts his activities.  Based on the debtor's past and present actions, it is important to both the creditors and the integrity of the judicial system as a whole for the investigation of the debtor's activities to go forward.

There may be substantive harm to other interested parties.

**4.   The stay will do no harm to the public interest.**

The debtor offers no evidence on this factor.  Instead, the debtor summarily argues that the public interest will be best served by the orderly application of federal law and the stay should be granted in this case "because the vindication of the Debtor's right to appeal requires that the proceedings be stayed to preserve the status quo."

Where the government is the opposing party, the third and fourth factors – potential damage to the opposing party and the public interest – merge.   *Nken*, 556 U.S. at 435.   In considering the public interest, courts should not "simply assume that '[o]rdinarily the balance of hardships will weigh heavily in the applicant's favor.'"   *Id.* at 436 *quoting Andreiu v. Ashcroft*, 253 F.3d 477, 484 (9th Cir. 2001) (en banc).

Here, the debtor acted in bad faith when he filed his chapter 13 petition, which has continued postpetition.  The debtor has refused and continues to refuse to disclose complete and accurate financial information.   The debtor has dissipated over $80,000 in estate assets since the case was filed.  Other courts have already found that the debtor exhibits a "serious and studied disregard for the orderly process of justice" and "a relentless willingness to lie to the court on paper and in person."   Under these circumstances, the public interest weighs heavily in

favor of an orderly continuation of the liquidation of the debtor's assets for the benefit of

creditors by an independent person, here the Ch. 7 Trustee.   A stay pending appeal will only

serve to accomplish the debtor's original goal in filing this bad faith chapter 13 case:  further

delay of his creditors.

The public interest may be harmed by the imposition of a stay.

### CONCLUSION

The court engaged in a thorough review of the facts and an analysis of the debtor's

actions both prepetition and, more importantly, postpetition in this case when deciding to convert

it to a case under chapter 7 so that a chapter 7 trustee could take control over the debtor's assets

for the benefit of all creditors.  The debtor's actions both pre and postpetition are in complete and

total disregard for the integrity of the judicial system.  As numerous courts across the country

have found, the debtor has failed to disclose his financial information and he has misrepresented

facts -- that activity has continued in this case.  The debtor has failed to show that he has a

likelihood of success on the merits of his appeal and he has not provided any credible support for

his argument that he will be injured if the motion for stay is denied.  On the other hand, the

potential harm to the debtor's creditors and the public interest weigh heavily in favor of denying

the request for a stay.  For all of these reasons the debtor's motion for stay pending appeal is

denied.

### CONCLUSIONS OF LAW

1.  The court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(a) & 1334

    and Fed. R. Bankr. P. 8007.

2.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) & (O).

3.  Venue is proper before this court under 28 U.S.C. §§ 1408 & 1409.

4.  The debtor is not entitled to a stay pending appeal pursuant to Fed. R. Bankr. P. 8007.

**ORDER**

IT IS ORDERED:

The debtor's motion for stay pending appeal is denied.


/e/ Kathleen H. Sanberg
_____
KATHLEEN H. SANBERG
UNITED STATES BANKRUTPCY JUDGE