## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

_____

Bky No. 15-42460

In re:

Paul Hansmeier,

       Debtor.

_____

### TRUSTEE'S REPLY
_____

The Trustee provides the following reply to the Debtor's March 17, 2016 response opposing the Trustee's motion for an order requiring the turnover of monies from Debtor's counsel.

### Facts

a.    <u>Documentation Provided to the Trustee</u>

The source of the Chapter 13 plan payments has been an issue in this case since this court converted the case to a case under Chapter 7. The Chapter 7 Trustee ("Trustee") did not agree to have the office of the Chapter 13 Trustee release the funds to the Debtor because it was unclear whether or not the plan payments were made from bankruptcy estate property, the debtor's post-petition payments or his non-debtor spouse's income. On December 10, 2015, the Debtor's counsel emailed the Trustee stating that the debtor "will produce documentation that the payments were made either out of his wife's income or from post petition earnings." See Ex. 1 to Aff. of MDS[1].

On December 18, 2015, the Debtor's counsel provided the Trustee's counsel with bank statements showing the withdrawal of the Chapter 13 Plan Payments from Associated Bank Account ending in #4008, and stating that the funds were from the Debtor's income. See Ex. 2 to

---

[1] "Aff. of MDS" refers to the Affidavit of Matthew D. Swanson filed herewith.

Aff. of MDS.  The bank statement did not evidence the source of the deposits into the bank accounts, so Trustee's counsel requested documentation evidencing the source of those deposits in order to verify whether or not the payments were made using bankruptcy estate property.  The Chapter 13 Trustee was not willing to hold the funds moving forward, so the parties entered into a stipulation providing for the turnover of the funds to the Debtor's counsel, to be held pending further stipulation of the parties or order from the court.

On January 21, 2016, the Debtor's initial § 341 meeting was conducted, during that meeting the Debtor testified that the accounts receivable scheduled in his Schedule B, had been liquidated during the course of his Chapter 13 bankruptcy case.  The Trustee, again, requested specific information regarding the pre-petition accounts receivable.  On January 26, 2016, the Trustee, through counsel, was notified by the Debtor that documents had been placed in a drop box for his review.  The documentation relating to the Trustee's request regarding the accounts receivables consisted of a single page titled "Receivable Paydown Schedule" with what appeared to be 4 accounting entries on a spreadsheet.  See Ex. 3 to Aff. of MDS.  The document shows monies coming in, but provides no additional information to discern whether these were pre or post petition receivables.  On February 22, 2016 the Debtor provided further documentation evidencing the 4 transfers listed on the accounting spreadsheet, but the information did not shed any light on the issue of when the monies were earned or to which receivable they were connected.  See Ex. 4 to Aff. of MDS.

On February 26, 2016 the Trustee sent an email to the Debtor's counsel specifically detailing his request for documentation regarding the pre-petition accounts receivable.  The request was as follows:

> … As to the accounts receivable, give me a list of each receivable, by name and amount, that existed on the date of filing, and give me a list of the date and amount of the client payments, tied to the accounts receivable.  Also, provide copies of all checks, wires, and any other documents showing the payments that resulted in the transfers by Mr. Hansmeier of $36,833.34, on 7/30/15, $17,000 on 8/31/15, $28,344.00 on 9/30/15 and $1,000 on an unspecified date.  This includes copies of all checks, money orders and any other instruments by which

2

settlements or other monies were paid to clients that resulted in the collection of
the accounts receivable.  The documents must be sufficient for me to identify each
existing account receivable, and track all financial activity that resulted in
payment of the receivables. Thanks.
Randy Seaver, Trustee

See Ex. 5 to Aff. of MDS.

On March 4, 2016 the Trustee filed a motion for an order requiring the turnover of the
funds in the possession of Barbara J. May.  The Trustee was notified on March 9, 2016 that the
Debtor had uploaded documents in response to his February 26, 2016 request.  The additional
documents provided by the Debtor included 35 pages of cancelled checks and deposit slips
which appear to be funds deposited into a Class Justice, LLC account, relating to various
settlements.  The deposits total approximately $73,416.67.  Certain checks are issued directly to
the Debtor's client, but deposited into the Debtor's account. The Debtor provided no information
regarding which account receivable each check related to, nor was any additional information
provided regarding the timing of the Debtor's work on these matters, or the settlement dates
relating to these payments.

To date the Debtor has failed to provide a clear accounting which establishes what
specific account receivables existed as of the filing date, as to client, claim, invoice amount and
date.

b.    Testimony of the Debtor Regarding the Plan Payments

Following the Bankruptcy Court's entry of an order denying the Debtor's requested stay
pending the BAP's determination of his appeal, the Debtor filed a motion with the BAP to stay
proceedings.  In his affidavit filed with the BAP, the Debtor specifically stated the following
regarding his scheduled account receivables and Chapter 13 plan payments:

The Bankruptcy Court has asserted that I liquidated an estate asset when I used
the accounts receivables associated with my law practice.  The accounts
receivables were used to run my law practice and to fund my Chapter 13 plan.
My accounts receivables were are earned and spent and earned again on a
monthly basis, like any business.

3

See Exhibit 4 to the Trustee's Motion at ¶ 8.  The accounts receivable the debtor was referring to

in his affidavit were the $72,000 accounts scheduled in his Schedule B, as those were the

accounts this Court addressed in its order denying the Debtor's motion for a stay.

The Debtor then testified under oath at his continued § 341 meeting of creditors that the

pre-petition account receivables were used to fund his Chapter 13 plan payments.  Despite

admitting to this fact the Debtor argued that "it is my position that those are not assets of the

Chapter 7 estate."  See Ex. 5 to Trustee's motion at 32-33.  When questioned further by the

attorney for the United States Trustee's Office, the Debtor testified as follows:

> Q(Kreuziger): So you also testified that some of the funds that were collected that
> are attributed to these accounts receivable were used to make Chapter 13 plan
> payments, correct?
>
> A(Debtor): The were – They were paid as post-petition wages to me and then I
> used my post-petition wages to make **Chapter 13 payments**.

(Emphasis added).  See Trustee's Motion at ¶ 10, quoting transcript of continued 341 meeting of

creditors.  The Debtor testified that multiple payments were made from the pre-petition accounts

receivable.  At no point did the Debtor state that the Chapter 13 plan payments were made from

post-petition account receivables.

## **Argument**

a.   Account Receivables are the Source of the Plan Payments

The Debtor is correct that the Trustee's argument is based on the premise that the Chapter

13 Plan Payments at issue are derived from the Debtor's pre-petition accounts receivable.  The

Trustee has taken this position because it is consistent with the Debtor's sworn statements and

testimony made to the BAP, the Trustee and the attorney for the United States Trustee.   The

Debtor argues that the statement to the BAP was made in a different context, as if that somehow

changes the factual nature of the statement.  The statement the Debtor made to the BAP was

clearly intended to explain his use of the pre-petition account receivables, and he unequivocally

stated that they were used to fund his Chapter 13 plan.  Just days later, the Debtor testified under

4

oath that the monies from the accounts receivable were used to make "Chapter 13 payments".
Now, in response to the Trustee's motion, the Debtor seeks to tell a different version of the
"truth" in order to seek a different advantage – keeping the Chapter 13 payments.

The Debtor's testimony at his continued 341 meeting of creditors, and affidavit submitted
to the BAP, are sufficient to establish that the debtor has waived his right to no assert that the
plan payments were derived from post-petition receivables. *In re Digital Res., LLC*, 246 B.R.
357, 370 (B.A.P. 8th Cir. 2000)(Waiver is the voluntary and intentional relinquishment of a
known right).  The Debtor should not be allowed to knowingly alter his testimony as he sees fit
in each instance.  If the Debtor's current testimony is accurate, he could have easily provided this
same testimony when responding to questioning at his 341 meeting of creditors, and when
providing an affidavit to the BAP.

b.      Tracing of Plan Payments

The Debtor's response seeks to track his deposits from receivables and in turn eliminate
certain plan payments from the scheduled pre-petition accounts receivable.  The issue with the
Debtor's accounting is that it provides no basis for establishing which payments relate to pre-
petition or post-petition receivables.  The Debtor is working from a $72,000.00 figure; however;
despite numerous demands from the Trustee, the Debtor has failed to provide any documentation
evidencing how he arrived at the $72,000.00 number, and which clients, and claims comprise
those receivables.  The Debtor has had over four months to provide this documentation, and has
not done so.  The Trustee reiterated his specific requests in his February 26, 2016 email, yet no
such documentation has been produced.  The Debtor has only produced documents evidencing
various deposits, with no further information tying those payments to specific receivables.  It is
the Debtor's duty to provide this information to the Trustee, and he has not done so, and is now
in essence using the vagueness created by his failure as a shield to defeat the Trustee's motion.
The Debtor's Declaration filed with his response is similarly vague in its assertions, "**I do not**

5

**believe** that the September 23, 2015, October 23, 2015 or November 23, 2015 payments are traceable to the accounts receivables assets." (Emphasis added) See Debtor's Declaration at ¶ 4.

The Debtor has conceded that the initial plan payment made on August 12, 2015 is traceable to the account receivables disclosed in Schedule B.

The second plan payment was made on or about September 22, 2015.  The September 22, 2015 payment, and the other plan payments, was made out of the Debtor's Associated Bank account ending in #4008.  According to the Debtor's attorney, the funds in account #4008 are all derived from the Debtor's earnings.  See Ex. 2 to Aff. of MDS.  As of September 21, 2015, account #4008 contained $5,263.95; the plan payment was made from those funds.  See Ex. 2 at 4, to Aff. of MDS.  Those funds are directly traceable to the deposit of $9,500 made from the Class Justice PLLC account on August 31, 2015.  See Ex. 6 at 1, to Aff. of MDS.  The $9,500.00 from the Class Justice PLLC account is directly traceable to the deposit of either $36,833.34 on July 30, 2015 or $17,500.00 on August 31, 2015 from the firm's IOLTA account.  See Ex. 4 to Aff. of MDS.  The $36,833.34 and $17,500 have been identified by the Debtor as payments on pre-petition receivables.  Accordingly, the second payment is traceable to the scheduled account receivables.

The third plan payment was made on or about October 23, 2015.  This payment was made after the Debtor received and deposited $17,500 of undisputed pre-petition receivables on August 31, 2015 into his Class Justice PLLC account.  See Ex. 4 to Aff. of MDS.  The Debtor then transferred $9,500 from the Class Justice PLLC account to the Debtor's Associated Bank account ending in #4008 on September 29, 2015.  See Ex. 2 at 4, to Aff. of MDS.  The Debtor had also received and transferred into his Class Justice PLLC account, on September 30, 2015, the amount of $28,344.00 from his IOLTA account.  See Ex. 4 to Aff. of MDS.  The Debtor conceded that at least a portion of the $28,244.00 is traceable to pre-petition earnings.  See Debtor's Response Mem. at 4.  The Debtor then transferred $7,500.00 from his Class Justice PLLC account into his Associated Bank account, ending in #4008, on October 15, 2015. See Ex.

6

2 at 4, to Aff. of MDS.  The $17,500 and $28,344.00 deposits from the IOLTA account to the Class Justice Account have been all admitted to be traceable to pre-petition earnings, except a portion of the $28,344.00 which the debtor disputes.  The third payment is directly traceable to pre-petition account receivables.

The fourth payment was made on November 23, 2015.  The Debtor has provided the Trustee with no documents evidencing the source of the payments relating to this plan payment, despite numerous requests.  As such, the Trustee has insufficient knowledge to trace this plan payment.  The Debtor has been provided with more than enough time to produce the documentation evidencing the source of the plan payment made on November 23, 2015.  The Debtor is a sophisticated individual, and the inference should be made that his failure to provide proper documentation is intentional, and the payment should be found to be traceable to pre-petition account receivables.

The Debtor's claim in his response that "the receivables were fully depleted on or before mid-September 2015" is clearly erroneous as evidenced above. See Debtor's Response at 1.

      c.      <u>Debtor's Legal Arguments</u>

            i.  <u>Possession and Control</u>

The Debtor argues that the statutory language of 11 U.S.C. § 348(f)(1)(A), removes any plan payment funds traceable to pre-petition account receivables from the bankruptcy estate. Section 348(f)(1)(A) provide that the estate is comprised of property "that remains in the possession of or is under the control of the debtor on the date of conversion."  This argument is without merit.  As previously cited by the Debtor, upon the conversion of a case, any payments being held by the Chapter 13 Trustee are payable to the debtor as the Chapter 13 trustee no longer has authority to hold such funds.  See *Harris v. Veigelahn*, 135 S. Ct. 1829, 1838.  Under the Debtor's interpretation of the statute, the Debtor could have made plan payments with pre-petition cash, and then upon conversion he is somehow able to remove that property from the bankruptcy estate because he put it into the possession of the Chapter 13 Trustee.  Section

7

348(f)(1)(A) was implemented to deal with assets acquired post-petition, not pre-petition assets

of the bankruptcy estate.  Section 348 removes a potential deterrent from the filing of a Chapter

13, wherein any wages or assets earned post-petition are lost upon the conversion of the case a

one under chapter 7.  See *In re Laflamme*, 397 B.R. 194, 201 (Bankr. D.N.H. 2008).  This is not

the set of facts we are dealing with in this case.

Under the Debtor's interpretation of the statute, the Debtor could have made plan

payments with pre-petition cash, and then upon conversion he is somehow able to remove that

property from the bankruptcy estate because he put it into the possession of the Chapter 13

Trustee.  Finally, the Debtor argues that he has no control over the plan payments, yet he now

claims that he "never stated or implied that he was waiving his right to a return of his Chapter 13

payments".  Debtor's Mem. At 11.

ii.   Property of the Estate under § 541(a)

The Debtor cites no legal authority to dispute the Trustee's assertion that the accounts

receivable, and the wages derived from those accounts receivable are property of the bankruptcy

estate under 11 U.S.C. § 541(a).  The Debtor attempts to distinguish between a corporate and

individual debtor, but the distinction is moot where the debtor is one and the same.  In this case

the Debtor scheduled the account receivables as his personal property.  The receivables were

scheduled as assets of the bankruptcy estate because they had been earned as of the

commencement of the case.  If the law firm ceased operation as of the filing date, the Debtor

would still be entitled to the accounts receivable regardless of any continued employment with

Class Justice PLLC.  The debtor's claimed post-petition work on unrelated legal matters does not

transform the prepetition receivables into post-petition earnings, such an argument is

unsupportable by case law.

The Debtor has pointed to no authority which somehow removes this asset from property

of the estate, and has provided no factual basis for establishing that the payments are related to

services provided post-petition.  The Debtor is correct that post-petition wages do not become

8

property of the bankruptcy estate, however, the subject payments to debtor do not constitute post-petition earnings under 11 U.S.C. § 541(a)(6); See *In re Parsons*, 262 B.R. 475, 479-80 (B.A.P. 8th Cir. 2001) aff'd, 280 F.3d 1185 (8th Cir. 2002)(Debtor's commission was earned pre-petition, despite post-petition work required to complete transaction).

The post petition receipt by the debtor of prepetition receivables, and the subsequent issuance of checks, written by the debtor to the debtor, did not transform those receivables into "post-petition earnings".  Indeed, as admitted by the debtor at the second phase of the 341 meeting of creditors, a Chapter 7 trustee would simply have collected the pre-petition receivables, and they would have then been available for payment to creditors.   Further, the checks that the debtor wrote to himself bear no resemblance to checks written to law firm employees for earned wages. See Ex. 7 to Aff. of MDS.  They are simply checks written by him, to him, by which he received money, with no withholding for taxes, social security or other standard withholdings.  They are identical in form to a check that the Debtor wrote, also on the Class Justice bank account, to his attorney Barbara May to pay fees in this bankruptcy case.  See Ex. 8 to Aff. of MDS.

d.    Ad Hominem Attacks

The Debtor asserts that the Trustee has taken to ad hominem attacks in this case.  It is important to note that the Trustee has only pointed to glaring inconsistencies and at times false testimony provided by the Debtor.  The Debtor's veracity is an issue in many of the motions and adversary actions brought by the Trustee in this case.  In this matter, the Debtor's testimony and statements regarding the Chapter 13 Plan Payments and the pre-petition accounts receivable have been very inconsistent, and any such reference to those inconsistencies is directly relevant to the position(s) taken by the Debtor.

## **Conclusion**

For the reasons stated above, the trustee respectfully requests that the court enter an order

requiring Barbara J. May to immediately turn over to the Chapter 7 Trustee, Randall L. Seaver,

the $10,169.81 currently in her possession.

FULLER, SEAVER,
SWANSON & KELSCH, P.A.


Dated: March 22, 2016                                    By: /e/ Matthew D. Swanson
                                                             Matthew D. Swanson          390271
                                                             Randall L. Seaver            152882
                                                             12400 Portland Avenue South, Suite 132
                                                             Burnsville, MN 55337
                                                             (952) 890-0888; (952) 890-0244 (fax)

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

|  |  |
|---|---|
|  | BKY No. 15-42460 |
| In re: | Chapter 7 |
|  |  |
| Paul Robert Hansmeier, | **AFFIDAVIT OF MATTHEW D. SWANSON** |
|  |  |
| Debtor. |  |

STATE OF MINNESOTA    )
                           ) ss.
COUNTY OF DAKOTA    )        Matthew D. Swanson, being first duly sworn on oath, states and alleges as follows:

1.    I am one of the attorneys representing the Chapter 7 Panel Trustee, Randall L. Seaver, appointed to administer the bankruptcy estate of Paul Robert Hansmeier, Bankruptcy Case No. 15-42460.

2.    Attached hereto as Exhibit 1 is a December 10, 2015 email from the Debtor's counsel Barbara J. May.

3.    Attached hereto as Exhibit 2 is a December 18, 2015 email from the Debtor's counsel Barbara J. May, along with statements from the Debtor's Associated Bank Account, the statements were received with markings.

4.    Attached hereto as Exhibit 3 is a copy of the receivable paydown schedule provided by the Debtor and retrieved from the Debtor's shared dropbox.

5.    Attached hereto as Exhibit 4 is a copy of wire transfer confirmations and deposit information provided by the Debtor and retrieved from the Debtor's shared dropbox.

6.    Attached hereto as Exhibit 5 is a February 26, 2016 email string from the Chapter 7 Trustee to the Debtor's counsel Barbara J. May.

7.    Attached hereto as Exhibit 6 is a copy of the account statement for Associated Bank account ending in #4008 for the time period covering August 18, 2015 through September 17, 2015, this document was provided by Associated Bank pursuant to a subpoena.

8.    Attached hereto as Exhibit 7 are copies of checks from the Associated Bank account held in the name of Class Justice PLLC to Paul Hansmeier. This document was produced from Associated Bank pursuant to a subpoena.

9.      Attached hereto as Exhibit 8 are copies of checks from the Associated Bank account held in the name of Class Justice PLLC to Paul Hansmeier, including a $5,000.00 check to Barbara May.  This document was produced from Associated Bank pursuant to a subpoena.

FURTHER YOUR AFFIANT SAYETH NOT.



Matthew D. Swanson

Subscribed and sworn to before me
this 22 day of March, 2016.

Notary Public

Jennifer Marie Baker
NOTARY PUBLIC-MINNESOTA
MY COMMISSION EXPIRES 1-31-2017

**Matthew Swanson**

| | |
|---|---|
| **From:** | Randall Seaver |
| **Sent:** | Thursday, December 10, 2015 11:51 AM |
| **To:** | Matthew Swanson |
| **Subject:** | FW: Hansmeier |

**From:** Barbara May [mailto:barbara@barbaramaylawoffice.com]
**Sent:** Thursday, December 10, 2015 11:32 AM
**To:** Karl J Johnson; Randall Seaver
**Subject:** Hansmeier

Your reading of the Harris case is correct, and the Ch 13 trustee is not required to divine the source of funds. That being said, Mr. Hansmeier will produce documentation that the payments were made either out of his wife's income or from post petition earnings.

EXHIBIT 

**Matthew Swanson**

| | |
|---|---|
| **From:** | Barbara May [barbara@barbaramaylawoffice.com] |
| **Sent:** | Friday, December 18, 2015 1:46 PM |
| **To:** | Matthew Swanson; Barbara May |
| **Subject:** | Hansmeier |
| **Attachments:** | SOURCE OF CH 13 PAYMENTS.pdf |

Here are the records of Hansmeier's chapter 13 payments.  His account had an opening balance of $11.95 before the first payment. All payments after the initial deposit were funded by Mr. Hansmeier's income.

1

EXHIBIT **2**

 **Associated**Bank

ASSOCIATED BANK N.A.
200 N ADAMS ST
PO BOX 19006
GREEN BAY, WI 54307-9006
24 Hour Telephone Banking: 1-800-236-7160
24 Hour Customer Care Center: 1-800-236-8866

*Page 1 of 2*

**FINANCIAL STATEMENT OF ACCOUNTS**
Primary Account:        008

*Statement Activity Period*
*05/18/2015 - 08/17/2015*

Bank: 001

Mail Code: 0S

PADRAIGIN L BROWNE
OR PAUL R HANSMEIER
100 3RD AVE S UNIT 3201
MINNEAPOLIS MN 55401-2728

INFORMATION ABOUT COMBINED BALANCES: Having combined deposit and/or investment balances with Associated Bank is one way to avoid a monthly maintenance fee on your Associated Checking or Associated Elite Checking account.

Combined balances include the aggregate average balance of any deposit and/or investment accounts using an identical customer taxpayer ID number on record.

Investment accounts exclude personal trusts, Individual Retirement Accounts (IRAs) or retirement plans serviced by Associated Trust Company (ATC) and individual retirement balances managed through Retirement Plan Services including 401(k) and Health Savings Investment accounts.

For specific details, please visit any Associated Bank location or call our 24/7/365 Customer Care team at 800-236-8866.

Securities and insurance products are NOT deposits or obligations of, insured or guaranteed by Associated Bank or any bank or affiliate, are NOT insured by the FDIC or any agency of the United States, and involve INVESTMENT RISK, including POSSIBLE LOSS OF VALUE.

IMPORTANT NOTICE ABOUT YOUR DEPOSIT ACCOUNT AGREEMENT: This Important Notice and Change in Terms ("Notice") identifies changes to Section 10 of your Deposit Account Agreement.

Throughout Section 10, we have modified the language to more clearly define overdraft fees and nonsufficient funds fees (NSF).

In Section 10.3.3, we have made changes to the posting order. Starting June 23, 2015, ATM withdrawals, nonrecurring point-of-sale Debit/ATM card transactions and ATM transfers out of your Account will post chronologically by the date and time of the transactions rather than when the Bank settles them.

We encourage you to keep a copy of this Notice with your Deposit Account Agreement. For the full Deposit Account Agreement, visit us online at AssociatedBank.com/Forms or stop by your local Associated Bank branch. If you have questions, please contact our 24/7/365 Customer Care team at 800-236-8866.

| FINANCIAL SUMMARY | ACCOUNT# | BALANCE |
|---|---|---|
| **DEPOSIT ACCOUNTS** | | |
| Associated Checking | `8 | $6,813.95 |

| DEPOSIT ACCOUNTS | | |
|---|---|---|
| **Associated Checking** | 08 | |
| Beginning Balance | | 11.95 |
| Plus: Deposits and Other Additions | | 9,500.00 |
| Minus: Withdrawals and Other Deductions | | 2,698.00 |
| **ENDING BALANCE ON 08/17/2015** | | **$6,813.95** |
| **Deposits and Other Additions** | | |
| 07/31/2015    CUSTOMER DEPOSIT | | 9,500.00 |
| | TOTAL | **$9,500.00** |

 Associated Bank

PADRAIGIN L BROWNE                    Acct        )08              Page 2 of 2

### Withdrawals and Other Deductions

| Date | Description | Amount |
|------|-------------|--------|
| 08/12/2015 | CHECKING/MMA WD | 2,698.00 |
| | TOTAL | **$2,698.00** |

### Total Overdraft Fees and Total Returned Item Fees

| | Total For This Period | Total Year-to-Date |
|---|---|---|
| Total Overdraft Fees* | $0.00 | $0.00 |
| Total Returned Item Fees** | $0.00 | $0.00 |

Please note if you have a negative balance for more than five business days, a continued overdraft fee of $7.00 per business day will also apply.
*Total Overdraft Fees include fees for: overdraft items or debits paid, NSF (Unavailable Funds) item or debit paid, and Continued overdraft fees.
** Fees for overdraft or NSF items returned unpaid.

### Balance Summary

| DATE | BALANCE | DATE | BALANCE |
|------|---------|------|---------|
| 07/31/2015 | 9,511.95 | 08/12/2015 | 6,813.95 |

### Current Service Fee Period Balances

| | |
|---|---|
| Average Ledger Balance | $5,350.29 |
| Minimum Ledger Balance | $11.00 |



Equal Housing Lender.  Member FDIC and Associated Banc-Corp.
Associated Bank

 **Associated**Bank

ASSOCIATED BANK N.A.
200 N ADAMS ST
PO BOX 19006
GREEN BAY, WI 54307-9006
24 Hour Telephone Banking: 1-800-236-7160
24 Hour Customer Care Center: 1-800-236-8866

*Page 1 of 1*

**FINANCIAL STATEMENT OF ACCOUNTS**
Primary Account          `08

*Statement Activity Period*
*09/18/2015 - 10/18/2015*

Bank: 001

Mail Code: 0S

PADRAIGIN L BROWNE
OR PAUL R HANSMEIER
100 3RD AVE S UNIT 3201
MINNEAPOLIS MN 55401-2728

| FINANCIAL SUMMARY | ACCOUNT# | BALANCE |
|---|---|---|
| **DEPOSIT ACCOUNTS** | | |
| Associated Checking | )08 | $5,407.95 |

| DEPOSIT ACCOUNTS | | |
|---|---|---|
| **Associated Checking** | )08 | |

| | |
|---|---|
| Beginning Balance | 5,263.95 |
| Plus: Deposits and Other Additions | 17,000.00 |
| Minus: Withdrawals and Other Deductions | 16,856.00 |
| **ENDING BALANCE ON 10/18/2015** | **$5,407.95** |

**Deposits and Other Additions**

| Date | Description | | Amount |
|---|---|---|---|
| 09/29/2015 | CUSTOMER DEPOSIT | | 9,500.00 |
| 10/15/2015 | CUSTOMER DEPOSIT | | 7,500.00 |
| | | TOTAL | $17,000.00 |

**Withdrawals and Other Deductions**

| Date | Description | | Amount |
|---|---|---|---|
| 09/22/2015 | CHECKING/MMA WD | | 2,698.00 |
| 09/25/2015 | CHECKING/MMA WD | | 2,158.00 |
| 09/30/2015 | WEB FR DDA TO DDA | 53 CONFIRMATION# 170114627491 | 5,000.00 |
| 10/14/2015 | WEB FR DDA TO DD | 953 CONFIRMATION# 173718825212 | 2,000.00 |
| 10/15/2015 | WEB FR DDA TO D | 53 CONFIRMATION# 161555842934 | 5,000.00 |
| | | TOTAL | $16,856.00 |

**Total Overdraft Fees and Total Returned Item Fees**

| | Total For This Period | Total Year-to-Date |
|---|---|---|
| Total Overdraft Fees* | $0.00 | $0.00 |
| Total Returned Item Fees** | $0.00 | $0.00 |

Please note if you have a negative balance for more than five business days, a continued overdraft fee of $7.00 per business day will also apply.
*Total Overdraft Fees include fees for: overdraft items or debits paid, NSF (Unavailable Funds) item or debit paid, and Continued overdraft fees.
** Fees for overdraft or NSF items returned unpaid.

**Balance Summary**

| DATE | BALANCE | DATE | BALANCE | DATE | BALANCE |
|---|---|---|---|---|---|
| 09/22/2015 | 2,565.95 | 09/29/2015 | 9,907.95 | 10/14/2015 | 2,907.95 |
| 09/25/2015 | 407.95 | 09/30/2015 | 4,907.95 | 10/15/2015 | 5,407.95 |

**Current Service Fee Period Balances**

| | |
|---|---|
| Average Ledger Balance | $4,307.88 |
| Minimum Ledger Balance | $407.00 |

# \* PLEASE USE THIS FORM TO BALANCE YOUR CHECKING ACCOUNT \*

CHECKS OUTSTANDING – NOT
APPEARING ON THIS STATEMENT

| No. | $ |
|-----|---|
|     |   |
|     |   |
|     |   |
|     |   |
|     |   |
|     |   |
|     |   |
|     |   |
|     |   |
|     |   |
|     |   |
| TOTAL | |

MONTH _____  _____

CHECKING ACCOUNT
BALANCE SHOWN ON
THIS STATEMENT       $ _____

ADD +
CHECKING DEPOSITS,
IF ANY, NOT CREDITED  $ _____

_____

_____

$ _____

SUBTRACT –
CHECKS OUTSTANDING $ _____

BALANCE        _____

| BALANCE AS FROM CHECKBOOK | $ _____ |
| SUBTRACT SERVICE CHARGE(S) LISTED ON STATEMENT | -$ _____ |
| ADD INTEREST LISTED ON STATEMENT | +$ _____ |
| NEW CHECKBOOK BALANCE | $ _____ |

THE ABOVE RESULT SHOULD AGREE. IF THEY DO NOT,
PLEASE CONTACT OUR CUSTOMER CARE CENTER

☐  ADD LOAN ADVANCES TO YOUR CHECKING REGISTER.
☐  SUBTRACT AUTOMATIC PAYMENTS FROM YOUR CHECK REGISTER.

## ASSOCIATED CHECKING RESERVE LINE ACCOUNT INFORMATION

### IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR CHECKING RESERVE LINE.

If you think your statement is wrong, or if you need more information about a transaction on your statement, write us (on a separate sheet) at the address located on the front of this statement as soon as possible. We must hear from you no later than 60 days after we sent you the first statement on which the error or problem appeared. You can telephone us, but doing so will NOT preserve your rights.

In your letter, give us the following information:

☐   Your name and account number.

☐   The dollar amount of the suspected error.

☐   Describe the error and explain, if you can, why you believe this is an error. If you need more information, describe the item you are unsure about.

You do not have to pay any amount in question while we are investigating; however, you are still obligated to make the required payments which are due that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question.

### IMPORTANT FINANCE CHARGE INFORMATION

We figure the finance charge on your account by applying the daily periodic rate to the "average daily balance" of your account (including current transactions). To get the "average daily balance," we take the beginning balance of your account each day, add any new advances/loans, and subtract any payments or credits. This gives us the daily balance. Then, we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. This gives us the "average daily balance." Late payment fees, membership fee, annual fee, and unpaid finance charges are not included in the calculation of the "average daily balance."

### PREPAYMENT OF YOUR CHECKING RESERVE LINE

Your Associated Checking Reserve Line may be prepaid at any time without penalty.

## IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC TRANSFERS

Telephone us at the Customer Care Center number or write us at the address shown on the front of this statement as soon as you can if you think your statement or receipt is wrong, or if you need more information about a transfer listed on the statement or receipt. We must hear from you no later than 60 days after we sent the FIRST statement on which the problem or error appears.

☐   Tell us your name and account number (if any);

☐   Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information;

☐   Tell us the dollar amount of the suspected error;

☐   Tell us the date, time, and location of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will recredit your account for the amount you think is in error so that you will have use of the money during the time it takes to complete our investigation.

### TO VERIFY YOUR DIRECT DEPOSIT: Please call the Customer Care Center number located on the front of this statement.

(12/06) 1061

**Associated** Bank

ASSOCIATED BANK N.A.
200 N ADAMS ST
PO BOX 19006
GREEN BAY, WI 54307-9006
24 Hour Telephone Banking: 1-800-236-7160
24 Hour Customer Care Center: 1-800-236-8866

*Page 1 of 1*

**FINANCIAL STATEMENT OF ACCOUNTS**
Primary Account:          08

*Statement Activity Period*
*10/19/2015 - 11/17/2015*

Bank: 001

Mail Code: 0S

PADRAIGIN L BROWNE
OR PAUL R HANSMEIER
100 3RD AVE S UNIT 3201
MINNEAPOLIS MN 55401-2728

| FINANCIAL SUMMARY | ACCOUNT# | BALANCE |
|---|---|---|
| **DEPOSIT ACCOUNTS** | | |
| Associated Checking | )08 | $3,717.95 |

| DEPOSIT ACCOUNTS | | |
|---|---|---|

**Associated Checking**          008

| | |
|---|---|
| Beginning Balance | 5,407.95 |
| Plus: Deposits and Other Additions | 11,500.00 |
| Minus: Withdrawals and Other Deductions | 13,190.00 |
| **ENDING BALANCE ON 11/17/2015** | **$3,717.95** |

**Deposits and Other Additions**

| Date | Description | | Amount |
|---|---|---|---|
| 10/29/2015 | CUSTOMER DEPOSIT | | 4,000.00 |
| 11/05/2015 | CUSTOMER DEPOSIT | | 7,500.00 |
| | | TOTAL | $11,500.00 |

**Withdrawals and Other Deductions**

| Date | Description | | Amount |
|---|---|---|---|
| 10/20/2015 | WEB FR DDA TO DDA | 1853 CONFIRMATION# 103728904261 | 2,500.00 |
| 10/23/2015 | CHECKING/MMA WD | | 2,690.00 |
| 10/29/2015 | WEB FR DDA TO DDA | 853 CONFIRMATION# 105953020387 | 2,000.00 |
| 11/03/2015 | WEB FR DDA TO DD. | !853 CONFIRMATION# 144215105516 | 2,000.00 |
| 11/12/2015 | WEB FR DDA TO DL. | 353 CONFIRMATION# 150337080742 | 4,000.00 |
| | | TOTAL | $13,190.00 |

**Total Overdraft Fees and Total Returned Item Fees**

| | Total For This Period | Total Year-to-Date |
|---|---|---|
| Total Overdraft Fees* | $0.00 | $0.00 |
| Total Returned Item Fees** | $0.00 | $0.00 |

Please note if you have a negative balance for more than five business days, a continued overdraft fee of $7.00 per business day will also apply.
*Total Overdraft Fees include fees for: overdraft items or debits paid, NSF (Unavailable Funds) Item or debit paid, and Continued overdraft fees.
** Fees for overdraft or NSF items returned unpaid.

**Balance Summary**

| DATE | BALANCE | DATE | BALANCE | DATE | BALANCE |
|---|---|---|---|---|---|
| 10/20/2015 | 2,907.95 | 10/29/2015 | 2,217.95 | 11/05/2015 | 7,717.95 |
| 10/23/2015 | 217.95 | 11/03/2015 | 217.95 | 11/12/2015 | 3,717.95 |

**Current Service Fee Period Balances**

| | |
|---|---|
| Average Ledger Balance | $3,443.28 |
| Minimum Ledger Balance | $217.00 |

# * PLEASE USE THIS FORM TO BALANCE YOUR CHECKING ACCOUNT *

CHECKS OUTSTANDING – NOT
APPEARING ON THIS STATEMENT

| No. | $ | |
|-----|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| TOTAL | | |

MONTH _____  _____

CHECKING ACCOUNT
BALANCE SHOWN ON
THIS STATEMENT          $ _____

ADD +
CHECKING DEPOSITS,
IF ANY, NOT CREDITED   $ _____

_____

_____

$ _____

SUBTRACT –
CHECKS OUTSTANDING  $ _____

BALANCE

BALANCE AS FROM CHECKBOOK        $ _____

SUBTRACT SERVICE CHARGE(S)
LISTED ON STATEMENT              -$ _____

ADD INTEREST LISTED ON
STATEMENT                        +$ _____

NEW CHECKBOOK BALANCE            $ _____

THE ABOVE RESULT SHOULD AGREE  IF THEY DO NOT,
PLEASE CONTACT OUR CUSTOMER CARE CENTER

☐  ADD LOAN ADVANCES TO YOUR CHECKING REGISTER.
☐  SUBTRACT AUTOMATIC PAYMENTS FROM YOUR CHECK REGISTER.

## ASSOCIATED CHECKING RESERVE LINE ACCOUNT INFORMATION

### IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR CHECKING RESERVE LINE.

If you think your statement is wrong, or if you need more information about a transaction on your statement, write us (on a separate sheet) at the address located on the front of this statement as soon as possible.  We must hear from you no later than 60 days after we sent you the first statement on which the error or problem appeared.  You can telephone us, but doing so will NOT preserve your rights.

In your letter, give us the following information:

☐  Your name and account number.

☐  The dollar amount of the suspected error.

☐  Describe the error and explain, if you can, why you believe this is an error.  If you need more information, describe the item you are unsure about.

You do not have to pay any amount in question while we are investigating; however, you are still obligated to make the required payments which are due that are not in question.  While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question.

### IMPORTANT FINANCE CHARGE INFORMATION

We figure the finance charge on your account by applying the daily periodic rate to the "average daily balance" of your account (including current transactions).  To get the "average daily balance," we take the beginning balance of your account each day, add any new advances/loans, and subtract any payments or credits.  This gives us the daily balance.  Then, we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle.  This gives us the "average daily balance."  Late payment fees, membership fee, annual fee, and unpaid finance charges are not included in the calculation of the "average daily balance."

### PREPAYMENT OF YOUR CHECKING RESERVE LINE

Your Associated Checking Reserve Line may be prepaid at any time without penalty.

## IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC TRANSFERS

Telephone us at the Customer Care Center number or write us at the address shown on the front of this statement as soon as you can if you think your statement or receipt is wrong, or if you need more information about a transfer listed on the statement or receipt.  We must hear from you no later than 60 days after we sent the FIRST statement on which the problem or error appears.

☐  Tell us your name and account number (if any);

☐  Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information;

☐  Tell us the dollar amount of the suspected error;

☐  Tell us the date, time, and location of the suspected error.

We will investigate your complaint and will correct any error promptly.  If we take more than 10 business days to do this, we will recredit your account for the amount you think is in error so that you will have use of the money during the time it takes to complete our investigation.

TO VERIFY YOUR DIRECT DEPOSIT: Please call the Customer Care Center number located on the front of this statement.          (12/06) 1061



## ACCOUNT ACTIVITY

To view more or specific activity, select desired account, transaction type, category, and/or date range and click Display. You can also:

- Click the check number or check icon to view an available check or deposit image.
- Click a transaction to edit its category, change the description or add a note.
- After you add a note, it will appear on the activity page under the description.
- Click a column header to sort the table by date, check number, type, category, description, debit amount, credit amount or balance.
- Click the envelope icon next to a posted transaction to send an inquiry to Customer Care.

**Associated Checking**

| | |
|---|---|
| Account Number: | ***4008 |
| Account Balance: | $77.95 |
| Available Balance: | $77.95 |
| Interest Earned YTD | $0.00 |
| Prior Year Interest Earned: | $0.00 |

MAXIMIZE YOUR INTEREST INCOME.

Open a long-term CD online in minutes. Apply today

SIGN. SNAP. DEPOSIT.

Make deposits from your mobile device. Learn more

Help with this page

Print This Page

| Account: | Type: | Category: | From: | To: |
|---|---|---|---|---|
| Associated Checking ***4008 | -- ALL -- | All | 11/10/2015 | 12/10/2015 | Display |

Items in italics are being processed and cannot be edited yet.

| Date | No. | Type | Category | Description | Debit | Credit | Balance | Inquiry |
|---|---|---|---|---|---|---|---|---|
| 12/7/2015 | 1712 | Check | Uncategorized | CHECK | ($1,950.00) | | $77.95 | ✉ |
| 12/3/2015 | | Credit | Uncategorized | WEB TO DDA FR DDA 53 CONFIRMATION# 174503136889 | | $1,000.00 | $2,027.95 | ✉ |
| 11/23/2015 | | Debit | Uncategorized | CHECKING/MMA WITHDRAWAL | ($2,690.00) | | $1,027.95 | ✉ |
| 11/12/2015 | | Debit | Uncategorized | WEB FR DDA TO DDA 1853 CONFIRMATION# 150337080742 | ($4,000.00) | | $3,717.95 | ✉ |

| | | |
|---|---|---|
| 9/30/2015 | Disabiliy Support Alliance | $28,344.00 |
| 8/31/2015 | Disabiliy Support Alliance | $17,500.00 |
| 7/31/2015 | Disabiliy, Support Alliance | $1,000.00 |
| 7/30/2015 | Disabiliy Support Alliance | $36,833.34 |

**EXHIBIT 3**

2/22/2016                                                    Associated Connect

## Transfer History Details

| | |
|---|---|
| Company Name | CLASS JUSTICE PLLC |
| Transfer Name | Quick Transfer 201507300102 |
| From Account | 71 |
| To Account | 773 |
| Apply To | N/A |
| Status | Processed |
| First Effective Date | 07/30/2015 |
| Created By | prhansmeier |
| Created Date | 07/30/2015 |
| Last Modified By | prhansmeier |
| Last Modified Date | 07/30/2015 |
| Approved By | prhansmeier |
| Approved Date | 07/30/2015 |
| Released By | prhansmeier |
| Released Date | 07/30/2015 |
| Amount | $36,833.34 |
| Memo | Quick Transfer |

https://bolb1west2.associatedbank.com/OnlineBanking.aspx

EXHIBIT 4

2/22/2016                                                                                  Associated Connect

## Transfer History Details

| | |
|---|---|
| Company name | CLASS JUSTICE PLLC |
| Transfer name | Quick Transfer 201508311232 |
| From account | 971 |
| To account | 773 |
| Apply to | N/A |
| Status | Processed |
| First effective date | 08/31/2015 |
| Created by | prhansmeier |
| Created date | 08/31/2015 |
| Last modified by | prhansmeier |
| Last modified date | 08/31/2015 |
| Approved by | prhansmeier |
| Approved date | 08/31/2015 |
| Released by | prhansmeier |
| Released date | 08/31/2015 |
| Amount | $17,500.00 |
| Memo | Quick Transfer |

2/22/2016

Associated Connect

☐
☐
☒

☐
☒

Front Image

**Associated** Bank

ACCOUNT NUMBER

'.773

NAME Paul Hansmeier
PLEASE PRINT NAME

SIGNATURE
*SIGNATURE REQUIRED IF RECEIVING CASH

M2120 (01/12)

CHECKING/MONEY MARKET DEPOSIT

| CASH | CURRENCY | | |
| | COIN | | |
| C H E C K S | | 1000 | 00 |
| | | | |
| | | | |
| | TOTAL FROM OTHER SIDE | | |
| | **TOTAL** | | |
| | LESS CASH RECEIVED | | |

USE OTHER SIDE FOR
ADDITIONAL LISTING
BE SURE EACH ITEM IS
PROPERLY ENDORSED.

NET DEPOSIT $    L 000.00

⑆500 ⑈100 10⑉

|
☐

Back Image

https://bolb2vest2.associatedbank.com/OnlineBanking.aspx

2/22/2016

<Associated Bank <                    2>

2/22/2016                                                    Associated Connect

Transfer History Details

| | |
|---|---|
| Company name | CLASS JUSTICE PLLC |
| Transfer name | Transfer |
| From account | )71 |
| To account | 73 |
| Apply to | N/A |
| Status | Processed |
| First effective date | 09/30/2015 |
| Created By | prhansmeier |
| Created date | 09/30/2015 |
| Last modified By | prhansmeier |
| Last modified date | 09/30/2015 |
| Approved By | prhansmeier |
| Approved date | 09/30/2015 |
| Released By | prhansmeier |
| Released date | 09/30/2015 |
| Amount | $28,344.00 |
| Memo | |

**Matthew Swanson**

---

| | |
|---|---|
| **From:** | Randall Seaver |
| **Sent:** | Friday, February 26, 2016 9:46 AM |
| **To:** | Barbara May |
| **Cc:** | Matthew Swanson |
| **Subject:** | RE: Hansmeier |

2/26/2016
Barbara – Thanks.  If I don't receive the requested documents by then, I will be filing a turnover motion.  As to the accounts receivable, give me a list of each receivable, by name and amount, that existed on the date of filing, and give me a list of the date and amount of the client payments, tied to the accounts receivable.  Also, provide copies of all checks, wires, and any other documents showing the payments that resulted in the transfers by Mr. Hansmeier of $36,833.34, on 7/30/15, $17,500 on 8/31/15, $28,344.00 on 9/30/15 and $1,000 on an unspecified date.  This includes copies of all checks, money orders and any other instruments by which settlements or other monies were paid to clients that resulted in the collection of the accounts receivable.  The documents must be sufficient for me to identify each existing account receivable, and track all financial activity that resulted in payment of the receivables.  Thanks.
Randy Seaver, Trustee

---

**From:** Barbara May [mailto:barbara@barbaramaylawoffice.com]
**Sent:** Friday, February 26, 2016 8:48 AM
**To:** Randall Seaver
**Subject:** Fwd: Hansmeier

I will ask.

Also, Paul is struggling trying to find the form of disclosure you are looking for regarding the A/R.  Can you give me an example?  I don't mean to be an idiot, but I feel like we are trying to guess Rumpelstiltskin's name.  Be precise.  Do you want it tracked by bank entry, expense, deposit, time sheet?
---------- Forwarded message ----------
From: **Randall Seaver** <rseaver@fssklaw.com>
Date: Fri, Feb 26, 2016 at 8:27 AM
Subject: Hansmeier
To: Barbara May <barbara@barbaramaylawoffice.com>
Cc: Matthew Swanson <mswanson@fssklaw.com>

Barbara – Please have Mr. Hansmeier provide me, by March 4, 2016, with copies of all tax returns filed by Class Justice, PLLC.  Also, please have him provide me with the financial condition statement, which I requested previously, by the same date.  Thank you.

Randy Seaver, Trustee


**EXHIBIT 5**

1

ASSOCIATED BANK N.A.
200 N ADAMS ST
PO BOX 19006
GREEN BAY, WI 54307-9006
24 Hour Telephone Banking: 1-800-236-7160
24 Hour Customer Care Center: 1-800-236-8866

*Page 1 of 2*

**FINANCIAL STATEMENT OF ACCOUNTS**

Primary Account:       008

*Statement Activity Period*

*08/18/2015 - 09/17/2015*

Bank: 001

Mail Code: 0S

PADRAIGIN L BROWNE
OR PAUL R HANSMEIER
100 3RD AVE S UNIT 3201
MINNEAPOLIS MN 55401-2728

| FINANCIAL SUMMARY | ACCOUNT# | BALANCE |
|---|---|---|
| **DEPOSIT ACCOUNTS** | | |
| Associated Checking | )08 | $5,263.95 |

| DEPOSIT ACCOUNTS | |
|---|---|
| **Associated Checking** | )08 |

| | |
|---|---|
| Beginning Balance | 6,813.95 |
| Plus: Deposits and Other Additions | 9,500.00 |
| Minus: Withdrawals and Other Deductions | 10,600.00 |
| Minus: Checks Paid | 450.00 |
| **ENDING BALANCE ON 09/17/2015** | **$5,263.95** |

**Deposits and Other Additions**

| | | | |
|---|---|---|---|
| 08/31/2015 | CUSTOMER DEPOSIT | | 9,500.00 |
| | | TOTAL | **$9,500.00** |

**Withdrawals and Other Deductions**

| | | | |
|---|---|---|---|
| 08/18/2015 | WEB FR DDA TO DDA | 953 CONFIRMATION# 143215035116 | 4,600.00 |
| 08/25/2015 | WEB FR DDA TO DDA | 853 CONFIRMATION# 141635126920 | 1,000.00 |
| 09/01/2015 | WEB FR DDA TO DD. | 1853 CONFIRMATION# 153241235458 | 5,000.00 |
| | | TOTAL | **$10,600.00** |

**Checks Paid**

| DATE | CHECK# | AMOUNT | | |
|---|---|---|---|---|
| 09/17/2015 | 1532 | 450.00 | | |
| | | | TOTAL | **$450.00** |

**Total Overdraft Fees and Total Returned Item Fees**

| | Total For This Period | Total Year-to-Date |
|---|---|---|
| **Total Overdraft Fees*** | $0.00 | $0.00 |
| **Total Returned Item Fees**** | $0.00 | $0.00 |

Please note if you have a negative balance for more than five business days, a continued overdraft fee of $7.00 per business day will also apply.
*Total Overdraft Fees include fees for: overdraft items or debits paid, NSF (Unavailable Funds) item or debit paid, and Continued overdraft fees.
** Fees for overdraft or NSF items returned unpaid.

**Balance Summary**

| DATE | BALANCE | DATE | BALANCE | DATE | BALANCE |
|---|---|---|---|---|---|
| 08/18/2015 | 2,213.95 | 08/31/2015 | 10,713.95 | 09/17/2015 | 5,263.95 |
| 08/25/2015 | 1,213.95 | 09/01/2015 | 5,713.95 | | |



EXHIBIT 6

PADRAIGIN L BROWNE                    Acct #        )8              *Page 2 of 2*

### Current Service Fee Period Balances

Average Ledger Balance                                    $4,199.43
Minimum Ledger Balance                                    $1,213.00



EXHIBIT **7**



**CLASS JUSTICE PLLC**
100 3RD AVE S UNIT 3201
MINNEAPOLIS, MN 55401-2592

3439

DATE 7/31/15

PAY TO THE ORDER OF Paul Hansmeier   $ 9,500

Nine Thousand Five Hundred   DOLLARS

Associated Bank

FOR July 2015

⑈003439⑈  ⑆ 2283 306 773⑆

Account 3   Date 07-31-2015   Amount 9500.00
Serial 3439   AcctCC   773

---

**CLASS JUSTICE PLLC**
100 3RD AVE S UNIT 3201
MINNEAPOLIS, MN 55401-2592

3444

DATE 8/31/15

PAY TO THE ORDER OF Paul Hansmeier   $ 9,500.00

Nine Thousand Five Hundred   DOLLARS

Associated Bank

FOR August 2015

⑈003444⑈  ⑆ 2283 306 773⑆

Account 3   Date 08-31-2015   Amount 9500.00
Serial 3444   AcctCC   73

---

**CLASS JUSTICE PLLC**
100 3RD AVE S UNIT 3201
MINNEAPOLIS, MN 55401-2592

3452

DATE 9/29/15

PAY TO THE ORDER OF Paul Hansmeier   $ 9,500.00

Nine Thousand Five Hundred   DOLLARS

Associated Bank

FOR Sept

⑈003452⑈  ⑆ 2283 306 773⑆

Account 773   Date 09-29-2015   Amount 9500.00
Serial 3452   AcctCC   3

---

**CLASS JUSTICE PLLC**
100 3RD AVE S UNIT 3201
MINNEAPOLIS, MN 55401-2592

3459

DATE 10/15/15

PAY TO THE ORDER OF Paul Hansmeier   $ 7,500.00

Seven Thousand Five Hundred   DOLLARS

Associated Bank

FOR Oct. 15

⑈003459⑈  ⑆ 2283 306 773⑆

Account   Date 10-15-2015   Amount 7500.00
Serial 3459   AcctC   3

---

**CLASS JUSTICE PLLC**
100 3RD AVE S UNIT 3201
MINNEAPOLIS, MN 55401-2592

3468

DATE 11/5/15

PAY TO THE ORDER OF Paul Hansmeier   $ 7,500.00

Seven Thousand Five Hundred   DOLLARS

Associated Bank

FOR 11/15

⑈003468⑈  ⑆ 2283 306 773⑆

Account   73   Date 11-05-2015   Amount 7500.00
Serial 3468   AcctCC   73

**EXHIBIT 7**



**CLASS JUSTICE PLLC**
100 3RD AVE S UNIT 3201
MINNEAPOLIS, MN 55401-2592

3467

#003467#      283 306 773#

---

**CLASS JUSTICE PLLC**
100 3RD AVE S UNIT 3201
MINNEAPOLIS, MN 55401-2592

3469

DATE 12/1/15

PAY TO THE ORDER OF Padmaja Brom    $ 5000.00

Five Thousand    DOLLARS

DRPT

#003469#      283 306 773#

Associated Bank <20151202> <003292150299>

Accoun      3   Date 12-02-2015   Amount 5000.00
Serial 3469   AcctCC

---

**CLASS JUSTICE PLLC**
100 3RD AVE S UNIT 3201
MINNEAPOLIS, MN 55401-2592

3470

DATE 12/2/15

PAY TO THE ORDER OF Barbara May    $ 5000.00

Five Thousand    DOLLARS

#003470#      283 306 773#

Accoun      3   Date 12-03-2015   Amount 5000.00
Serial 3470   AcctCC          3

---

**CLASS JUSTICE PLLC**
100 3RD AVE S UNIT 3201
MINNEAPOLIS, MN 55401-2592

3479

DATE 12/22/15

PAY TO THE ORDER OF Pat Hammier    $ 7,500.00

Seven Thousand Five Hundred    DOLLARS

#003479#      75# 283 306 773#

Associated Bank <20151222> <003223795035>

Accoun      3   Date 12-22-2015   Amount 7500.00
Serial 3479   AcctCC

**EXHIBIT 8**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

In re:                                                            Bky No. 15-42460

Paul Hansmeier,

      Debtor.

---

### Unsworn Certificate of Service

---

I hereby certify that on March 22, 2016, I caused the following documents:

    ***-Trustee's Reply*** *(to Response Objecting to Turnover Motion)*; and

to be filed electronically with the Clerk of Court through ECF, and that the above documents will be delivered by automatic e-mail notification pursuant to ECF and this constitutes service or notice pursuant to Local Rule 9006-1(a).

Dated:  March 22 , 2016                       ___/e/ Matthew D. Swanson_____
                                             Matthew D. Swanson