# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

In Re:

          **Chapter 7**

**Paul Hansmeier,**

          **Bankruptcy No. 15-42460**

    **Debtor.**

---

**Daniel M. McDermott, United States Trustee,**

    **Plaintiff,**         Adv. No. _____

v.

          **COMPLAINT FOR
DENIAL OF DISCHARGE**

**Paul Hansmeier,**

    **Defendant.**

---

Plaintiff, Daniel M. McDermott, United States Trustee, for his complaint against Paul Hansmeier, defendant, states and alleges as follows:

1. Daniel M. McDermott is the United States Trustee for Region 12, which covers the Federal Judicial Districts of Iowa (Northern & Southern Districts), Minnesota, North Dakota, and South Dakota. The United States Trustee has standing to commence this adversary proceeding pursuant to 28 U.S.C. § 586(a) and 11 U.S.C. § 727(c)(1).

2. The defendant is a resident of the State of Minnesota and filed his petition for relief under chapter 13 of the Bankruptcy Code on July 13, 2015. The court subsequently converted the case to chapter 7 on December 3, 2015. Randall Seaver was appointed as the chapter 7 trustee. The case is currently pending in the United States Bankruptcy Court for the

District of Minnesota.

3. This complaint is filed under Fed. R. Bankr. P. 7001(4) and seeks an order denying the defendant's discharge in this case pursuant to 11 U.S.C. § 727(a)(2)(A), (a)(2)(B), (a)(3), (a)(4)(A), and (a)(5).

4. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.   This proceeding is a core proceeding.

## The Mill Trust and Monyet, LLC

5. The defendant's wife is Padraigin Browne.  On December 28, 2010, prior to his marriage to Ms. Browne, the defendant created The Mill Trust.  The defendant is the grantor, and Ms. Browne is the trustee.  The contingent beneficiaries of The Mill Trust are the defendant's parents, siblings, future spouse, and any future descendants.  The Mill Trust is irrevocable, and it contains a spendthrift provision.  The Mill Trust also directs the trustee to distribute the net income and principal of the Trust Estate to or for the benefit of the beneficiaries.  The defendant retained the right to veto any distribution.  The Mill Trust is funded exclusively by transfers from the defendant and entities that he holds an interest in.

6. At approximately the same time as The Mill Trust was created, the defendant incorporated Monyet, LLC.  Monyet is a single-member Delaware limited liability company.  The Mill Trust is the sole member of Monyet.  The defendant is the sole manager of Monyet. The defendant opened a Scottrade brokerage account for Monyet on December 27, 2010. The defendant was the sole signatory on the account, and he signed a personal guaranty for the account.

7. Beginning in May of 2011, the defendant transferred at least $500,000.00 of his funds or Alpha Law Firm funds to Monyet, LLC.  The defendant owned and controlled Alpha Law

Firm. Between May 2013 and May 2014, the defendant authorized wire transfers totaling $632,139.00 from Monyet's Scottrade account. The wire transfers included the following:

   a. July 30, 2013:   $5,000.00 to Ms. Browne, purportedly a "personal transfer."

   b. September 27, 2013:   $30,000.00 to Ms. Browne, purportedly a "Trust Agreement."

   c. November 22, 2013:   $175,000.00 to Ms. Browne, purportedly a "Trust Transfer."

   d. February 7, 2014:   $70,000.00 to Ms. Browne, purportedly a "Trust Transfer."

The funds were transferred to a TCF bank account (account number ending in 3276—"the TCF 3276 account") held in Ms. Browne's name. Some of the funds were used to pay the defendant's household expenses, including his mortgage payments. The defendant also made some mortgage payments using funds located in his TCF bank account.

8. On December 13, 2013, Ms. Browne withdrew $150,000.00 of the transferred funds from the TCF 3276 account. She took the cash to her and the defendant's residence and hid the cash in a box in a closet. Between February and March of 2014, Ms. Browne withdrew an additional $28,000.00 in cash from her bank accounts and similarly hid it. From time to time, Ms. Browne re-deposited some of the hidden cash into the TCF 3276 account and an Associated Bank account (account number ending in 1853—"the Associated 1853 account"). The defendant had access to the hidden cash.

9. The defendant also authorized a wire transfer of $21,250.00 from Monyet's Scottrade account to Robert Balzebre on December 9, 2013, purportedly to repay a loan. Similarly, he authorized a wire transfer of $39,231.25 from Monyet's Scottrade account to Chisholm Properties South Beach, Inc. on May 5, 2014, purportedly to repay a loan. The defendant

does not have records that document the existence of the loans.

10. The defendant also authorized wire transfers totaling $115,000.00 from Monyet's Scottrade account to Class Justice, LLC, between July 26, 2013 and March 19, 2014, purportedly as loans from Monyet's Scottrade account to Class Justice. The defendant does not have records that document the existence of the loans.

### Sanctions Awards and Related Litigation

11. In the meantime, various courts around the country sanctioned the defendant, including the following:

   a. May 6, 2013:    The United States District Court for the Central District of California entered judgment against the defendant and others in the amount of $81,319.72 in favor of John Doe.

   b. September 23, 2013:    The Fourth Judicial District of the State of Minnesota entered a $4,537.50 judgment against the defendant in favor of Godfread Law Firm PC.    Godfread Law Firm assigned the judgment to Best & Flanagan LLP.

   c. September 23, 2013:    The Fourth Judicial District of the State of Minnesota entered a $12,646.00 judgment against the defendant in favor of Thompson Hall Santi Cerny & Dooley.    Thompson Hall assigned the judgment to Best & Flanagan LLP.

   d. September 23, 2013:    The Fourth Judicial District of the State of Minnesota entered a $12,646.00 judgment against the defendant in favor of Phillip Gainsley. Gainsley assigned the judgment to Best & Flanagan LLP.

   e. October 22, 2013:    The United States District Court for the District of Massachusetts entered judgment against the defendant and others in the amount of $64,180.80 in favor of Sandipan Chowdhury.    The district court specifically found that AF Holdings, LLC was an alias of Prenda Law, Inc. and the defendant.

   f. November 27, 2013 ("the Lightspeed matter"):    The United States District Court for the Southern District of Illinois entered judgment against the defendant and others in the amount of $72,367.00 in favor of Anthony Smith, $119,637.05 in favor of AT&T, and $69,021.26 in favor of ComCast.    The defendant unsuccessfully appealed the district court's order to the Seventh Circuit Court of Appeals.    The defendant made various representations to the district court regarding an alleged inability to pay.    Smith then issued third-party subpoenas to

    the defendant and others, and later filed a motion for contempt related to obstruction of discovery. The motion was denied. Later, Smith successfully moved for reconsideration, and the district court held the defendant in contempt, finding that the defendant "had access to the Monyet funds both before and after he pled insolvency to the court." Thus, the district court imposed additional sanctions on the defendant and others of $65,263.00 on June 5, 2015. The district court ordered the defendant and others to pay the award of sanctions by July 15, 2015.

    g. January 20, 2015: The Fourth Judicial District of the State of Minnesota amended a prior judgment and entered judgment against the defendant in the amount of $63,386.52. The district court pierced the corporate veil as to Alpha Law Firm and held the defendant jointly and severally liable along with Alpha Law Firm and others. It specifically found that the defendant had intentionally defunded Alpha Law Firm, disregarded the corporate form, given inconsistent testimony to the district court, and failed to provide responsive information throughout the proceedings. On June 29, 2015, the district court issued a post-judgment discovery order requiring the defendant to show cause as to why he should not be held in contempt for violating the district court's March 5, 2015 order compelling him to turn over financial records for post-judgment discovery. The district court gave the defendant until July 14, 2015 to provide financial records. The Minnesota Court of Appeals affirmed the district court's decision on August 17, 2015.

12. In 2014, the defendant provided a financial statement to the United States District Court in the Lightspeed matter. The financial statement identified judgments against the defendant totaling $576,000.00.

13. In the spring of 2014, the defendant and his law partner, John Steele, were embroiled in appellate litigation. On April 2, 2014, Mr. Steele posted a $287,300.00 supersedeas bond in the Lightspeed matter. Mr. Hansmeier and Ms. Browne claim to have given Mr. Steele between $60,000.00 and $65,000.00 using a portion of the cash hidden in their residence. The defendant does not have any financial records that document the transfer of cash to Mr. Steele.

14. On June 30 and July 2 of 2014, the defendant testified at a debtor's examination conducted by Best & Flanagan. At the examinations, he testified that:

  a. He had no knowledge of a $75,000.00 transfer from Alpha Law Firm to Monyet on May 3, 2011.

  b. Monyet was "simply an account associated with estate planning" and "the reason, I can't tell you how it operates within the whole estate planning scheme is because I did not set up the estate planning myself that's something that's well beyond my expertize [sic]."

  c. He did not know where the funds transferred to Monyet were located.

  d. He could not get any of the funds transferred to Monyet.

All of that testimony was false.

### Fraudulent Bankruptcy Planning and Filing

15. On July 9, 2015, Ms. Browne wrote a $15,305.00 check to the defendant's bankruptcy attorney. The check was written on the Associated 1853 account held in Ms. Browne's name. On July 9, 2015, Ms. Browne deposited $20,000.00 of the hidden cash into the Associated 1853 account to cover the July 8, 2015 check. On the date of the bankruptcy filing, Ms. Browne held $7,709.64 of the hidden cash in her Associated 1853 account.

16. On or about the date of his bankruptcy filing, the defendant and Ms. Browne counted the amount of cash in their possession that they attributed to Monyet. The defendant and Ms. Browne had at least $20,900.00 in cash in their possession on the day that the defendant filed his bankruptcy petition.

17. On July 13, 2015, the defendant filed a chapter 13 petition, related schedules, and a statement of financial affairs. On schedule A, he claimed that his residence was worth only $885,000.00. On schedule B, he failed to disclose any cash on hand, or any tax refunds. He also disclosed $72,000.00 in accounts receivable. He also failed to list

any cash on the statement of financial affairs. He did not disclose The Mill Trust anywhere in the schedules or statement of financial affairs. Although he disclosed the existence of Monyet, he did not disclose any transfers to or from Monyet on the statement of financial affairs. He also failed to disclose that he was the sole manager of Monyet on the statement of financial affairs. He disclosed only $8,554.00 in funds held by Monyet. On schedule I, the defendant claimed that Ms. Browne's net monthly income is $4,889.41. On schedule J, he claimed total household expenses of $9,779.00 per month. He did not disclose the alleged $60,000.00 payment to John Steele in the statement of financial affairs. The defendant claimed in the statement of financial affairs that he had paid his bankruptcy attorney $15,000.00 on July 8, 2015. He failed to disclose any financial statements made in the prior two years on the statement of financial affairs. He did not disclose the cash inventory that he and Ms. Browne had undertaken on or about the date of his bankruptcy petition on the statement of financial affairs.

18. On schedule F, the defendant listed general unsecured claims of $115,334.78. Of that total, only a $64,180.00 claim owed to Sandipan Chowdhury was scheduled as disputed.

## Post-Petition Fraud

19. On August 10, 2015, Mr. Steele wired $65,000.00 and $47,171.75 to the United States District Court for the Southern District of Illinois in connection with the appellate litigation in the Lightspeed matter.

20. Between July 27, 2015 and December 10, 2015, Ms. Browne deposited $20,900.00 of the hidden cash in her Associated 1853 account.

21. After the defendant filed his chapter 13 petition, he sold Minnesota Vikings tickets. Ms. Browne deposited the proceeds into her Associated 1853 account. The defendant never

informed the chapter 13 trustee of the ticket sales.

22. After the defendant filed his chapter 13 petition, he wrote checks to himself from a bank account held in the name of Class Justice, LLC.   The defendant deposited the checks into an Associated Bank account held jointly by the defendant and Ms. Browne.   The funds were then transferred into Ms. Browne's Associated 1853 account.

23. Counsel for the chapter 13 trustee convened the meeting of creditors on August 12, 2015. At the meeting of creditors, the defendant testified as follows:

    a. That the schedules included everything that he owned.

    b. That the schedules included all of his creditors.

    c. That the schedules accurately represented his income and expenses.

    d. That he did not provide Mr. Steele with any of the funds that Mr. Steele deposited with the United States District Court for the Southern District of Illinois in connection with the Lightspeed matter.

    e. That he did not provide Mr. Steele with a "sizeable amount" of funds in the preceding two years.

    All of that testimony was false.

24. On September 16, 2015, the defendant and Ms. Browne signed a listing agreement with realtor Ben Ganje of Lakes Sotheby's International Realty to sell their Minneapolis condo for $1.3 million.   The defendant and Ms. Browne signed a form directing Mr. Ganje to withhold the property from the Multiple Listing Service.   The defendant did not consult with the chapter 13 trustee before entering into the agreement, file an application to employ Mr. Ganje, or otherwise inform the Court of the listing agreement.

25. The defendant and Ms. Browne rented and moved to a new residence in Woodbury on or

about October 5, 2015. The lease called for rent payments of $1,950.00 per month. The defendant did not amend schedule J or update his address with the bankruptcy court.

26. The Minneapolis condo was listed for sale for $1.3 million, and the defendant signed a purchase agreement to sell the Minneapolis condo for $1.2 million on November 9, 2015. The defendant did not inform the chapter 13 trustee, the United States Trustee, or the bankruptcy court of the purchase agreement. His attorney informed Edward Sheu, counsel for some of the defendant's creditors of the purchase agreement on November 11, 2015. He did not amend schedule A to reflect the value of the Minneapolis condo.

27. On October 28-29, 2015, Edward Sheu examined the defendant and Ms. Browne pursuant to Fed. R. Bankr. P. 2004. The defendant testified as follows:

    a. That he does not make payments for any of his living expenses, including the mortgage, insurance, taxes, or condo fees associated with the Minneapolis condo.

    b. That all of his living expenses were paid using funds in Ms. Browne's personal bank account.

    c. That he has no ownership interest, managerial authority, or control over an entity called Disability Support Alliance.

   All of that testimony was false.

28. The defendant received $83,000.00 in accounts receivable associated with Disability Support Alliance during the pendency of his chapter 13 case and dissipated the funds without informing the chapter 13 trustee. On July 21, 2015, the defendant endorsed a $3,000.00 check written to Disability Support Alliance and deposited the funds into an Associated Bank account held jointly in his name and Ms. Browne's name. He also dissipated the remaining Monyet funds during the pendency of his chapter 13 case

without informing the chapter 13 trustee.

29. The defendant and Ms. Browne received a 2014 property tax refund of $3,796.00 on October 2, 2015.

30. The chapter 7 trustee convened the meeting of creditors on January 21, 2016. At the meeting of creditors, the defendant testified as follows:

   a. That he listed all of his assets on his chapter 13 bankruptcy schedules.

   b. That he listed all of his creditors on his chapter 13 bankruptcy schedules.

   c. That Ms. Browne made all of the mortgage payments for the Minneapolis condo.

   d. That he did not provide Mr. Steele with $65,000.00 that Mr. Steele deposited with the United States District Court for the Southern District of Illinois in connection with the Lightspeed matter, and that he did not have money to post the bond.

   e. That the $150,000.00 withdrawn by Ms. Browne from her TCF account on December 13, 2013 was used for household expenses.

   f. That he provided truthful testimony at a debtor's examination on June 30, 2014.

   g. That he provided truthful testimony at a debtor's examination on July 2, 2014.

   h. That he provided truthful testimony at his Rule 2004 examination on October 29, 2015.

   All of that testimony was false.

31. The chapter 7 trustee conducted an examination of Ms. Browne on February 18, 2016 pursuant to Fed. R. Bankr. P. 2004. Ms. Browne was unable to account for the disposition of the $178,000.00 in hidden cash. The defendant has not provided an explanation for the disposition of the funds.

COUNT I
### TRANSFER OR CONCEALMENT OF PROPERTY OF THE DEBTOR WITH INTENT TO HINDER, DELAY, OR DEFRAUD A CREDITOR WITHIN ONE YEAR BEFORE THE DATE OF THE FILING OF THE PETITION

32. The plaintiff re-alleges Paragraphs 1-31 as if fully set forth herein.

33. The following entities are alter egos of the defendant:  The Mill Trust, Monyet, LLC, Alpha Law Firm, Prenda Law, Inc., and Disability Support Alliance.

34. The defendant filed a voluntary petition on July 13, 2015.

35. The defendant or Alpha Law Firm transferred an unknown amount of funds to The Mill Trust, Monyet, LLC, or Padraigin Browne beginning on December 27, 2010.  The defendant transferred and concealed the funds with the intent to hinder, delay, or defraud creditors.  The defendant concealed the transfers and the transferred funds until at least one year prior to the filing of his bankruptcy petition.

36. The defendant transferred $632,139.00 from Monyet, LLC to third parties beginning on December 27, 2010.  The defendant transferred and concealed the funds with the intent to hinder, delay, or defraud creditors.  The defendant concealed the transfers and the transferred funds until at least one year prior to the filing of his bankruptcy petition.

37. As a result of the defendant's conduct, plaintiff is entitled to an order denying the defendant's discharge under 11 U.S.C. § 727(a)(2)(A).

COUNT II
### TRANSFER OR CONCEALMENT OF PROPERTY OF THE ESTATE WITH INTENT TO HINDER, DELAY, OR DEFRAUD THE CHAPTER 13 AND THE CHAPTER 7 TRUSTEE AFTER THE DATE OF THE FILING OF THE PETITION

38. The plaintiff re-alleges Paragraphs 1-37 as if fully set forth herein.

39. The defendant filed a voluntary petition on July 13, 2015.

40. After the filing of his petition, the defendant received $83,000.00 in accounts receivable

owed to him as of the date of the filing of his petition. The defendant transferred the funds to various third parties. The funds were property of the bankruptcy estate. The defendant concealed the transferred funds from the chapter 13 trustee and the chapter 7 trustee with the intent to hinder, delay, or defraud the chapter 13 trustee or the chapter 7 trustee after the date of the filing of his bankruptcy petition.

41. After the filing of his petition, the defendant concealed approximately $20,900.00 in cash. The cash was property of the bankruptcy estate. The defendant concealed the cash from the chapter 13 trustee and the chapter 7 trustee with the intent to hinder, delay, or defraud the chapter 13 trustee or the chapter 7 trustee after the date of the filing of his bankruptcy petition.

42. After the filing of his petition, the defendant concealed the true value of his Minneapolis condo from the chapter 13 trustee. The defendant's interest in the Minneapolis condo was property of the bankruptcy estate. The defendant concealed the value of his Minneapolis condo with the intent to hinder, delay, or defraud the chapter 13 trustee.

43. After the filing of his petition, the defendant sold Minnesota Vikings tickets. The proceeds of the ticket sales were property of the bankruptcy estate. The defendant concealed the sales proceeds with the intent to hinder, delay, or defraud the chapter 13 trustee.

44. After the filing of his petition, the defendant concealed his 2014 property tax refund from the chapter 13 trustee and the chapter 7 trustee. The property tax refund was property of the bankruptcy estate. The defendant concealed his 2014 property tax refund with the intent to hinder, delay, or defraud the chapter 13 trustee.

45. As a result of the defendant's conduct, plaintiff is entitled to an order denying the

defendant's discharge under 11 U.S.C. § 727(a)(2)(B).

## COUNT III
### FAILURE TO KEEP OR PRESERVE ANY RECORDED INFORMATION FROM WHICH THE DEBTOR'S FINANCIAL CONDITION OR BUSINESS TRANSACTIONS MIGHT BE ASCERTAINED

46. Plaintiff re-alleges Paragraphs 1-45 as if fully set forth herein.

47. The defendant failed to keep or preserve recorded information from which his financial condition and business transactions might be ascertained. Specifically, the defendant failed to keep records that identify the amount of accounts receivable that he collected after he filed his petition, and the disposition of those accounts receivable. The defendant also failed to keep records evidencing the transfer of $60,000.00 in cash to Mr. Steele in the spring of 2014. The defendant also kept no records to document the existence of loans made to Class Justice, LLC, or the loans that were allegedly repaid to Mr. Balzebre and Chisholm Properties South Beach.

48. The defendant's failure to keep or preserve the records is not justified under all of the circumstances of this case.

49. As a result of the defendant's conduct, plaintiff is entitled to an order denying the defendant's discharge under 11 U.S.C. § 727(a)(3).

## COUNT IV
### FALSE OATHS IN OR IN CONNECTION WITH THE CASE

50. Plaintiff re-alleges Paragraphs 1-49 as if fully set forth herein.

51. The defendant knowingly and fraudulently made the following false oaths on documents that he filed with the bankruptcy court:

    a. The defendant assigned a value of $885,000.00 to the Minneapolis condo on schedule A.

Case 15-42460 Doc 126 Filed 03/24/16 Entered 03/24/16 13:35:52 Desc Main
Document Page 14 of 18

b. The defendant failed to disclose The Mill Trust on schedule B or the statement of financial affairs.

c. The defendant claimed that Monyet, LLC had only $8,554.00 on schedule B and on the statement of financial affairs.

d. The defendant claimed that he had no cash on hand on schedule B.

e. The defendant failed to disclose a 2014 property tax refund of $3,796,00 on schedule B.

f. The defendant claimed that his monthly expenses on schedule J were $9,779.00.

g. The defendant failed to disclose the $60,000.00 payment to John Steele in the spring of 2014 on the statement of financial affairs.

h. The defendant stated that he made payment of $15,000.00 to Barbara May on July 8, 2015 in the statement of financial affairs.

i. The defendant failed to disclose any property transferred to either The Mill Trust or Monyet, LLC within the ten years prior to filing his petition on the statement of financial affairs.

j. The defendant failed to disclose any property transferred from Monyet, LLC within the two years prior to filing his petition on the statement of financial affairs.

k. The defendant failed to disclose that he was the sole manager of Monyet, LLC on the statement of financial affairs.

l. The defendant failed to disclose a financial statement that he provided in the Lightspeed case on the statement of financial affairs.

m. The defendant failed to disclose an inventory of cash in his home that he took on or about the date of filing of his chapter 13 petition on the statement of financial

    affairs.

52. The defendant knowingly and fraudulently made the following false oaths when he testified at the meeting of creditors on August 12, 2015:

    a. That the schedules included everything that he owned.

    b. That the schedules included all of his creditors.

    c. That the schedules accurately represented his income and expenses.

    d. That he did not provide Mr. Steele with any of the funds that Mr. Steele deposited with the United States District Court for the Southern District of Illinois in connection with the Lightspeed matter.

    e. That he did not provide Mr. Steele with a "sizeable amount" of funds in the preceding two years.

53. The defendant knowingly and fraudulently made the following false oaths when he testified at a Rule 2004 examination held on October 28-29, 2015:

    a. That he does not make payments for any of his living expenses, including the mortgage, insurance, taxes, or condo fees associated with the Minneapolis condo.

    b. That all of his living expenses were paid using funds in Ms. Browne's personal bank account.

    c. That he has no ownership interest, managerial authority, or control over Disability Support Alliance.

54. The defendant knowingly and fraudulently made the following false oaths when he testified at the meeting of creditors on January 21, 2016:

    a. That he listed all of his assets on his chapter 13 bankruptcy schedules.

    b. That he listed all of his creditors on his chapter 13 bankruptcy schedules.

    c. That Ms. Browne made all of the mortgage payments for the Minneapolis condo.

    d. That he did not provide Mr. Steele with $65,000.00 that Mr. Steele deposited with the United States District Court for the Southern District of Illinois in connection with the Lightspeed matter, and that he did not have money to post the bond.

    e. That the $150,000.00 withdrawn by Ms. Browne from her TCF account on December 13, 2013 was used for household expenses.

    f. That he provided truthful testimony at a debtor's examination on June 30, 2014.

    g. That he provided truthful testimony at a debtor's examination on July 2, 2014.

    h. That he provided truthful testimony at his Rule 2004 examination on October 29, 2015.

55. The defendant's false oaths set forth above were material omissions regarding the defendant's property and property of the estate.

56. As a result of the defendant's false oaths, the plaintiff is entitled to an order denying the defendant's discharge under 11 U.S.C. § 727(a)(4)(A).

## COUNT V
## FAILURE TO EXPLAIN SATISFACTORILY LOSS OF ASSETS

57. Plaintiff re-alleges Paragraphs 1-56 as if fully set forth herein.

58. The defendant and Ms. Browne had $178,000.00 in cash in their possession in 2014. The defendant's schedule B indicates that he was not in possession of any cash when he filed his petition.

59. The defendant has not provided a satisfactory explanation for the disposition or loss of the $178,000.00.

60. As a result of the defendant's conduct, plaintiff is entitled to an order denying the

defendant's discharge under 11 U.S.C. § 727(a)(5).

WHEREFORE, the Plaintiff requests that this Court enter an order and judgment denying the defendant's discharge under 11 U.S.C. § 727(a)(2)(A), (a)(2)(B), (a)(3), (a)(4)(A), and (a)(5) together with such other and further relief as the Court deems just and equitable.

Dated: March 24, 2016                                     DANIEL M. MCDERMOTT
                                                                            UNITED STATES TRUSTEE
                                                                            REGION 12

BY:   /e/ Colin Kreuziger
        Colin Kreuziger
        Trial Attorney
        Office of U.S. Trustee
        1015 U.S. Courthouse
        300 South Fourth Street
        Minneapolis, MN 55415
        TELE:  (612) 334-1350
        FAX:  (612) 335-4032
        MN Atty. No. 0386834

## VERIFICATION

I, Colin Kreuziger, a trial attorney for the United States Trustee, the Plaintiff herein, declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information, and belief.

Executed on March 24, 2016

/e/ Colin Kreuziger
Colin Kreuziger
Trial Attorney
MN Atty No. 0386834
Office of U.S. Trustee
1015 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
TELE: (612) 334-1350